# Exhibit A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| A. DEAN OSWALT and REINIE OSWALT, husband and wife; CRAIG OSWALT and MICHELLE OSWALT, husband and wife; and KIRK OSWALT and STACIE OSWALT, husband and wife; | NO. 97-733 C |
| Plaintiff, | (JUDGE FUTEY) |
| vs. | |
| United States of America. | |
| Defendant. | |

**PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF AND IN OPPOSITION TO DEFENDANT'S MOTIONS**

J. Jay Carroll
VELIKANJE, MOORE & SHORE, P.S.
405 East Lincoln Avenue
P.O. Box 22550
Yakima, Washington 98907
(509) 248-6030

Attorneys for Plaintiffs

## *TABLE OF CONTENTS*

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . 2

Argument

I. The Court Should Grant the Plaintiffs' Motion for Summary Judgment since No Genuine Issue of Fact Exists as to the Defendant's Failure to Equitably Distribute the Irrigation Water of the Wapato Irrigation Project in 1994 so that the Plaintiffs would Receive their Pro-Rata Share thereof . . . . . .3

II. The "Application for Water Rights" Do Provide a Basis for the Assertion of Liability on the Part of the Defendant . . . . . . . . . . . . . . . . . . . . 5

III. The Plaintiffs were Under No Obligation or Requirement to Exhaust Administrative Remedies . . . 6

IV. Plaintiffs are Not Asserting a Claim Against the Defendants Encompassing an "Act of God" . . . . . . . 8

V. Since the Plaintiffs either paid or made Satisfactory Arrangements for the Payments of all Water Assessments for 1994, They Have the Right to Maintain this Action . . . . . . . . . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . 11



6

# *TABLE OF AUTHORITIES*

## *Cases*

*San Carlos Irrigation and Drainage Dist. v. U.S.*, 111 F.3d 1557 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Powers*, 305 U.S. 527, 529, 83 L.Ed. 330, 59 S. Ct. 344 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## *Statutes*

25 U.S.C. § 381 . . . . . . . . . . . . . . . . . . . . . . . . 4

## *Court Rules*

Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## *Other Authorities*

25 C.F.R. § 162 . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. § 171 . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. § 171.1 . . . . . . . . . . . . . . . . . . . . . . . 4

25 C.F.R. § 171.23 . . . . . . . . . . . . . . . . . . . . . . 7



7

Pursuant to Rule 56, Plaintiffs respectfully move this court for the entry of an order of summary judgment as to the liability of the defendant to the plaintiffs in this case. The defendant had an obligation to equitably distribute irrigation water within the Wapato Irrigation Project so that the users therein received their pro-rata share of irrigation water. Since there are no genuine issue of material fact existing as to the failure of the defendant to fulfill this obligation, the plaintiffs are entitled to the entry of an order granting the motion for summary judgment as to liability. The issue of damages would be reserved for further proceedings. In support of this motion, plaintiffs rely upon this brief, the pleadings in the district court action as well as the amended complaint on file herein.

## ISSUES PRESENTED

1. Whether the defendant has an obligation to equitably distribute the waters allocated to the Wapato Irrigation Project so that the patrons thereof receive their pro-rata share of the water available.

   a. Did the defendant breach that obligation.

2. Do the "Applications for Water Rights" create obligations which are appurtenant to the land and/or binding on all heirs, assigns or subsequent purchasers of the property in question?

3. Does the complaint state a cause of action when it alleges that the defendant failed to equitably distribute the



8

limited amount of water that it had available to it in the drought year of 1994?

4. Does the fact that the plaintiffs made satisfactory arrangements with the defendant for the payment of their respective water assessments permit them to maintain this action for the defendant's failure to then provide that irrigation water?

## STATEMENT OF THE CASE

The plaintiffs own farmlands which are located within the Wapato Irrigation Project (hereinafter WIP) in Yakima County, Washington. (Complaint at ¶ II ). The plaintiffs either paid for or made satisfactory arrangements for the payment of, all assessments required to be paid in order to secure delivery of irrigation water to the plaintiffs' lands. (Oswalt Sworn Statement at ¶3).

