# Exhibit B

21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| A. DEAN OSWALT and REINIE OSWALT, husband and wife; CRAIG OSWALT and MICHELLE OSWALT, husband and wife; and KIRK OSWALT and STACIE OSWALT, husband and wife; vs. United States of America. | NO. 97-733 C (JUDGE FUTEY) |

**PLAINTIFFS' PROPOSED FINDING OF UNCONTROVERTED FACTS**

1. A. Dean Oswalt and Reinie Oswalt were and are at all times relevant to this suit, husband and wife engaged in the business of farming lands located in Yakima County, Washington. (Complaint at ¶ II)

2. Craig Oswalt and Michelle Oswalt were and are at all times relevant to this suit, husband and wife engaged in the business of farming lands located in Yakima County, Washington. (Complaint at ¶ II)

3. Kirk Oswalt and Stacie Oswalt were and are at all times relevant to this suit, husband and wife engaged in the business of farming lands located in Yakima County, Washington. (Complaint at ¶ II)

4. For crop year 1994, the plaintiffs either owned, leased or subleased agricultural lands which were located within the



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

Wapato Irrigation Project (hereinafter referred to as the "WIP") in Yakima County, Washington as set forth below:

**Agricultural Lands planted to Mint**

| Allotment Number | Acres and Plaintiff | Lessor |
|---|---|---|
| 766 | 30A; Craig Oswalt | Leonard Zecchino |
| 289 | 50.6A; Dean Oswalt | Patsy Lewis |
| 850 | 50A; Dean Oswalt | Patsy Lewis |
| 1131½ | 33.4A; Dean Oswalt | Patsy Lewis |
| 848 | 10.4A; Dean Oswalt | Patsy Lewis |
| 1752 | 35.3A; Kirk Oswalt | Patsy Lewis |

TOTAL: 209.7 acres of mint.

**Agricultural Lands planted to Silage Corn**

| Allotment Number | Acres and Plaintiff | Lessor |
|---|---|---|
| 848 | 25A; Craig Oswalt | Patsy Lewis |
| 794 | 34.8A; Dean Oswalt | Dean Oswalt (fee owner) |
| 849 | 38.1A; Kirk Oswalt | Patsy Lewis |

TOTAL: 97.9 acres of silage corn.

**Agricultural Lands planted to Grain Corn**

| Allotment Number | Acres and Plaintiff | Lessor |
|---|---|---|
| 1988 | 56.9A; Dean Oswalt | BIA |
| 850 | 19.5A; Dean Oswalt | Patsy Lewis |
| 2661 | 16.2A; Dean Oswalt | Patsy Lewis |
| 299 & 300 | 64.3A; Dean Oswalt | Martin Childers |
| T290 | 11.4A; Dean Oswalt | Patsy Lewis |



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

| Allotment Number | Acres and Plaintiff | Lessor |
|---|---|---|
| 794 | 6.6 A; Dean Oswalt | Dean Oswalt (fee owner) |
| 849 & 2661 | 49.6A; Dean Oswalt | Patsy Lewis |
| 596 | 75.4A; Dean Oswalt | Steve Parish |
| 263 | 72.0A; Dean Oswalt | Kevin Bishay "BIA" |
| 2482 | 39.8A; Dean Oswalt | Patsy Lewis |
| 848 | 36.6A; Craig Oswalt | Patsy Lewis |
| 596 | 13.0A; Craig Oswalt | Steve Parish |
| 2303 & T2303 | 59.0A; Craig Oswalt | BIA |
| T1011 | 49.0A; Craig Oswalt | BIA |
| 3704 & 3705 | 45.0A; Craig Oswalt | BIA |
| 766 | 34.0A; Craig Oswalt | Leonard Zecchino |
| 1752 | 31.0A; Kirk Oswalt | Patsy Lewis |

TOTAL: 679.3 acres of grain corn.

