IN THE UNITED STATES COURT OF FEDERAL CLAIMS

A. DEAN OSWALT, REINIE OSWALT, CRAIG OSWALT, MICHELLE OSWALT, KIRK OSWALT, and STACIE OSWALT,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 97-733C
(Senior Judge Futey)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court grant summary judgment in defendant's favor. In support of this motion, we rely upon the pleadings, the following brief, and the appendix and proposed findings of uncontroverted fact ("DPFUF") that are being filed with this motion.

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiffs own and lease farm land in Yakima County, Washington, that is within the boundaries of the Wapato Irrigation Project and the Yakima Indian Reservation. They claim that the Government breached contracts for the delivery of irrigation water.

II. Issues Presented

(1) Whether, in accordance with the law of the case and the uncontroverted facts, defendant is entitled to judgment as a matter of law with respect to plaintiffs' claims that are based upon the allotments for which they failed to make timely payment of operating

and maintenance assessments.

(2) Whether, with respect to the remaining allotments, defendant is entitled to judgment as a matter of law because plaintiffs cannot establish with reasonable certainty the amount of damages they suffered as a result of the alleged breach of contract.

III. Statement of Facts

Plaintiffs own and lease land in Yakima County, Washington, that is within the boundaries of the Wapato Irrigation Project ("WIP"). Compl. ¶ 4.[1] The land is also within the Yakima Indian Reservation, which was created by treaty in 1855. Compl. ¶¶ 4-5.

In 1887, Congress enacted the General Allotment Act, which directed the Secretary of the Interior to allot lands within the Reservation to individual Indians. 24 Stat. 388 (1887). The General Allotment Act also authorized the Secretary to hold the allotted lands in trust for a period of 25 years. Id. Finally, the General Allotment Act directed the Secretary to promulgate rules and regulations to govern the "just and equitable distribution" of irrigation water to the extent that irrigation water was necessary to render the land "available for agricultural purposes." 24 Stat. 390.

The Reclamation Act of 1902 authorized the Secretary to construct irrigation projects to provide water for agricultural purposes. 43 U.S.C. § 317. The Wapato Irrigation Project was created pursuant to the Reclamation Act of 1902. The Bureau of Indian Affairs administers the WIP. 25 C.F.R. § 171.

In 1902, Congress enacted legislation to allow the Indians or their heirs to sell and convey the lands that they obtained as a result of the General Allotment Act ("trust lands"). 32 Stat. 275

[1] "Compl." refers to plaintiff's amended complaint.

(1902). Two years later, Congress authorized the Secretary to dispose of any unallotted lands within the Yakima Indian Reservation ("fee lands"). 33 Stat. 595-96 (1904). The 1904 legislation also directed the Secretary to apply the proceeds of sales of unallotted lands to, among other things, “the construction, completion, and maintenance of irrigation ditches.” 33 Stat. 597. The legislation further authorized the Secretary to “require annual proportionate payments to be made as may be just and equitable for the maintenance of [irrigation] systems.” 33 Stat. 598.

In 1916, Congress enacted further legislation authorizing the construction of a dam to increase the water supply on the Yakima Reservation. 39 Stat. 154. The 1916 legislation expressly authorized the Secretary to "fix operation and maintenance charges" and to promulgate rules and regulations governing the distribution of water. 39 Stat. 154. In addition, the legislation made compliance with all the regulations of the Secretary a condition precedent to receiving water. 39 Stat. 154.

The Secretary promulgated regulations, which are found at 25 C.F.R. parts 162 and 171. Among other things, the regulations require land users to pay annual operation and maintenance ("O&M") assessments as a condition precedent to receiving irrigation water. 25 C.F.R. §§ 171.17, 171.19. The regulations do not allow the execution of a promissory note as payment for outstanding O&M assessments for leased trust land. Compare 25 C.F.R. § 171.17(b) with 25 C.F.R. § 171.17(a)(1) (allowing Indian owners to obtain water after making arrangements to pay assessments from proceeds of crop sales), 25 C.F.R. § 171.17(a)(2) (allowing delivery of water to "Non-Indian lands" if "approved deferred payment contract has been executed"), and 25 C.F.R. § 171.17(c) (allowing delivery of water to lands leased directly from the Indian owner if owner has made satisfactory arrangements for payment).

Plaintiffs farm both fee lands and trust lands within the boundaries of the WIP. DPFUF ¶ 2. During 1994, the Reservation experienced one of the worst droughts on record. DPFUF ¶ 4. Plaintiffs allege that between June 10, 1994, and July 25, 1994, they "received little or no irrigation water from the WIP." Compl. ¶ 21.