The plaintiffs beneficially applied said irrigation water provided by the WIP to their lands beginning when it was first available in 1994 and continuing on until approximately June 9, 1994. (Oswalt Sworn Statement at ¶6). From the approximate time frame of June 10, 1994 through July 25, 1994, the plaintiffs land received little or no irrigation water from WIP. (Oswalt Sworn Statement at ¶¶ 7-8). Plaintiffs made repeated requests for delivery of irrigation water to WIP personnel during this time period. (Oswalt Sworn Statement at ¶ 8). Despite these requests, the plaintiffs were provided with little or no irrigation water. (Oswalt Sworn Statement at ¶¶ 7-8).



9

However, during this same time frame of June 10-July 25, 1994, plaintiffs could see that neighboring farmers, being supplied water on the same canals as plaintiffs, were receiving sufficient irrigation water to irrigate their crops. (Oswalt Sworn Statement at ¶¶ 7-8). The irrigation water returned to the canal adjacent to the plaintiffs' property on July 24, 1994 and from that point forward, the plaintiffs received what they believed to be their pro-rata share of the irrigation water available to the Wapato Irrigation Project. (Oswalt Sworn Statement at ¶9) As a result of the lack of irrigation water in the June 9 through July 24 time period, the plaintiffs suffered a substantial crop loss. (Oswalt Sworn Statement at ¶8)

## ARGUMENT

### I. The Court Should Grant the Plaintiffs' Motion for Summary Judgment since No Genuine Issue of Fact Exists as to the Defendant's Failure to Equitably Distribute the Irrigation Water of the Wapato Irrigation Project in 1994 so that the Plaintiffs would Receive their Pro-Rata Share thereof.

It is important to note that the plaintiffs do not allege that they are or were entitled to any greater proportion of water than any other water user in the Wapato Irrigation Project in 1994. Plaintiffs freely admit that 1994 was a "water-short," drought year. However, the plaintiffs do allege that they should have been treated as any other patron of the WIP and no other patron had to essentially go without irrigation water from June 10-July 25, 1994. The fact that they did not share in an equitable distribution of

the water that was available forms the basis for the claim against the defendant.

Under the dictates of 25 U.S.C. § 381, the defendant is required to make certain that there is an "equal distribution" of irrigation water for projects such as the Wapato Irrigation Project. This statutory provision prohibits the Secretary of Interior from permitting an unjust or unequal distribution of the irrigation water contained within such a project. *See United States v. Powers,* 305 U.S. 527, 529, 83 L.Ed. 330, 59 S. Ct. 344 (1939) The same requirement can be found in 25 C.F.R. § 171.1 which provides that the administration of the project will be done so as to "insure safe, economical, beneficial and equitable use of the water supply and optimum water conservation.

In 1994, the defendant admits that it had adopted a plan of equitable distribution of irrigation water throughout the project. *See* July 25, 1994 Best affidavit at ¶7; Affidavit of Acey Oberly, Jr. at ¶¶ 6 & 9. It is undisputed that the plaintiffs were not the recipient of their pro-rata share of irrigation water from June 9, 1994 through July 24, 1994. During this same time, the plaintiffs' neighbors, who drew their irrigation water from the same canal servicing the plaintiffs lands, were receiving their pro-rata share of irrigation water. Since the defendant cannot authorize the "unjust or unequal" distribution of irrigation within an irrigation project such as the Wapato Irrigation Project, the plaintiffs are



11

entitled to an order granting their motion that the defendant is liable to them, as a matter of law.

II. <u>The "Application for Water Rights" Do Provide a Basis for the Assertion of Liability on the Part of the Defendant</u>.

The defendant asserts that, since the plaintiffs were not signatories to the "Application for Water Rights", they are not in privity of contract with the defendant and accordingly cannot now sue to enforce any obligation contained therein. Plaintiffs respectfully submit that such is not the case.