(Sworn statement of A. Dean Oswalt at ¶ 1)

5. Mint is a perennial crop and thus it was already planted to the lands mentioned in the preceding paragraph for crop year 1994. Both silage and grain corn are annual crops and the plaintiffs planted this corn in the spring of 1994 to the lands as identified in the preceding paragraph. (Sworn Statement of A. Dean Oswalt at ¶ 2)

6. Each crop year, the person requesting water within the WIP must either pay for or make satisfactory arrangements for the payment of the water assessment. Once this is taken care of the farmer may request the delivery of water. (Affidavit of Nickoloff at ¶ 7)



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

7. The plaintiffs, as farmers within the WIP are required to compensate the WIP for the water that is provided by the WIP through its extensive canal system. Plaintiffs made these payments for crop year 1994 by a check dated April 29, 1994 in the amount of $17,955.58 and a check dated June 23, 1994 in the amount of 10,443.39. These two payments did not amount to a full payment of all amounts due for water. Accordingly, Dean Oswalt made arrangements with BIA personnel to pay the remainder of the balance owing over time. A promissory note was signed and an additional payment was made in December 1994. Mr. Oswalt again made arrangements with BIA personnel to pay the remaining amount due under the note at a later time. As of the date of his sworn statement, all amounts due to the BIA arising from water deliveries in 1994 have been paid. (Sworn statement of A. Dean Oswalt at ¶ 3)

8. The Yakima Indian Reservation was established by the Treaty of June 9, 1855 and was proclaimed by the President on April 18, 1859. Beginning in May of 1896, the United States, acting through the Bureau of Indian Affairs, began to assist the Yakima Nation in developing irrigation works by commencing the construction of several canals on the reservation land. By 1905 four main canals were being constructed and irrigation water was being provided to approximately 17,000 acres of land on the reservation. (Memorandum Opinion re: Yakima Reservation Irrigation District, Yakima County Cause # 77-2-0148-5 at 1-2(hereinafter "YRID Memo Opinion"))



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

9. The Reclamation Act, 43, U.S.C. § 390 et seq., was passed by Congress on June 17, 1902. The state of Washington passed the State Irrigation Act of March 4, 1905 and on May 10, 1905 the U.S. pursuant to said act, withdrew all of the then unappropriated waters of the Yakima River and its major tributaries. This action created the Yakima Basin Reclamation Project. The Yakima Indian Reservation was to become known as the Wapato Irrigation Project portion of the Yakima Reclamation Project. (YRID Memo Opinion at 4-5)

10. In 1887, Congress passed the General Allotment Act, (24 Stat. 388), which allowed individual members of the Yakima Nation to select either 160 acres of grazing land or 80 acres of agricultural land in their individual capacities. There were 120,000 acres of land within the Reservation that had been identified as "irrigable." In July 1914 the Secretary approved the final schedule of 1,800 of the eighty acre agricultural land allotments. Forty acres within each of the 1,800 80 acre allotments (a total of 72,000 acres) were designated as Lands. Another 48,000 acres contained within the 1,800 al were designated as the "B" Lands. (YRID Memo Opinion at ~~,

11. The lands of the Yakima Indian Reservation, as are set forth in the preceding paragraph, have been granted certain water rights for irrigation purposes depending upon whether it is "A" Land or "B" Land:

a. The 72,000 acres designated as the "A" lands enjoy a water right of 720 cubic feet per second (cfs) of water from the



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

Yakima River. This equates to 305,613 acre feet of water.[1] This water right has a priority date of June 9, 1855 and is not subject to being prorated with other water users in the Yakima river basin during water short years. (Report of the Court Concerning the Water Rights for the Yakama Indian Nation dated November 13, 1995 in Yakima County Cause No. 77-2-01484-5 at 56-57 (hereinafter referred to as the "YIN Report"))

b. The 72,000 acres designated as the "A" Lands also enjoy a water right of an additional 100,000 acre feet of water to be derived from storage waters resulting from the construction of various dams and reservoirs within the Yakima Reclamation Project. This water right has a priority date of May 10, 1905 and is subject to proration with all other irrigation districts that receive storage water when water short years exist. (YIN Report at 57-61)

c. The 48,000 acres designated as the "B" Lands enjoy a water right of 250,000 acre feet of water to be derived from storage waters resulting from the construction of various dams and reservoirs within the Yakima Reclamation Project. This water right has a priority date of May 10, 1905 and is subject to proration with all other irrigation districts that receive storage water when water short years exist. (YIN Report at 57-61).