The right to obtain irrigation water for trust lands is governed by Lease Agreements. A48-101.[2] The leases likewise require the payment of operation and maintenance charges as a condition precedent to receiving irrigation water. Leases ¶ 3. The leases expressly state:

> It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located pursuant to the existing or future orders or regulations of the Secretary.

Id. The leases also incorporate 25 C.F.R. part 162. Lessees are required to pay all charges assessed against the land on or before the due date. Leases ¶ 3.

Plaintiffs did not pay most of their O&M assessments in a timely manner. Plaintiff Dean Oswalt did not pay the O&M assessment for allotments 794 and 1988 until June 23, 1994. DPFUF 5. Craig Oswalt did not pay the O&M assessment for allotments T-1101, 3704, and 3705 in 1994. DPFUF 6. Plaintiffs did make timely payments for allotments 361, 363, and 3694.

[2] "A__" refers to the appendix that is being filed with this motion.

IV. Course Of Proceedings

In an order dated October 17, 2000, the Court granted our motion to dismiss, or, in the alternative, for summary judgment, with respect to plaintiffs' claims for several of the allotments identified in the complaint. A14-28. The United States Court of Appeals for the Federal Circuit affirmed that decision in an opinion dated July 12, 2002. A29-32.

In its October 17, 2000 order, the Court denied our dispostive motion with respects to allotment 794 (fee land) and allotments 361, 363, T-1011, 1988, 2303 and T-2303, 3694, 3704 and 3705 (trust lands), and stayed those claims so that plaintiffs could pursue administrative remedies. Plaintiffs pursued administrative remedies with respect to the trust lands by submitting a written complaint to the agency. A33-35. Plaintiffs abandoned their claim for fee land allotment 794, which they did not mention in their administrative complaint. Id.

The WIP administrator denied plaintiff's claims in a decision issued on November 16, 2004. A36-40. Plaintiffs appealed to the regional director, who upheld the administrator's determination in a decision issued on November 1, 2005. A41-45. The agency's Office of Hearing and Appeals dismissed a second appeal by plaintiffs in an order dated December 13, 2005. A46-47.

ARGUMENT

I. The Standard For Summary Judgment

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and

inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "[T]he burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." Id. at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by "showing" — that is, pointing out to the [Court of Federal Claims] — that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## II. Plaintiffs' Claims For Allotments For Which They Did Not Timely Pay O&M Assessments Must Fail

The Court of Appeals for the Federal Circuit has already held in this case that timely payment was a precondition to the agency's obligation to deliver water to the Oswalts. We argued in the court of appeals that pursuant to the terms of the leases and applicable regulations, the Government had no duty to provide water to the allotments for which the Oswalts had not timely paid the O&M assessments. The court of appeals agreed:

> As to leases of trust lands, the regulations provide that "[w]ater will not be delivered to Indian trust or restricted lands that are under lease approved by the Secretary of the Interior or his authorized representative acting under delegated authority until the lessee has paid the annual assessed operation and maintenance charges." 25 C.F.R. § 171.17(b) (2001). The regulation further provides that, as a precondition to the delivery of water, the operation and maintenance assessments are to be paid, or payment

> is to be arranged, in a timely fashion. Id. The Oswalts do not dispute that the operations and maintenance assessments they paid in 1994 were late. Therefore, the Oswalts cannot establish the obligation by the government to deliver water, or consequently a breach of that obligation.

A32 (emphasis added).

Pursuant to uncontroverted facts and the law of this case as established by the Federal Circuit, the Government owed no duty to provide water to the plaintiffs for allotments 794, 2303 and T-2303, 3704, 3705, and T-1011. It is uncontroverted that plaintiffs did not pay the O&M assessments for those allotments until after 1994. DPFUF ¶¶ 5-6. The timely payment of the O&M assessments was, as the Federal Circuit held, a precondition to the delivery of water. A32. "Therefore, the Oswalts cannot establish the obligation by the government to deliver water, or consequently a breach of that obligation." Id.

## III. Plaintiffs' Remaining Claims Must Fail Because Plaintiffs Cannot Establish Causation Or Damages

Plaintiffs timely paid the O&M assessments for allotments 361, 363, and 3694. Plaintiffs also made an untimely payment of O&M assessments for allotment 1988 on June 23, 1994, which was during the period in which plaintiffs claim the agency failed to provide water. Nonetheless, even assuming for the sake of argument that the agency breached a duty to provide water with respect to these allotments, plaintiffs cannot prove causation or damages with reasonable certainty.