The Application itself provides that the obligation to pay the annual assessments is an obligation of not only the signator but also his or her "heirs and assigns." (Application at ¶ 8). Paragraph 10 then provides that the party of the first part (the Secretary of the Interior) has the right to refuse delivery of water to any tract of land upon the failure of the <u>owner or owners</u> thereof to pay the annual assessments. This language also evidences the nature of the obligation of the defendant since the Application for Water Rights defines the "party of the first part" as the Secretary of the Interior and the "party of the second part" as the person or persons signing the Application. However, paragraph 10 uses the term owner or owners of the property which evidences that the obligation runs with the land and is not particular to the then owner of the land.

This theory also makes common sense. Under the defendant's rationale, once the original owner of the property had either died

or sold off the land in question, the contract could not be enforced by either party since there is no privity of contract. The defendant's argument must work both ways. If an individual could not enforce the contract due to lack of privity, it stands to reason that the defendant could not likewise enforce the contract to collect the assessments. Such a strained interpretation is not warranted since the assessments are collected on a yearly basis and are directly attributable to the property that is served by the irrigation water.

## III. The Plaintiffs were Under No Obligation or Requirement to Exhaust Administrative Remedies

The defendant next contends that the plaintiffs should be precluded from maintaining this suit to the fact that they have allegedly failed to exhaust administrative remedies. As an initial matter, the defendant asserts that the regulations dealing with administrative procedures have been incorporated into the leases and Applications for Water Rights at issue in this case. Such is not the case. There is no such incorporation of those regulations. The only incorporation of regulations involve 25 C.F.R. § 162 and regulations dealing with the setting of the amount of assessments. There is nothing in these documents that incorporate 25 C.F.R. § 171 or in particular §§ 171.22 or 171.23 into those documents.

Even if these regulations were incorporated into the leases or Application for water rights, they have no application to the dispute at hand. 25 C.F.R. § 171.23 provides:

> In case of a dispute between a water user and the Project Engineer or Officer-in Charge of the project concerning the application of the regulations of this part or a decision rendered by such official, the water user within 30 days may appeal to the Area Director. Further appeals may be made to the Commissioner of Indian Affairs pursuant to part 2 of this chapter.

There was no such decision in this case that was made that could have been appealed. It is also important to note that the regulation is phrased in permissive, and not mandatory terms. There is no prerequisite to suit that administrative procedures be followed.

It is likewise important to note that the plaintiffs did make an administrative claim to the Department of Interior, Bureau of Indian Affairs in this case claiming the exact same damages as are being pursued now. *See* Initial Complaint filed in District Court alleging the filing of Federal Tort Claims Act claims. Those claims were rejected by the Agency.

This case is indeed one that falls within the ambit of the doctrine as set forth in *San Carlos Irrigation and Drainage Dist. v. U.S.*, 111 F.3d 1557 (Fed. Cir. 1997). There is no statute, binding regulation or contract which requires that the plaintiffs exhaust administrative remedies as a prerequisite to maintaining this suit. As such, the extent to which the plaintiffs were required to



14

exhaust administrative remedies is a matter left to the discretion of the court. *San Carlos Irrigation*, 111 F.3d at 1564-65.

The plaintiffs should be permitted to go forward. They submitted an administrative claim that was denied. Does the defendant suggest that if the claim had been made pursuant to the CFR section that the result would have somehow miraculously changed? If the claim was denied in one forum it would certainly be futile to require the exact same filing be made under a different regulatory section.

This is a simple claim for damages. Plaintiffs allege that they have been damaged by virtue of the defendant's failure to deliver irrigation water. There is nothing complex or requiring agency expertise in this matter. Accordingly, this court should deny the defendant's motion and permit this cause of action to proceed on.

## IV. Plaintiffs are Not Asserting a Claim Against the Defendants Encompassing an "Act of God"

The defendant next claims that it should not be liable to the plaintiffs since the loss occasioned by the plaintiffs was due to an "Act of God." As stated previously in this memorandum, this assertion mis-perceives the nature of the plaintiffs claim against the defendant. The amount of water that will be available to the Wapato Irrigation District for distribution in any given year will always be an "Act of God." We have not found a way to control the amount of rain and snow we receive in any given year.