---

[1] A cubic foot per second (cfs) is a quantity of 1 cubic foot or 7.48 gallons, passing a given point in 1 second. An acre foot (af) is the amount of water it would take to cover an entire acre of land with one foot of water. An acre foot of water equates to 43,560 cubic feet or 325,851 gallons of water. *See Ecology v. Yakima Reservation Irrig. Dist.*, 121 Wn.2d 257, 263, at n.5, 850 P.2d 1306 (1993).



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

12. The Department of the Interior, Bureau of Indian Affairs, Wapato Irrigation Project, operates, controls and manages the diversion and distribution facilities which serve the lands within the Wapato Irrigation Project. (Report of the Court Concerning the Water Rights for the Yakima Reservation Irrigation District dated October 8, 1996 in Yakima County Cause No. 77-2-01484-5 at 56-57 (hereinafter referred to as the "YRID Report")) The allocation of water, once diverted onto the Yakama[2] Indian Reservation at the Wapato Irrigation Project diversion points, remains a duty of the Bureau of Indian Affairs through the Wapato Irrigation Project, subject to the requirements of federal law. (Conditional Final Order: Yakama Indian Nation Water Right at ¶9 attached to the February 20, 1998 affidavit of J. Jay Carroll.

13. With respect to the plaintiffs in this case, the lands that they either owned or leased in 1994 can be broken down into "A" and "B" lands as reflected in the following chart:

<u>A. Dean Oswalt</u>

| Allotment # | Serial # | Acres of "A" Lands | Acres of "B" Lands |
|---|---|---|---|
| 794 | 1591C | 40 | 35 |
| 299 | 1675 | 15.63 | 20 |

[2]At some point during the pending water adjudication, the Yakima Indian Nation adopted the spelling "Yakama" as being the true and correct spelling of its Indian name. From that point forward the spelling was consistently used when referring to the tribe. However, previous court documents used the alternative spelling. This explains why there is a difference in the spelling of the name in the documents which have been submitted in support of this motion.



Velikanje, Moore
attorneys
405 East Linc
P.O. Box 2
Yakima, WA 98907
(509) 248-6030

| Allotment # | Serial # | Acres of "A" Lands | Acres of "B" Lands |
|---|---|---|---|
| 300 | 1652 | 39.59 | 20 |
| 596 | 3174 | 52.4 | 46.1 |
| 361 | 0361 | 39.48 | 12.79 |
| 363 | 0363 | 6.9 | 0.00 |
| 1988 | 2081 | 40 | 25.38 |
| 850 | 2121 | 40 | 40 |
| T2661 | 2108 | 30 | 0.00 |
| T290 | 2756 | 0.00 | 13 |
| 849 | 2027 | 40 | 0.00 |
| T2482 | 1649 | 37.6 | 33.4 |
| T1131½ | 2440B | 38.75 | 0.00 |
| 263 | 2452 | 40 | 40 |
| 289 | 3259 | 39.5 | 14.39 |
| **TOTALS** | | 499.85 | 300.06 |

<u>Craig Oswalt</u>

| Allotment # | Serial # | Acres of "A" Lands | Acres of "B" Lands |
|---|---|---|---|
| 766 | 0766 | 40 | 32.5 |
| T2303 & 2303 | 2688 | 40 | 24.6 |
| 3704 & 3705 | 3704 & 3705 | 65 | 0.00 |
| T1011 | 2704 | 39.5 | 40 |
| 848 | 1784 | 40 | 39.5 |
| **TOTAL** | | 224.5 | 136.6 |



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

89

<u>Kirk Oswalt</u>

| Allotment # | Serial # | Acres of "A" Lands | Acres of "B" Lands |
|---|---|---|---|
| 849 | 2027 | 0 | 38.2 |
| 1752 | 2585 | 40 | 40 |
| TOTAL | | 40 | 78.2 |

(Sworn Statement of A. Dean Oswalt at ¶ 4)

14. The water is provided to the plaintiffs' lands by virtue of the canal system that has developed over time on the Reservation. With respect to allotments 3704, 3705 and 766, the water is transported via the "East Lateral'. All other allotments listed above receive water via "Lateral 4 Extension". All of the lands farmed by the plaintiffs were on the tail end of each identified canal.(Sworn statement of A. Dean Oswalt at ¶ 5).