It is well-settled that a plaintiff seeking contract damages must demonstrate a breach of a specific contractual obligation and damages caused by the breach. San Carlos Irrigation and Drainage District v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). Moreover, the "plaintiff

must show that but for the breach, the damages alleged would not have occurred. San Carlos Irrigation and Drainage District v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997). Damages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty. Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005). While the amount of damages need not be "ascertainable with absolute exactness or mathematical precision[,]" recovery for speculative damages is precluded. Id. (quoting San Carlos Irrigation and Drainage District, 111 F.3d at 1563).

Plaintiff Dean Oswalt testified that lack of water would diminish crop yields, but he could not estimate the amount of diminution with reasonable certainty. When asked what effect receiving only 50 percent of his irrigation water allotment would have on crop yield, he testified: "Honestly, I can't give you a percentage because I – 50 percent water, though, would drastically affect average yields." A122. He described a 50 percent reduction in crop yields as a "ball park guess" of the effect of receiving 50 percent of his allotted water. Id. When asked about the effect of receiving only 40 percent of his allotted water, Mr. Oswalt testified: "Again, we're grabbing straws here. I don't know. It would be significant to average yields is all I can say." A123. When asked about the effect of receiving only 30 percent of his allotted water, Mr. Oswalt testified, "You can't say. There are too many elements that you have to consider in nature. I mean, the heat is the big factor. . . . I can't give you a figure. Honestly, I don't know. We had significant yield losses due to the water that was available." A123-24.

Dean Oswalt's "ball park guesses" are insufficient to establish damages with reasonable certainty. Tyger Constr. Co. v. United States, 31 Fed. Cl. 177, 275 (1994) ("[P]roof of damages lies with the plaintiff. A ballpark approximation will not suffice."). Moreover, Dean Oswalt's guesses become even more speculative as applied to the specific allotments, and therefore cannot support recovery.

It is uncontroverted that plaintiffs did not pay the O&M assessments for allotment 1988 until June 23, 1994. DPFUF ¶ 5. For the reasons set forth in the preceding section, the date of the untimely payment was the earliest date upon which plaintiffs could have been entitled to receive water. June 23, 1994, fell within the June 10-July 25, 1994 period in which plaintiffs claim that the agency failed to provide water. It is impossible to segregate the damages that resulted from Mr. Oswalt's failure to pay the O&M assessment from the damages that resulted from the agency's alleged failure to provide water after the assessment was paid.

The three allotments for which plaintiffs did timely pay the O&M assessments are Nos. 361, 363, and 3694. Plaintiffs cannot establish damages with reasonable certainty for these allotments. With respect to allotment 361, Dean Oswalt testified that the average yield in a normal year for grain corn would have been between five and six tons per acre. A134-35. He acknowledged that some water was provided to allotment 361, but he could not recall how much. A135-36. He estimated that the 1994 yield of allotment 361 was "somewhere around the 3 and half ton area." A136. Because plaintiffs do not know how much water was provided to allotment 361, they cannot establish how much of the alleged diminution in yield of between 1.5 and 2.5 tons per acre was caused by the alleged breach.

Plaintiff's claims for allotment 363 must fail for the same reason. Dean Oswalt testified that it would have received the same amount of water as allotment 361, because these two allotments were part of the same water system. A136-37. Because plaintiffs do not know how much water was provided to that system, they cannot establish that the alleged breach by the agency diminished the crop yield for allotment 363.

With respect to allotment 3694, Dean Oswalt estimated that the average yield in a normal year was 5.5 tons of grain corn per acre. A138. He further testified that the actual yield in 1994 "may have been very close to" 2.8 tons per acre. He also testified that allotment 3694 received "[v]ery minimal water." A137. Although plaintiffs have provided more details concerning allotment 3694 than they have for any other allotment, their evidence, even if accepted as persuasive, still falls short of establishing damages with reasonable certainty. During 1994, the Yakima Reservation experienced one of the worst droughts on record, DPFUF ¶ 4, which would have reduced yields even if plaintiffs had received all of the water to which they claim they were entitled. In general, Mr. Oswalt testified that it would not be possible to estimate the effect of diminished water, other than through a "ball park guess." A122. He also testified that, notwithstanding the "[v]ery minimal water" received, allotment 3694's yield "may have been very close" to 2.8 tons per acre, which would have been just over half of the average yield of 5.6 tons per acre. A136-37. Mr. Oswalt's testimony, in its entirety, is insufficient to establish with reasonable certainty that the alleged shortfall of water caused the alleged diminution of yield for allotment 3694.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court issue summary judgment in favor of the Government.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kirk T. Manhardt
by s/ Donald E. Kinner
KIRK T. MANHARDT
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0277
Fax: (202) 307-0972

June 25, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 25th day of June, 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Roger A. Hipp