15

The plaintiffs' claims against the defendant have nothing to do with the drought of 1994. Plaintiffs don't care how much water was available. The point of the lawsuit is that the defendant did not equitably distribute the amount of water that was actually present for distribution. Plaintiffs claim nothing more than their pro-rata share of whatever water was available in 1994. The record is undisputed that they did not receive that pro-rata amount during the period June 9, 1994 through July 24, 1994. This was not an "Act of God". It was poor management on the part of the defendant and the plaintiffs should be compensated accordingly.

V. Since the Plaintiffs either paid or made Satisfactory Arrangements for the Payments of all Water Assessments for 1994, They Have the Right to Maintain this Action.

It is undisputed that the plaintiffs either paid, or made satisfactory arrangements for the payment of the annual assessments associated with the Wapato Irrigation Project for 1994. It is equally undisputed that the plaintiffs have, in fact, made all payments to the defendant for the 1994 assessments. Despite these facts, the defendant now maintains that, since the assessments were not actually paid prior to the start of the irrigation season, the plaintiffs cannot maintain this action. Such is not the case.

It is first interesting to note that the Application for Water Right, at paragraph 10, does indeed give the defendants the option not to deliver water to any owner of land that has not paid their assessment in advance. However the record is totally void of any declaration from the defendant that states that they exercised that



16

option as against the plaintiffs. In fact, the record is directly to the contrary. Mr. Oswalt specifically states that he made arrangements for the payment of the remaining assessments and that this was acceptable to the BIA personnel. He received his irrigation water until June 9, 1994. He received it again starting July 24 and continuing on until the end of the season. He was never told or informed that the reason he did not receive his pro-rata share of irrigation water was that he had not paid all of his assessment. If fact, he was told that the reason that the water was not delivered was related to an error made by the defendant in calculating the amount of water available.

Plaintiffs are not in breach of contract because they made arrangements for the payment of the assessments and they then actually made those payment in accordance with the agreement. Additionally, since the defendant never exercised its option to stop delivery of water to the plaintiffs by virtue of their failure to pay the assessments prior to the irrigation season it cannot now be heard to argue that it could have done so and therefore the plaintiffs have no cause of action.

With respect to the lease agreements, they reserve no right to deny the application of irrigation water in the event that the assessments are not paid prior to the start of the irrigation season. As noted by the defendant, the leases do indeed provide for the payment of the assessment in advance of the irrigation season. The failure to make the payment could constitute a breach

of lease for which 25 C.F.R. § 162.14 provides the defendant a remedy. However, it is again undisputed that the plaintiffs were not given any notice that their failure to pay the assessments in advance was resulting in their failure to receive irrigation water. To the contrary, the plaintiffs had an agreement with defendant that payment would be made at a later date and that agreement was honored for a good portion of the 1994 irrigation season.

Plaintiffs would again disagree with the defendant that 25 C.F.R. § 171.17 is incorporated into either the leases or the Application for Water Rights. Neither of these documents expressly or impliedly makes that incorporation.

There is no question that the defendant had the right not to deliver irrigation water to the plaintiffs, or any other water user, if the annual assessments were not paid in advance. The record is undisputed that the defendant did not exercise that right, as to the plaintiffs, in 1994. In fact, the defendant specifically made other arrangements for payment with the plaintiffs and then accepted all payments made under that arrangement. It should not now be permitted to attempt to go back on that agreement.

CONCLUSION

The plaintiffs respectfully request that the court grant its motion for summary judgment against the defendant as to liability and deny the defendant's motions to dismiss and/or for summary judgment.

RESPECTFULLY SUBMITTED this 30TH day of September, 1997.

VELIKANJE, MOORE & SHORE, INC., P.S.
Attorneys for Plaintiffs

By: [signature]
J. Jay Carroll
WSBA NO. 17424

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 30th day of September, 1998, I caused to be placed in the United States Mail (first class, postage prepaid) copies of Plaintiffs' Statement of Genuine Issue; Plaintiffs' Proposed Finding of Uncontroverted Facts and Plaintiffs' Cross Motion For Summary Judgment and Memorandum in Support Thereof and in Opposition to Defendant's Motion addressed as follows:

David M. Cohen
Sharon Y. Eubanks
Janene M. Marasciullo
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street
Washington D. C. 20530

Lori A. Busby

Lori A. Busby



20