15. Crop year 1994 was one of the worst on record with respect to drought conditions in the Yakima Valley. (Affidavit of Harry Cartmell at ¶ 3). The United States Department of the Interior, Bureau of Reclamation office estimated on May 24, 1994 that irrigation districts would only be allowed to divert 35% of the <u>proratable</u> storage water entitlements for the 1994 irrigation season. (Affidavit of Kenneth Best dated July 25, 1994 at ¶ 5).

16. In 1994 the WIP adopted a water delivery distribution plan that was designed to provide for an "equitable distribution" of the water that was available to the WIP. (July 25, 1994 Best affidavit at ¶ 7; Affidavit of Acey Oberly, Jr. at ¶ 6 & 9).



Velikanje, Moc... 
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

17. Once water was present in the canals, the plaintiffs requested that water be diverted to their property as growing thereon needed it. Plaintiffs in fact received considered to be their "proportionate share" of t: available up through June 9, 1994. (Sworn statement of A. Dean Oswalt at ¶ 6).

18. Beginning on June 10, 1994, there was insufficient water in the canals servicing the plaintiffs' lands to permit irrigation. As mentioned in a previous paragraph, the plaintiffs' lands lie at the end of the canals which bring water to the plaintiffs' lands. Plaintiffs could see that other farmers, whose lands were located further up the canal were receiving sufficient water in order to allow them to irrigate their crops. This situation lasted from June 10, 1994 through July 24, 1994. (Sworn statement of A. Dean Oswalt at ¶ 7.

19. Beginning on June 10, 1994 and continuing through July 24, 1994, the plaintiffs had contact with WIP personnel on a regular basis requesting that water be delivered to their lands. Plaintiffs could see other farmers on their canal irrigating and yet there was no water for plaintiffs to use to irrigate their crops. The WIP personnel took no actions to alleviate the problems brought to their attention. As a result, the plaintiffs crops went essentially without any irrigation water from June 10, 1994 through July 24, 1994. This caused a substantial crop loss for the plaintiffs. (Sworn statement of A. Dean Oswalt at ¶ 8).



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

31

20. Allotments 3704, 3705 and 766 were on a canal system that did implement a five day rotation for the delivery of water. None of the plaintiffs' other lands as identified above were on a rotation schedule. Their canal would be charged with water for five days and then be dry for five days so that another canal could have the water. This rotation began on June 29, 1994. (Affidavit of Acey Oberly, Jr. at ¶ 10). Unfortunately, the plaintiffs' lands were at the end of the canal and they were lucky to have two days of water out of the five allocated since users up the canal used a majority of the water prior to it reaching the plaintiffs' lands. Other land owners on the canal received the full five days of water. Had the plaintiffs received the full rotational amount of water, they could have at least been able to provide adequate ---- for their crops serviced by this particular canal. ( Statement of A. Dean Oswalt at ¶ 11)

21. On July 24, 1994, there was sufficient water in the canal that services the plaintiffs' lands in order to begin irrigation once again. This situation remained the same until irrigation water was turned off for the 1994 season. From July 24, 1994 through to the end of the irrigation season, the plaintiffs received their proportionate share of irrigation water. (Sworn Statement of A. Dean Oswalt at ¶ 9).

22. After the water returned to the canal on July 24, 1994, plaintiff Dean Oswalt inquired of WIP personnel as to why all of a sudden there was sufficient irrigation water in the canal. He spoke with either Harry Cartmell, who was hired specially as the



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

Irrigation System Manager for the WIP in 1994 or to Dana Antelope, the individual in charge of monitoring water use on the plaintiffs' canal. In response to his question, Mr. Oswalt was told that the reason that there was now more water in the canal was that the WIP had made an error in calculating how much water should be allowed to flow into the canal and as a result of that error, a lesser amount of water was allowed into the canal during the period between June 10, 1994 and July 24, 1994. He was told that the error had been corrected and that was the reason for the extra water in the canal. (Sworn statement of A. Dean Oswalt at ¶ 10).

DATED this 30TH day of September, 1998.

VELIKANJE, MOORE & SHORE, INC., P.S.
Attorneys for Plaintiffs

By: [signature]
J. Jay Carroll
WSBA NO. 17424



Velikanje, Moore & Shore, P.S.
attorneys at law
405 East Lincoln Ave.
P.O. Box 22550
Yakima, WA 98907
(509) 248-6030

33