Form 5-5441

16. Additions. Prior to execution of this lease, provision(s) number(s) 17, 18 & 19 has (have) been added hereto and by reference is (are) made a part hereof.

IN WITNESS WHEREOF, the lessee (and lessor has (have) hereunto affixed his (their) hand(s) and seal(s), the day and year first above written (and the lessor hereunto has caused to be attached his legal acceptance on which he has affixed his hand and seal).

Two witnesses to each signature:

Floydine Randall
Dora L. Buzzemptz

A. Dean Oswalt — Lessee

A. Dean Oswalt — Lessee

Lessee

Yakima Land Enterprise

Ross K. Sockzehigh — Lessor

For and on Behalf of the Yakima Tribal Council pursuant to Sec. B. as modified, of the Plan of Operations of the Tribal Land Enterprise and Land Committee minutes dated 10-16-92

Previous Rent: $ 4000/yr (GR)
Applicants offer accepted by Tribal Land Committee.
Lease can be approved in Accordance w/ 25 CFR 162.5(b) & 25 CFR 162.6(a)
Rent: $ 4000.00 FR. B3970.00 (2/1/92)
O&M (A) 39.48 (B) 20.77

Lessor

Lessor

RECEIVED OR FILED
PORTLAND AREA OFFICE
124 17856
93 APR 12 P12:32
TITLES & RECORDS SECTION

Lessor

Lessor

Lessor

Approved MAR 8 1993, 19

SUPERINTENDENT Approving Official

The within document is hereby approved: as delegated in 10 BIAM, section 2, release 44, Feburary 18, 1989, incorporating 230 DM release No. 2784 dated March 16, 1988.

124 17856

Provision 17

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices-employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land Operations SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

**Allotment T-361-D, 361-H & T-361-G** (361-H)That part of Lot 2, South and West of Centerline of Hwy #22 except reserved homesites in SE corner Sec.4; 18.85 ac. M/L (T-361-G)That part of Lot 1 North & East of centerline of Hwy 22, Sec.4-9-21 36.10 ac. M/L (T-361-D)NW corner of Lot 1, thence 200' East, thence, South 217.8'; thence West 200' to West line of Lot 1; thence North along West line 217.8' T.P.O.B., 1 ac. M/L

Total Ac. ______
O & M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______
Initials ______

**Special Practices & Commitments:** Lessee partially completed commitment from Lease No. 1-3742 (1985-1989) but will complete totally this year by installing cement box at point of water division.

**Land Use:** General cropping.

[signature]
Soil Conservationist
Frank X. Morin, Jr.

[signature]
Lessee
A. DEAN OSWALT

A52

*U.S. GPO: 1989-694-719/00186

PROVISION NO. 18
ALLOTMENT NO. 361-D,G,H

ACCESS

It is understood and agreed that the Superintendent be and he is hereby authorized to grant access road privileges through the within described lands for serving adjacent or nearby inaccessible Indian trust lands. Provided, however, that said access roads be established as well as operated with least possible damage to within lands. And further, that the Superintendent shall be sole judge of equities involved.

PRIVILEGE OF SUCCEEDING LESSEE

It is understood and agreed the succeeding shall have privilege of occupying the fields for the purpose of preparing the land for the ensuing year's crop on and after December 1st preceding the expiration of the lease.

WATER POLLUTION

The lessee agrees to comply with all applicable water pollution control laws, regulations, and State and Federal Water pollution control agencies recommendations, in the construction of all sewerage systems, sewage treatment or disposal plants or systems, or in the improvement or extension of any sewerage systems or sewage treatment or disposal plants.

DELINQUENT PENALTY

Provision No. 2 is amended to read: It is understood and agreed between the parties hereto that, if any installment or rental is not paid within 30 days after becoming due, penalty at the rate of 18 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

IMPROVEMENTS

All buildings and inside fences owned by Lessee located on this tract must be removed within 30 days upon termination or expiration of lease.

UPKEEP OF IMPROVEMENTS

In the event Lessee has possession of buildings, they must be kept in an orderly and sanitary condition.

ASC AGREEMENT — OWNERS

The owners agree to the combination of this tract of land with other lands as a farm unit in the County ASC Program.

PROPERTY OF LESSOR: None

PROPERTY OF LESSEE: None

Date: 1/5/93 154 A. Dean Oswalt

A. Dean Oswalt LESSEE

124 17856

# FIRE DISTRICT NO. 5
# ASSESSMENT AGREEMENT

PROVISION NO. 19

LESSEE: A. DEAN OSWALT

ADDRESS 541 CHAUSEE ROAD
GRANGER, WA 98932
PH# 854-1889

| LEASE NO. | ALLOT. NO. |
|---|---|
| 1-1-7859-9393 | T 361-D,G,H |
| LEASE TERM | YEARS ONE (1) |
| From: 1/1/93 | To: 12/31/93 |

LAND DESCRIPTION AL. T-361-H: Part of Lot 2 lying SW of Hwy 22 (except homesites in SE corner) Sec. 4; AL. T-361-G: That part of Lot 1 N and E of centerline of Hwy 22, Sec. 4, T9N., R.21E., WM, WA, described as follows: beginning at the NW corner of Lot 1, thence E. along the N boundary 200'; thence S 217.8'; thence W 200' to W boundary of Lot 1; thence N along W boundary 217.8' to TPOB, ctg 1 acre, m/l.
FIRE PROTECTION FEE $ 44.00

It is understood and agreed that the lessee will pay annually, on the date specified for rental payment, the above fee for fire protection. This fee shall not exceed the levy charged for fire protection on comparable non-Indian lands in the vicinity.

Payment will be made to YAKIMA COUNTY FIRE DISTRICT No. 5 and deposited with YAKIMA COUNTRY FIRE DISTRICT No. 5, P. O. Box 447, Zillah, Washington 98953.

Yakima County Fire District No. 5 shall have the right to adjust the levy on leases exceeding six years, if necessary to conform with fees charged on similar land in the vicinity.

DATE 1/5/93 — A. Dean Oswalt (signature)
A. Dean Oswalt (LESSEE)

DATE

(LESSEE)

DATE:

155

LAND COMMITTEE ACTION 124 17856

ITEM NO. 11 (93-02) DATE: 10/16/92

DATE OF APPLICATION: August 26, 1992

TYPE OF APPLICATION: Sealed Bid #41 Tract 597 Al-T-361 D,G,H - Farming Lease.

ALLOTMENT NO. AND DESCRIPTION: See attached copy of lease card.

APPLICANT: A. Dean Oswalt
541 Chausee Road
Granger, WA 98932

OFFER: $4,200.00/5 years (92-96).

APPRAISAL: $3,970.00 (02/10/92)

PREVIOUS RENT: $4,000.00/one (1) year - A. Dean Oswalt.

REMARKS: 1. O & M: (A) 39.48 (B) 20.77

ACTION RECOMMENDED BY LAND ENTERPRISE MANAGER: (Refer: LCA NO. 92-09, ITEM #04, DTD. 01/27/92)
1. Land Enterprise Manager recommends approval for one-year only due to previous cancellation.

Date: 09/22/92

Land Enterprise Manager

---

ACTION TAKEN: MOTION TO APPROVE FOR ONE-YEAR ONLY DUE TO PREVIOUS CANCELLATION.

MOTION BY: Hazel Olney SECONDED BY: Ross Sockzehigh

NO. MEMBERS PRESENT: 3 VOTE: FOR: 2 AGAINST: -0-

for Clifford Moses, Chairman
Tribal Land Committee

RDB:dmm

## TRUST LAND

# LEASE NO 1-7022

# ALLOTMENT 363

Form 5-5441
(PAO Revised Oct. 1971)

# UNITED STATES DEPARTMENT OF THE INTERIOR

## FARMING & GRAZING LEASE

124 16964

ALLOTMENT NO. 363
LEASE NO. I-7022
CONTRACT NO.

Yakima Indian Agency

THIS CONTRACT, made and entered into this 13th day of July, 1990, by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the "lessor," and A. DEAN OSWALT of 541 Chausee Road, Granger, WA 98932, hereinafter called the "lessee," in accordance with the provisions of existing law and the regulations (25 CFR 162) which, by reference, are made a part hereof, **WITNESSETH:** That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to wit: **Acreage lying north of railroad in SE4NE4, Sec. 4, T. 9 N., R. 21 E., W.M., WA.,**

containing 7 acres, more or less, of which not to exceed SEE SMC FARM PLAN acres may be cultivated, for the term of five (5) years beginning on the first day of January, 1991, fully to be completed and ended on the last day of December, 1995, subject to the conditions hereinafter set forth. The lessee, in consideration of the foregoing, covenants and agrees, as rental for the land and premises, to pay $510.00 (one----- ~~share of all crops as hereinafter provided)~~ per annum:

| TO | DATE DUE | AMOUNT |
|---|---|---|
| BUREAU OF INDIAN AFFAIRS | ON OR BEFORE 12/1/90 | |
| Yakima Agency | & EACH 12/1 THEREAFTER | |
| P.O. Box 632 | UNTIL A TOTAL OF FIVE | |
| Toppenish, WA 98948 | (5) PAYMENTS ARE MADE | - $510.00 |
| EXECUTION FEE: $25.50 | | |

In the event of the death of any of the owners to whom, under the terms of this lease, rentals are to be paid direct, all rentals remaining due and payable shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises. This provision is applicable only while the leased premises are in trust or restricted status.

While the leased premises are in trust or restricted status, the Secretary may in his discretion, and upon notice to the lessee, suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

124 16964

This lease is subject to the following provisions:

1. "SECRETARY" as used herein means the Secretary of the Interior or his authorized representative.

2. INTEREST.—It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest at the rate of 6 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

3. OPERATION AND MAINTENANCE ASSESSMENTS.—It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to the existing or future orders or regulations of the Secretary.

4. REPAIRS.—It is understood and agreed that the lessee is to keep the premises covered by this lease in good repair, and the said lessee will be responsible for all damages done to buildings and fences and other improvements, except the usual wear and decay.

5. CROP LEASES.—It is understood and agreed that the lessee will not purchase or be a party to the purchase by anyone, of the lessor's share of the crop, without prior approval of the Secretary.

6. SUBLEASES AND ASSIGNMENTS.—Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary and the written consent of all parties to this lease, including the surety or sureties.

7. RESERVATIONS.—It is understood and agreed that the lessor reserves the right to make oil and gas leases, grant rights of way and other legal grants, on the premises covered by this lease and that in event such a lease or grant is made, the lessee hereunder shall be entitled to damages for the actual loss sustained by him on account of said lease or grant, and to nothing more. It is further understood that in the event of a dispute between the lessee hereunder and the lessee or permittee under any oil and gas lease, right-of-way, or other grant, as to the amount of such actual damages the matter will be referred to the Secretary who shall be the sole and final judge as to the amount of the said damages.

8. UNLAWFUL CONDUCT.—The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

9. RELINQUISHMENT OF SUPERVISION BY THE SECRETARY.—Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified by the Secretary of any such change in the status of the land.

10. IMPROVEMENTS.—Unless otherwise provided herein it is understood and agreed that any buildings or other improvements placed upon the said land by the lessee become the property of the lessor upon termination or expiration of this lease.

11. VIOLATIONS OF LEASE.—It is understood and agreed that violations of this lease shall be acted upon in accordance with the regulations in 25 CFR 131.

12. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS.—No assent, express or implied, to any breach of any of the lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

13. UPON WHOM BINDING.—It is understood and agreed that the covenants and agreements hereinbefore mentioned shall extend to and be binding upon the heirs, assigns, executors, and administrators of the parties to this lease. While the leased premises are in trust or restricted status, all the lessee's obligations under this lease, and the obligations of its sureties, are to the United States as well as to the owner of the land.

14. INTEREST OF MEMBER OF CONGRESS.—No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

15. APPROVAL.—It is understood and agreed that this lease shall be valid and binding only after approval by the secretary.

16. Prior to execution of this lease, provision(s) number(s) 17, 18, & 19 has (have) been added hereto and by reference is (are) made a part hereof.

IN WITNESS WHEREOF, the lessee (and lessor has (have) hereunto affixed his (their) hand(s) and seal(s), the day and year first above written (and the lessor hereunto has caused to be attached his legal acceptance on which he has affixed his hand and seal).

Two witnesses to each signature:

Rhoda L. Sampson

Dora L. Wright

A. Dean Oswalt

A. DEAN OSWALT LESSEE

LESSEE

LESSOR

LESSOR

Previous Rent: $400.00/2yrs (19-00)

Applicant offer was accepted and Lease

Rent $510.00

LESSOR

RECEIVED OR FILED
BUR. INDIAN AFFAIRS
PORTLAND AREA OFFICE

124 16964

91 MAR 12 P 3:11

LESSOR

BRANCH OF REALTY
TITLES & RECORDS
SECTION

LESSOR

LESSOR

Approved JAN 1 8 1991, 19____

Approving Official

SUPERINTENDENT

Page 3

Act of July 8, 1940 (... Stat. 745) for entire ownership.

41

Provision 17

124 16964

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices-employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land Operations SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

Allotment 363 acreage lying N. of R/R R/W in SE4NE4 Sec.4-9-21

Special Practices & Commitments: None.

Total Ac. ______
O & M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______

Land Use: General cropping.

[signature]
Soil Conservationist
Frank X. Morin, Jr.

[signature]
Lessee A. DEAN OSWALT

42



*U.S. GPO: 1989-694-719/00186

## TRUST LAND

# LEASE NO 1-7287

# ALLOTMENT T-1011

52

Form 5-5441
(PAO Revised
Oct 1971)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

DATE 10-30-91 INITIAL [signature]
Lessee Copy
Lessor Copy Y. X. E.
SMC Copy

FARMING & GRAZING
# LEASE

124 17332

Allotment No. T-1011

Lease No. 1-1-7287-9296

YAKIMA Indian Agency

Contract No.

THIS CONTRACT, made and entered into this 29 day of April, 19 91 by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the "lessor," and Kirk Oswalt (854-1889) of 541 Chausee Rd.; Granger, WA 98932, hereinafter called the "lessee," *in accordance with the provisions of existing law and the regulations (25 CFR 162)* which, by reference, are made a part hereof, WITNESSETH: That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to wit:

S½NW¼ (except a parcel of land within Northern Pacific Railroad right-of-way and existing homesite), Sec. 29, T. 10 N., R. 21 E., W.M., WA, containing 79.14 acres, more or less.

containing 79.14 *acres, more or less, of which not to exceed* SEE SMC FARM PLAN *acres may be cultivated, for the term* of five (5) years, beginning on the first day of January, 19 92 fully to be completed and ended on the last day of December, 19 96, subject to the conditions hereinafter set forth. The lessee, in consideration of the foregoing, covenants and agrees, as rental for the land and premises, to pay $ 4,000.00 (~~one ........ share of all crops as hereinafter provided~~) per annum:

| TO— | DATE DUE | AMOUNT |
|---|---|---|
| BUREAU OF INDIAN AFFAIRS | On or before 12/01/91 | |
| Yakima Indian Agency | & each 12/01 thereafter | |
| P.O. Box 632 | until a total of five (5) | |
| Toppenish, WA 98948 | payments are made | $4,000.00 |

EXECUTION FEE: $200.00

In the event of the death of any of the owners to whom, under the terms of this lease, rentals are to be paid direct, all rentals remaining due and payable shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises. This provision is applicable only while the leased premises are in trust or restricted status.

While the leased premises are in trust or restricted status, the Secretary may in his discretion, and upon notice to the lessee, suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.



*GPO 597-111 (1985)

dmm 06/20/91

53

A62

K.M.O.

This lease is subject to the following provisions:

1. "SECRETARY" as used herein means the Secretary of the Interior or his authorized representative.

2. INTEREST.—It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest at the rate of 6 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

3. OPERATION AND MAINTENANCE ASSESSMENTS.—It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to the existing or future orders or regulations of the Secretary.

4. REPAIRS.—It is understood and agreed that the lessee is to keep the premises covered by this lease in good repair, and the said lessee will be responsible for all damages done to buildings and fences and other improvements, except the usual wear and decay.

5. CROP LEASES.—It is understood and agreed that the lessee will not purchase or be a party to the purchase by anyone, of the lessor's share of the crop, without prior approval of the Secretary.

6. SUBLEASES AND ASSIGNMENTS.—Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary and the written consent of all parties to this lease, including the surety or sureties.

7. RESERVATIONS.—It is understood and agreed that the lessor reserves the right to make oil and gas leases, grant rights of way and other legal grants, on the premises covered by this lease and that in event such a lease or grant is made, the lessee hereunder shall be entitled to damages for the actual loss sustained by him on account of said lease or grant, and to nothing more. It is further understood that in the event of a dispute between the lessee hereunder and the lessee or permittee under any oil and gas lease, right-of-way, or other grant, as to the amount of such actual damages the matter will be referred to the Secretary who shall be the sole and final judge as to the amount of the said damages.

8. UNLAWFUL CONDUCT.—The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

9. RELINQUISHMENT OF SUPERVISION BY THE SECRETARY.—Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified by the Secretary of any such change in the status of the land.

10. IMPROVEMENTS.—Unless otherwise provided herein it is understood and agreed that any buildings or other improvements placed upon the said land by the lessee become the property of the lessor upon termination or expiration of this lease.

11. VIOLATIONS OF LEASE.—It is understood and agreed that violations of this lease shall be acted upon in accordance with the regulations in 25 CFR 131.

12. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS.—No assent, express or implied, to any breach of any of the lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

13. UPON WHOM BINDING.—It is understood and agreed that the covenants and agreements hereinbefore mentioned shall extend to and be binding upon the heirs, assigns, executors, and administrators of the parties to this lease. While the leased premises are in trust or restricted status, all the lessee's obligations under this lease, and the obligations of its sureties, are to the United States as well as to the owner of the land.

14. INTEREST OF MEMBER OF CONGRESS.—No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

15. APPROVAL.—It is understood and agreed that this lease shall be valid and binding only after approval by the secretary.

Form 5-5441
(PAO Revised
Oct 1971)



54 K.M.O

124 17332

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices-employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land Operations SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

Allotment T-1011 S2NW4 Sec.29-10-21

Special Practices & Commitments: None.

Land Use: General cropping and pasture w/grazing aftermath.

Total Ac. ______
O & M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______

55

[signature]
Soil Conservationist
Frank X. Morin, Jr.

[signature]
Lessee
KIRK OSWALT

*U.S. GPO: 1989-694-719/00106

EXHIBIT "A"

Provision No. 18
Allot. No. T-1011

124 17332

ACCESS

It is understood and agreed that the Superintendent be and he is hereby authorized to grant access road privileges through the within described lands for serving adjacent or nearby inaccessible Indian trust lands. Provided, however, that said access roads be established as well as operated with least possible damage to within lands. And further, that the Superintendent shall be sole judge of equities involved.

PRIVILEGE OF SUCCEEDING LESSEE

It is understood and agreed the succeeding shall have privilege of occupying the fields for the purpose of preparing the land for the ensuing year's crop on and after December 1st preceding the expiration of the lease.

WATER POLLUTION

The lessee agrees to comply with all applicable water pollution control laws, regulations, and State and Federal Water pollution control agencies recommendations, in the construction of all sewerage systems, sewage treatment or disposal plants or systems, or in the improvement or extension of any sewerage systems or sewage treatment or disposal plants.

DELINQUENT PENALTY

Provision No. 2 is amended to read: It is understood and agreed between the parties hereto that, if any installment or rental is not paid within 30 days after becoming due, penalty at the rate of 18 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

IMPROVEMENTS

All buildings and inside fences owned by Lessee located on this tract must be removed within 30 days upon termination or expiration of lease.

UPKEEP OF IMPROVEMENTS

In the event Lessee has possession of buildings, they must be kept in an orderly and sanitary condition.

ASC AGREEMENT — OWNERS

The owners agree to the combination of this tract of land with other lands as a farm unit in the County ASC Program.

PAGE TWO - EXHIBIT "A"

AGREEMENTS FOR UTILITY SERVICES 124 17332

Lessee shall have the right to enter into agreements with public utility companies and State of Washington or any of its political subdivisions to provide utility services, including gas, water, electricity, telephone, television & sewer lines necessary to full enjoyment of leased premises and development thereof in accordance with the provisions of this lease; provided that such an agreement shall not be for a period longer than initial term of this lease or any extension thereof. Upon entering into such agreement or agreements, the lessee shall furnish to the Secretary executed copies thereof together with a plat or diagram showing true location of the utility lines to be constructed in accordance therewith.

**PROPERTY OF LESSOR:** Boundary fences & all buried irrigation pipes.

**PROPERTY OF LESSEE:** Inside fences.

Date: 9/13/91

Kirk Oswalt (signature)
Kirk Oswalt LESSEE

57

# FIRE DISTRICT NO. 5
# ASSESSMENT AGREEMENT

124 17332

PROVISION NO. 19

| | | |
|---|---|---|
| LESSEE: Kirk Oswalt | LEASE NO. | ALLOT. NO. |
| ADDRESS 541 Chausee Rd. | 1-7287 | T-1011 |
| Granger, WA 98932 | LEASE TERM | YEARS Five (5) |
| PH# 854-1889 | From: 01/01/92 | To: 12/31/96 |

LAND DESCRIPTION $S\frac{1}{2}NW\frac{1}{4}$ (except a parcel of land within Northern Pacific Railroad right-of-way and existing homesite), Sec. 29, T. 10 N., R. 21 E., W.M., WA, containing 79.14 acres, more or less.

FIRE PROTECTION FEE $ 53.25

It is understood and agreed that the lessee will pay annually, on the date specified for rental payment, the above fee for fire protection. This fee shall not exceed the levy charged for fire protection on comparable non-Indian lands in the vicinity.

Payment will be made to YAKIMA COUNTY FIRE DISTRICT No. 5 and deposited with YAKIMA COUNTRY FIRE DISTRICT No. 5, P. O. Box 447, Zillah, Washington 98953.

Yakima County Fire District No. 5 shall have the right to adjust the levy on leases exceeding six years, if necessary to conform with fees charged on similar land in the vicinity.

DATE 9/13/91 — Kirk Oswalt
Kirk Oswalt (LESSEE)

DATE ............

............ (LESSEE)

DATE: ............

58

dmm 06/24/91

LAND COMMITTEE ACTION 124 17332

ITEM NO. 10 (92-02) DATE: 10/01/91

DATE OF APPLICATION: 04/17/91

TYPE OF APPLICATION: FARMING AND GRAZING LEASE

ALLOTMENT NO. AND DESCRIPTION: T-1011: S2NW4 SEC. 29 T10N R21E, W.M., WA. CONTAINING 80 ACRES MORE OR LESS.

APPLICANT: KIRK OSWALT ( NO PHONE )
541 CHAUSEE
GRANGER, WA 98932

OFFER: $4000.00 FOR FIVE YEARS TO BEGIN ( 01/01/92 )

APPRAISAL: $3990.00 ( 10/09/90 )

PREVIOUS RENT: $1500.00 ( 01/01/89 - 12/31/91 )

REMARKS:
1. LEASING SECTION RECOMMENDS APPROVAL.

ACTION RECOMMENDED BY LAND ENTERPRISE MANAGER:(Refer:LCA NO. 90-04, Item#58, DTD. 01/24/90.)
1. Land Enterprise Manager recommends approval provided homesite in middle of northern boundary is excluded and rent remains same.

DATE: 04/26/91

Land Enterprise Manager

ACTION TAKEN: MOTION TO APPROVE WITH LAND ENTERPRISE MANAGER'S RECOMMENDATIONS.

MOTION BY: HAZEL OLNEY SECONDED BY: CLIFFORD MOSES

NO. MEMBERS PRESENT: 3 VOTE: FOR 2 AGAINST: -0-

for Chairman, Tribal Land Committee

59

lease 1-7614
alT. 1988

**TRUST LAND**

# LEASE NO 1-7614

# ALLOTMENT 1988

30

Form 5-5449
(PAO Revised
Oct 1971)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

FARMING & RESIDENTIAL

# LEASE

☑ DATE AUG 3 1 1992 INITIAL
☑ Lessee Copy
☐ Lessor Copy
☑ SMC Copy

Allotment No. 1988

Lease No. 1-1-7614-9296

YAKIMA Indian Agency

Contract No.

THIS CONTRACT, made and entered into this 21 day of February, 19 92, by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the "lessor," and A. Dean Oswalt (PH# 854-1889) of 541 Chausee Rd.; Granger, WA 98932, hereinafter called the "lessee," in accordance with the provisions of existing law and the regulations (25 CFR 162) which, by reference, are made a part hereof, WITNESSETH: That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to wit:

AL.1988: SW¼NW¼, (less 9.45 acres deeded land North of Marion Drain) & NW¼SW¼, Sec. 28, T. 10 N., R. 21 E., W.M., WA.

containing 70.55 acres, more or less, of which not to exceed SEE SMC / FARM PLAN acres may be cultivated, for the term of five (5) years, beginning on the first day of January, 19 92, fully to be completed and ended on the last day of December, 19 96, subject to the conditions hereinafter set forth. The lessee, in consideration of the foregoing, covenants and agrees, as rental for the land and premises, to pay $ 3,700.00 ~~(one ........ share of all crops as hereinafter provided)~~ per annum:

| TO— | DATE DUE | AMOUNT |
|---|---|---|
| BUREAU OF INDIAN AFFAIRS | UPON APPROVAL & On or before | |
| Yakima Indian Agency | 12/1/92 & each 12/1 thereafter | |
| P.O. Box 632 | until a total of five (5) | |
| Toppenish, WA 98948 | payments are made | $3,700.00 |

EXECUTION FEE: $185.00

In the event of the death of any of the owners to whom, under the terms of this lease, rentals are to be paid direct, all rentals remaining due and payable shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises. This provision is applicable only while the leased premises are in trust or restricted status.

While the leased premises are in trust or restricted status, the Secretary may in his discretion, and upon notice to the lessee, suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.



★ GPO 594-597

A70 31

dmm 3/18/92

This lease is subject to the following provisions:

1. "SECRETARY" as used herein means the Secretary of the Interior or his authorized representative.

2. INTEREST.—It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest at the rate of 6 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

3. OPERATION AND MAINTENANCE ASSESSMENTS.—It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to the existing or future orders or regulations of the Secretary.

4. REPAIRS.—It is understood and agreed that the lessee is to keep the premises covered by this lease in good repair, and the said lessee will be responsible for all damages done to buildings and fences and other improvements, except the usual wear and decay.

5. CROP LEASES.—It is understood and agreed that the lessee will not purchase or be a party to the purchase by anyone, of the lessor's share of the crop, without prior approval of the Secretary.

6. SUBLEASES AND ASSIGNMENTS.—Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary and the written consent of all parties to this lease, including the surety or sureties.

7. RESERVATIONS.—It is understood and agreed that the lessor reserves the right to make oil and gas leases, grant rights of way and other legal grants, on the premises covered by this lease and that in event such a lease or grant is made, the lessee hereunder shall be entitled to damages for the actual loss sustained by him on account of said lease or grant, and to nothing more. It is further understood that in the event of a dispute between the lessee hereunder and the lessee or permittee under any oil and gas lease, right-of-way, or other grant, as to the amount of such actual damages the matter will be referred to the Secretary who shall be the sole and final judge as to the amount of the said damages.

8. UNLAWFUL CONDUCT.—The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

9. RELINQUISHMENT OF SUPERVISION BY THE SECRETARY.—Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified by the Secretary of any such change in the status of the land.

10. IMPROVEMENTS.—Unless otherwise provided herein it is understood and agreed that any buildings or other improvements placed upon the said land by the lessee become the property of the lessor upon termination or expiration of this lease.

11. VIOLATIONS OF LEASE.—It is understood and agreed that violations of this lease shall be acted upon in accordance with the regulations in 25 CFR 131.

12. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS.—No assent, express or implied, to any breach of any of the lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

13. UPON WHOM BINDING.—It is understood and agreed that the covenants and agreements hereinbefore mentioned shall extend to and be binding upon the heirs, assigns, executors, and administrators of the parties to this lease. While the leased premises are in trust or restricted status, all the lessee's obligations under this lease, and the obligations of its sureties, are to the United States as well as to the owner of the land.

14. INTEREST OF MEMBER OF CONGRESS.—No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

15. APPROVAL.—It is understood and agreed that this lease shall be valid and binding only after approval by the secretary.

Form 5-5441
(PAO Revised
Oct 1971)

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices-employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land Operations SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

Allotment 1988 SW4NW4 (Less 9.45 acres deeded land North of Marion Drain) & NW4SW4 Sec.28-10-21

Special Practices & Commitments: Lessee to remove gravel and backfill to grade on approx. 1-2 acres and put into crop production. Lessee to coordinate before and after work accomplished with Ag. Engineer staff.

Land Use: General cropping and grazing crop aftermath (except last year of lease).

Total Ac. ______
O & M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______

[signature]
Soil Conservationist
for Frank X. Morin, Jr.

[signature]
Lessee A. DEAN OSWALT

A72

EXHIBIT "A"

Provision No. 18
Allot. No. 1988

ACCESS

It is understood and agreed that the Superintendent be and he is hereby authorized to grant access road privileges through the within described lands for serving adjacent or nearby inaccessible Indian trust lands. Provided, however, that said access roads be established as well as operated with least possible damage to within lands. And further, that the Superintendent shall be sole judge of equities involved.

PRIVILEGE OF SUCCEEDING LESSEE

It is understood and agreed the succeeding shall have privilege of occupying the fields for the purpose of preparing the land for the ensuing year's crop on and after December 1st preceding the expiration of the lease.

WATER POLLUTION

The lessee agrees to comply with all applicable water pollution control laws, regulations, and State and Federal Water pollution control agencies recommendations, in the construction of all sewerage systems, sewage treatment or disposal plants or systems, or in the improvement or extension of any sewerage systems or sewage treatment or disposal plants.

DELINQUENT PENALTY

Provision No. 2 is amended to read: It is understood and agreed between the parties hereto that, if any installment or rental is not paid within 30 days after becoming due, penalty at the rate of 18 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

IMPROVEMENTS

All buildings and inside fences owned by Lessee located on this tract must be removed within 30 days upon termination or expiration of lease.

UPKEEP OF IMPROVEMENTS

In the event Lessee has possession of buildings, they must be kept in an orderly and sanitary condition.

ASC AGREEMENT — OWNERS

The owners agree to the combination of this tract of land with other lands as a farm unit in the County ASC Program.



a.a.a.

PAGE TWO - EXHIBIT "A"

**AGREEMENTS FOR UTILITY SERVICES**

Lessee shall have the right to enter into agreements with public utility companies and State of Washington or any of its political subdivisions to provide utility services, including gas, water, electricity, telephone, television & sewer lines necessary to full enjoyment of leased premises and development thereof in accordance with the provisions of this lease; provided that such an agreement shall not be for a period longer than initial term of this lease or any extension thereof. Upon entering into such agreement or agreements, the lessee shall furnish to the Secretary executed copies thereof together with a plat or diagram showing true location of the utility lines to be constructed in accordance therewith.

**PROPERTY OF LESSOR:** None

**PROPERTY OF LESSEE:** None

Date: 7/23/97

A. Dean Oswalt LESSEE

# FIRE DISTRICT NO. 5
# ASSESSMENT AGREEMENT

PROVISION NO. 19

LESSEE: A. Dean Oswalt

ADDRESS 541 Chausee Rd.

Granger, WA 98932

PH# 854-1889

| LEASE NO. | ALLOT. NO. |
| --- | --- |
| 1-1-7614-9296 | 1988 |
| LEASE TERM | YEARS Five (5) |
| From: 1/01/92 | To: 12/31/96 |

LAND DESCRIPTION AL.1988: $SW\frac{1}{4}NW\frac{1}{4}$, (less 9.45 acres deeded land North of Marion Drain) & $NW\frac{1}{4}SW\frac{1}{4}$, Sec. 28, T. 10 N., R. 21 E., W.M., WA, containing 70.55 acres, more or less.

FIRE PROTECTION FEE $ 39.30

It is understood and agreed that the lessee will pay annually, on the date specified for rental payment, the above fee for fire protection. This fee shall not exceed the levy charged for fire protection on comparable non-Indian lands in the vicinity.

Payment will be made to YAKIMA COUNTY FIRE DISTRICT No. 5 and deposited with YAKIMA COUNTRY FIRE DISTRICT No. 5, P. O. Box 447, Zillah, Washington 98953.

Yakima County Fire District No. 5 shall have the right to adjust the levy on leases exceeding six years, if necessary to conform with fees charged on similar land in the vicinity.

DATE 7/23/92 — A. Dean Oswalt (signature)
A. Dean Oswalt (LESSEE)

DATE

(LESSEE)

DATE:

dmm 3/18/92

Form 5-5441

16. Additions. Prior to execution of this lease, provision(s) number(s) 17, 18 & 19 has (have) been added hereto and by reference is (are) made a part hereof.

IN WITNESS WHEREOF, the lessee (and lessor has (have) hereunto affixed his (their) hand(s) and seal(s), the day and year first above written (and the lessor hereunto has caused to be attached his legal acceptance on which he has affixed his hand and seal).

Two witnesses to each signature:

Delina Miller

Tina Barrett

A. Dean Oswalt — A. Dean Oswalt, Lessee

Lessee

Lessor

Lessor

Lessor

Lessor

Lessor

Lessor

Previous Rent. $3000.00/7yrs (84-91)
Applicants Offer is within Ten Percent Bracket of Fair Rental Lease can be awarded in accordance with [illegible]
[illegible] $3,700.00 FR: 4110.00 [illegible]
[illegible] (A) 40 (B) 34.8

RECEIVED OR FILED
BUR. INDIAN AFFRS.
PORTLAND AREA OFFICE
124 17670
92 SEP 28 P 1:19

BRANCH OF REALTY
TITLES & RECORDS
SECTION

Approved AUG 19 1992, 19____ — Approving Official

SUPERINTENDENT
Granted under the Act of July 8, 1940
(54 Stat. 745) for entire ownership.

RAJ



37

**TRUST LAND**

# LEASE NO 1-8120

# ALLOTMENT 2303 & T-2303

69

Form 5-5441
(PAO Revised
Oct 1971)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

FARMING & GRAZING

# LEASE

DATE DEC 1 1 1993 INITIAL DB2
Lessee Copy
Lessor Copy YLE
SMC Copy

YAKIMA Indian Agency

Allotment No. 2303 & T-2303
Lease No. 1-1-8120-9397
Contract No.

93 THIS CONTRACT, made and entered into this 10th day of May, 19 93, by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the "lessor," and Craig Oswalt of 340 SR 223, Toppenish, WA 98948 PH. NO: 854-1910 hereinafter called the "lessee," in accordance with the provisions of existing law and the regulations (25 CFR 162) which, by reference, are made a part hereof, WITNESSETH: That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to wit:

ALLOTMENT & DESCRIPTION: 2303 & T-2303: SE1/4NW1/4 and NE1/4SW1/4 (less all bldgs. & yard area of 1.5 acres, more or less) (less than the E. 453 ft. of the S. 480 ft. of the NE1/4SW1/4, containing 4.99 acres, more or less. 2303A & 2303C), Sec. 28, T. 10 N., 21 E., W.M., WA containing 75.01 acres, more or less.

containing 75.01 acres, more or less, of which not to exceed SEE SMC / FARM PLAN acres may be cultivated, for the term of Five (5) years, beginning on the first day of January, 19 93, fully to be completed and ended on the last day of December, 19 97, subject to the conditions hereinafter set forth. The lessee, in consideration of the foregoing, covenants and agrees, as rental for the land and premises, to pay $3,500.00 ~~(one / / / / / / / / / / / share of all crops as hereinafter provided)~~ per annum:

| TO— | DATE DUE | AMOUNT |
|---|---|---|
| BUREAU OF INDIAN AFFAIRS | Upon approval & on or before 12/01/93 | |
| Yakima Indian Agency | & each 12/1 thereafter | |
| P.O. Box 632 | until a total of 5 | |
| Toppenish, WA 98948 | payments are made | $3,500.00 |
| EXECUTION FEE: $175.00 | | |

In the event of the death of any of the owners to whom, under the terms of this lease, rentals are to be paid direct, all rentals remaining due and payable shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises. This provision is applicable only while the leased premises are in trust or restricted status.

While the leased premises are in trust or restricted status, the Secretary may in his discretion, and upon notice to the lessee, suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

RAJ/sky

 78

GPO 597-111 (1985)

C.O.

124 18126

This lease is subject to the following provisions:

1. "SECRETARY" as used herein means the Secretary of the Interior or his authorized representative.

2. INTEREST.—It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest at the rate of 6 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

3. OPERATION AND MAINTENANCE ASSESSMENTS.—It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to the existing or future orders or regulations of the Secretary.

4. REPAIRS.—It is understood and agreed that the lessee is to keep the premises covered by this lease in good repair, and the said lessee will be responsible for all damages done to buildings and fences and other improvements, except the usual wear and decay.

5. CROP LEASES.—It is understood and agreed that the ssee will not purchase or be a party to the purchase by anyone, of the lessor's share of the crop, without prior approval of the Secretary.

6. SUBLEASES AND ASSIGNMENTS.—Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary and the written consent of all parties to this lease, including the surety or sureties.

7. RESERVATIONS.—It is understood and agreed that the lessor reserves the right to make oil and gas leases, grant rights of way and other legal grants, on the premises covered by this lease and that in event such a lease or grant is made, the lessee hereunder shall be entitled to damages for the actual loss sustained by him on account of said lease or grant, and to nothing more. It is further understood that in the event of a dispute between the lessee hereunder and the lessee or permittee under any oil and gas lease, right-of-way, or other grant, as to the amount of such actual damages the matter will be referred to the Secretary who shall be the sole and final judge as to the amount of the said damages.

8. UNLAWFUL CONDUCT.—The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

9. RELINQUISHMENT OF SUPERVISION BY THE SECRETARY.—Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified by the Secretary of any such change in the status of the land.

10. IMPROVEMENTS.—Unless otherwise provided herein it is understood and agreed that any buildings or other improvements placed upon the said land by the lessee become the property of the lessor upon termination or expiration of this lease.

11. VIOLATIONS OF LEASE.—It is understood and agreed that violations of this lease shall be acted upon in accordance with the regulations in 25 CFR 131.

12. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS.—No assent, express or implied, to any breach of any of the lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

13. UPON WHOM BINDING.—It is understood and agreed that the covenants and agreements hereinbefore mentioned shall extend to and be binding upon the heirs, assigns, executors, and administrators of the parties to this lease. While the leased premises are in trust or restricted status, all the lessee's obligations under this lease, and the obligations of its sureties, are to the United States as well as to the owner of the land.

14. INTEREST OF MEMBER OF CONGRESS.—No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

15. APPROVAL.—It is understood and agreed that this lease shall be valid and binding only after approval by the secretary.

Form 5-5441
(PAO Revised
:t 1971)



C.O.

71

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices-employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land Operations SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

Allotment 2303 & T-2303 SE4NW4 & NE4SW4 (Less bldgs. & yard area of 1.5 ac., less E. 453 of S. 480 NE4SW4 4.99 ac. M/L 2303A, 2303C) in Sec.28-10-21

Special Practices & Commitments: None

Total Ac. ______
O&M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______
Initials ______

Land Use: General cropping, mint, grazing crop aftermath and mint slug storage.

Peculiarities: 1) Chemical weed control (e.g. Sinbar, Atrazine) will be restricted whereby any subsequent crops will not be injured after lease expiration. 2) Lessee agrees to provide SMC with the preceding years records of pesticide usage by January 31 of the final year of the lease.

CRAIG OSWALT

Soil Conservationist
Richard Mains

Lessee
[redacted]



*U.S. GPO: 1989-694-719/00186

EXHIBIT "A"

Provision No. 18
Allot. No. 2303 &
T-2303

ACCESS

It is understood and agreed that the Superintendent be and he is hereby authorized to grant access road privileges through the within described lands for serving adjacent or nearby inaccessible Indian trust lands. Provided, however, that said access roads be established as well as operated with least possible damage to within lands. And further, that the Superintendent shall be sole judge of equities involved.

PRIVILEGE OF SUCCEEDING LESSEE

It is understood and agreed the succeeding shall have privilege of occupying the fields for the purpose of preparing the land for the ensuing year's crop on and after December 1st preceding the expiration of the lease.

WATER POLLUTION

The lessee agrees to comply with all applicable water pollution control laws, regulations, and State and Federal Water pollution control agencies recommendations, in the construction of all sewerage systems, sewage treatment or disposal plants or systems, or in the improvement or extension of any sewerage systems or sewage treatment or disposal plants.

DELINQUENT PENALTY

Provision No. 2 is amended to read: It is understood and agreed between the parties hereto that, if any installment or rental is not paid within 30 days after becoming due, penalty at the rate of 18 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

IMPROVEMENTS

All buildings and inside fences owned by Lessee located on this tract must be removed within 30 days upon termination or expiration of lease.

UPKEEP OF IMPROVEMENTS

In the event Lessee has possession of buildings, they must be kept in an orderly and sanitary condition.

ASC AGREEMENT — SUPERINTENDENT

Permission is granted to include this tract of land with other lands a Farm Unit for participation in the County ASC Program.

73

EXHIBIT "A"

Provision No. 18
Allot. No. 2303 &
T-2303

**OTHER**

As a material part of the consideration of this lease, Lessee hereby waives all claims against Lessors and/or the United States Government free and harmless from liability for all claims for any loss, damage, or injury arising from the use of the premises by Lessee, together with all costs and expenses in connection therewith.

**HOLDING OVER**

Holding over by the Lessee after the termination of this lease shall not constitute a renewal or extension thereof or give the Lessee any rights hereunder or in or to the leased premises.

**PROPERTY OF LESSOR:** Boundary Fences

**PROPERTY OF LESSEE:** None

Date: 7-2-93

Craig Oswalt
Craig Oswalt LESSEE

74

# FIRE DISTRICT NO. 5
# ASSESSMENT AGREEMENT

PROVISION NO. ........................................

LESSEE: Craig Oswalt

ADDRESS 340 SR 223,
Toppenish, WA 98948
PH# 854-1910

| LEASE NO. | ALLOT. NO. |
|---|---|
| I-8120 | 2303 & T-2303 |
| LEASE TERM | YEARS 5 |
| From: 01/01/93 | To: 12/31/97 |

LAND DESCRIPTION ALLOTMENT NO. AND DESCRIPTION: 2303 & T-2303: SE1/4NW1/4 and NE1/4SW1/4 (less all bldgs. & yard area of 1.5 acres, more or less) (less the E. 453 ft. of the S. 480 ft. of the NE1/4SW1/4, containing 4.99 acres more or less. 2303A & 2303C), Sec. 28, T. 10 N., R. 21 E., W.M., WA., containing 75.01 acres, more or less.

FIRE PROTECTION FEE $48.40

It is understood and agreed that the lessee will pay annually, on the date specified for rental payment, the above fee for fire protection. This fee shall not exceed the levy charged for fire protection on comparable non-Indian lands in the vicinity.

Payment will be made to YAKIMA COUNTY FIRE DISTRICT No. 5 and deposited with YAKIMA COUNTRY FIRE DISTRICT No. 5, P. O. Box 447, Zillah, Washington 98953.

Yakima County Fire District No. 5 shall have the right to adjust the levy on leases exceeding six years, if necessary to conform with fees charged on similar land in the vicinity.

DATE 7-2-93 — Craig Oswalt (signature)
Craig Oswalt (LESSEE)

DATE ..............................

.............................. (LESSEE)

DATE: ..............................

RAJ/sky

75

124 18126

RAJ

# LAND COMMITTEE ACTION

ITEM NO. 7 DATE:

DATE OF APPLICATION: March 31, 1993

TYPE OF APPLICATION: Request a 5 year Farming & Grazing Lease on Allotment 2303 & T-2303 to begin 1/1/93.

ALLOTMENT NO. AND DESCRIPTION: 2303 & T-2303: SE1/4NW1/4 and NE1/4SW1/4 (less all bldgs. & yard area of 1.5 acres, more or less)(less the E. 453 ft. of the S. 480 ft. of the NE1/4SW1/4, containing 4.99 acres, more or less. 2303A & 2303C), Sec. 28, T. 10 N., R. 21 E., W.M., WA., containing 75.01 acres, more or less.

APPLICANT: Craig Oswalt (854-1910)
340 SR223
Toppenish, WA. 98948

OFFER: $3,500.00 per year

APPRAISAL: $3,460.00 per year (10/91)

PREVIOUS RENT: $3,150.00 per year to Applicant, expired 12/31/92

REMARKS:
1. O & M: 40 (A) 5 (B)
2. Applicant's lease payments are all current.
3. Tribe's Interest: .4589950
   Tribe's Share of Rent: $1,606.48
4. Leasing Section recommends approval.

ACTION RECOMMENDED BY LAND ENTERPRISE MANAGER: Approval recommended

DATE: 5/3/93

Land Enterprise Manager

---

ACTION TAKEN:

MOTION BY: SECONDED BY:

NO. MEMBERS PRESENT: VOTE: FOR AGAINST

Clifford Moses, Chairman
Tribal Land Committee

76

Form 5-5441

16. Additions. Prior to execution of this lease, provision(s) number(s) 17, 18 & 19 has (have) been added hereto and by reference is (are) made a part hereof.

IN WITNESS WHEREOF, the lessee (and lessor has (have) hereunto affixed his (their) hand(s) and seal(s), the day and year first above written (and the lessor hereunto has caused to be attached his legal acceptance on which he has affixed his hand and seal).

Two witnesses to each signature:

Floydine Randall
[signature]

Craig Oswalt
Craig Oswalt Lessee

Lessee

Yakima Land Enterprise
Lessor

Previous Rent: $3,150/yr. to applicant, expired 12/31/92
F.R.: $3460/yr. (10/91)
Offer: $3,500/yr. for a 5 yr. Farming & Grazing Lease to begin 1/1/93
Ctm: 40(A) 5(B)
Land Committee approved 5/3/93
In accordance with 25 CFR 162.2(4) and 25 CFR 162.3(4)

[signature]
For and on behalf of the Yakima Tribal Council pursuant to Sec. B. as modified, of the Plan of Operations of the Tribal Land Enterprise and Land Committee minutes dated 5-3-93 Lessor

Lessor

RECEIVED OR FILED
BUR. INDIAN AFFRS.
PORTLAND AREA OFFICE
124 18126
93 DEC 27 AM 11:56
Lessor

Lessor

BRANCH OF REALTY
TITLES & RECORDS
SECTION
Lessor

Approved 11-30, 1993 [signature] acting SUPERINTENDENT Approving Official

Granted under the Act of July 8, 1940 (54 Stat. 745) for entire ownership.

TRUST LAND

# LEASE NO 1-7023

# ALLOTMENT 3694

Allot 3694

Form 5-5441
(PAO Revised Oct. 1971)

DATE 01/15/91 INITIAL DKW

Lessee Copy

Lessor Copy Maxine French Lamebull

SMC Copy

Yakima Indian Agency

# UNITED STATES DEPARTMENT OF THE INTERIOR

## FARMING & GRAZING LEASE

124 16936

ALLOTMENT NO. 3694
LEASE NO. 1-7023
CONTRACT NO. ______

THIS CONTRACT, made and entered into this 13th day of July, 1990, by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the "lessor," and A. DEAN OSWALT of 541 Chausee Road, Granger, WA 98932, hereinafter called the "lessee," in accordance with the provisions of existing law and the regulations (25 CFR 162) which, by reference, are made a part hereof, **WITNESSETH:** That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to wit: **SE4SE4 (less house and 1 acre, more or less, on central protion of northern boundary), Sec. 24, T. 9 N., R. 21 E., W.M., WA.,**

containing 39 acres, more or less, of which not to exceed **SEE SMC FARM PLAN** acres may be cultivated, for the term of **five (5)** years beginning on the first day of **January**, 1991, fully to be completed and ended on the **last** day of **December**, 1995, subject to the conditions hereinafter set forth. The lessee, in consideration of the foregoing, covenants and agrees, as rental for the land and premises, to pay $2,500.00* (~~one-----share of all crops as hereinafter provided)~~ per annum:

| TO | DATE DUE | AMOUNT |
|---|---|---|
| *DIRECT PAY TO: | ON OR BEFORE 12/1/90 | |
| Maxine French Lamebull | & EACH 12/1 THEREAFTER | |
| 35 North "E" Street | UNTIL A TOTAL OF FIVE | |
| Toppenish, WA 98948 | (5) PAYMENTS ARE MADE | - $2,500.00 |
| | | |
| EXECUTION FEE: $125.00 | | |

In the event of the death of any of the owners to whom, under the terms of this lease, rentals are to be paid direct, all rentals remaining due and payable shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises. This provision is applicable only while the leased premises are in trust or restricted status.

While the leased premises are in trust or restricted status, the Secretary may in his discretion, and upon notice to the lessee, suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

This lease is subject to the following provisions:

1. "SECRETARY" as used herein means the Secretary of the Interior or his authorized representative.

2. INTEREST.—It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest at the rate of 6 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

3. OPERATION AND MAINTENANCE ASSESSMENTS.—It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to the existing or future orders or regulations of the Secretary.

4. REPAIRS.—It is understood and agreed that the lessee is to keep the premises covered by this lease in good repair, and the said lessee will be responsible for all damages done to buildings and fences and other improvements, except the usual wear and decay.

5. CROP LEASES.—It is understood and agreed that the lessee will not purchase or be a party to the purchase by anyone, of the lessor's share of the crop, without prior approval of the Secretary.

6. SUBLEASES AND ASSIGNMENTS.—Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary and the written consent of all parties to this lease, including the surety or sureties.

7. RESERVATIONS.—It is understood and agreed that the lessor reserves the right to make oil and gas leases, grant rights of way and other legal grants, on the premises covered by this lease and that in event such a lease or grant is made, the lessee hereunder shall be entitled to damages for the actual loss sustained by him on account of said lease or grant, and to nothing more. It is further understood that in the event of a dispute between the lessee hereunder and the lessee or permittee under any oil and gas lease, right-of-way, or other grant, as to the amount of such actual damages the matter will be referred to the Secretary who shall be the sole and final judge as to the amount of the said damages.

8. UNLAWFUL CONDUCT.—The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

9. RELINQUISHMENT OF SUPERVISION BY THE SECRETARY.—Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified by the Secretary of any such change in the status of the land.

10. IMPROVEMENTS.—Unless otherwise provided herein it is understood and agreed that any buildings or other improvements placed upon the said land by the lessee become the property of the lessor upon termination or expiration of this lease.

11. VIOLATIONS OF LEASE.—It is understood and agreed that violations of this lease shall be acted upon in accordance with the regulations in 25 CFR 131.

12. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS.—No assent, express or implied, to any breach of any of the lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

13. UPON WHOM BINDING.—It is understood and agreed that the covenants and agreements hereinbefore mentioned shall extend to and be binding upon the heirs, assigns, executors, and administrators of the parties to this lease. While the leased premises are in trust or restricted status, all the lessee's obligations under this lease, and the obligations of its sureties, are to the United States as well as to the owner of the land.

14. INTEREST OF MEMBER OF CONGRESS.—No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

15. APPROVAL.—It is understood and agreed that this lease shall be valid and binding only after approval by the secretary.

Form 5-5441
(PAO Revised
Oct 1971)

124 16936

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices-employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land Operations SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

Allotment 3694 SE4SE4 (Excluding house & 1 ac. M/L on North border central portion)
Sec.24-9-21

Special Practices & Commitments: None.

Total Ac. ______
O & M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______

Land Use: General cropping and grazing crop aftermath.

47

[signature]
Soil Conservationist
Frank X. Morin, Jr.

[signature]
Lessee
A. DEAN OSWALT



*U.S. GPO: 1989-694-719/00186

EXHIBIT "A" 124 16936

PROVISION NO. 18
ALLOTMENT NO. 3694

ACCESS

It is understood and agreed that the Superintendent be and he is hereby authorized to grant access road privileges through the within described lands for servicing adjacent or nearby inaccessible Indian trust lands. Provided, however, that said access roads be established as well as operated with least possible damage to within lands. And further, that the Superintendent shall be sole judge of equities involved.

PRIVILEGE OF SUCCEEDING LESSEE

It is understood and agreed the succeeding shall have privilege of occupying the fields for the purpose of preparing the land for the ensuing year's crop on and after December 1st preceding the expiration of the lease.

WATER POLLUTION

The lessee agrees to comply with all applicable water pollution control laws, regulations, and State and Federal Water pollution control agencies recommendations, in the construction of all sewerage systems, sewage treatment or disposal plants or systems, or in the improvement or extension of any sewerage systems or sewage treatment or disposal plants.

DELINQUENT PENALTY

Provision No. 2 is amended to read: It is understood and agreed between the parties hereto that, if any installment or rental is not paid within 30 days after becoming due, penalty at the rate of 18 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

IMPROVEMENTS

All buildings and inside fences owned by Lessee located on this tract must be removed within 30 days upon termination or expiration of lease.

UPKEEP OF IMPROVEMENTS

In the event Lessee has possession of buildings, they must be kept in an orderly and sanitary condition.

48

EXHIBIT "A" - PAGE 2

124 16936

ASC AGREEMENT - OWNERS

The owners agree to the combination of this tract of land with other lands as a farm unit in the County ASC Program.

PROPERTY OF LESSOR: None.

PROPERTY OF LESSEE: None.

Date: 12/28/90

A. Dean Oswalt

A. DEAN OSWALT LESSEE

FIRE DISTRICT NO. 5
ASSESSMENT AGREEMENT 124 16936

PROVISION NO. 19

LESSEE: A. DEAN OSWALT

ADDRESS 541 Chausee Road
Granger, WA 98935

| LEASE NO. | ALLOT. NO. |
|---|---|
| 1-7023 | 3694 |
| LEASE TERM | YEARS FIVE (5) |
| From: 01/01/91 | To: 12/31/95 |

LAND DESCRIPTION SE¼SE¼ (less house and 1 acre, more or less, on central portion of northern boundary), Sec. 24, T. 9 N., R. 21 E., W.M., WA., containing 39 acres, more or less.

FIRE PROTECTION FEE $ 21.80

It is understood and agreed that the lessee will pay annually, on the date specified for rental payment, the above fee for fire protection. This fee shall not exceed the levy charged for fire protection on comparable non-Indian lands in the vicinity.

Payment will be made to YAKIMA COUNTY FIRE DISTRICT No. 5 and deposited with YAKIMA COUNTRY FIRE DISTRICT No. 5, P. O. Box 447, Zillah, Washington 98953.

Yakima County Fire District No. 5 shall have the right to adjust the levy on leases exceeding six years, if necessary to conform with fees charged on similar land in the vicinity.

DATE 12/20/90 — A. Dean Oswalt (signature)
A. DEAN OSWALT (LESSEE)

DATE ____________ ____________

____________ (LESSEE)

DATE: ____________

rls 7/13/90

50

# DIRECT PAYMENT SCHEDULE

124 16936

PROVISION NO. 20

ALLOTMENT NO. 3694

LEASE NO. L-7023

Lease Rental of $2,500.00 will be payable to "BUREAU OF INDIAN AFFAIRS" on the following dates: 12/1/90, 12/1/91, 12/1/92, 12/1/93, & 12/1/94

THE BALANCE OF LEASE RENTAL WILL BE PAID "DIRECT" ON THE SAME DUE DATES AS ABOVE.

DISTRIBUTION WILL BE AS FOLLOWS:

| NAME AND ADDRESS | AMOUNT | SHARE |
|---|---|---|
| Maxine French Lamebull<br>35 North "E" Street<br>Toppenish, WA 98948 | $2,500.00 | 1.0000000 |

51

16. Prior to execution of this lease, provision(s) number(s) 17, 18, 19, & 20 has (have) been added hereto and by reference is (are) made a part hereof.

IN WITNESS WHEREOF, the lessee (and lessor has (have) hereunto affixed his (their) hand(s) and seal(s), the day and year first above written (and the lessor hereunto has caused to be attached his legal acceptance on which he has affixed his hand and seal).

Two witnesses to each signature:

Rhoda L. Sampson

Denise M. Hill

A. Dean Oswalt

A. DEAN OSWALT — LESSEE

_______________ LESSEE

ACCEPTANCE FORM ATTACHED FOR:

Maxine French Lamebull owns ALL — LESSOR

_______________ LESSOR

RECEIVED OR FILED
BUR. INDIAN AFFRS.
PORTLAND AREA OFFICE

124 16936 — LESSOR

91 JAN 28 P12:55

_______________ LESSOR

BRANCH OF REALTY
TITLES & RECORDS
SECTION

_______________ LESSOR

_______________ LESSOR

previous cont. $2,0... '2yrs
applicant negotiated with since owner
Lease can be approved in accordance with
25 CFR 162.5(b) 162.3 (1)
[illegible]: $2500.00 FR: $2215.00 (10/13/88)
[illegible] (A) 32 (B) 0

Approved JAN 10 1991, 19____

[signature]

SUPERINTENDENT Approving Official

RUN



46

## TRUST LAND

# LEASE NO 1-8705

# ALLOTMENT 3704 & 3705

60

Form 5-5441
(PAO Revised Oct. 1971)

124 18590

# UNITED STATES
# DEPARTMENT OF THE INTERIOR

DATE JAN 0 9 1995 INITIAL: [signature]
Lessee Copy
Lessor Copy
SMC Copy

## Farming & Grazing
## LEASE

ALLOTMENT NO. 3704 & 3705
LEASE NO. 1-1-8705-9495
CONTRACT NO. ____________

**Yakima Indian Agency**

THIS CONTRACT, made and entered into this 26th day of September, 1994, by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the "lessor," and Craig Oswalt - 854.1910 of 340 SR 223, Toppenish, WA 98948, hereinafter called the "lessee," in accordance with the provisions of existing law and the regulations (25 CFR 162) which, by reference, are made a part hereof, **WITNESSETH:** That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to wit: **3704: SE¼SE¼; 3705: SW¼SE¼ (less all bldgs. and 1 acre, more or less, located in SW corner of NW¼SW¼SE¼); All in Sec 1, T. 9 N., R. 21 E. W.M., WA.**

containing 79.0 acres, more or less, of which not to exceed **SEE SMC FARM PLAN** acres may be cultivated, for the term of Two (2) years beginning on the first day of January, 1994, fully to be completed and ended on the Last day of December, 1995, subject to the conditions hereinafter set forth. The lessee, in consideration of the foregoing, covenants and agrees, as rental for the land and premises, to pay $ 3,000.00

| TO | DATE DUE | AMOUNT |
|---|---|---|
| BUREAU OF INDIAN AFFAIRS | Upon Approval & on or before | |
| Yakima Agency | 12/1/94 | |
| P.O. Box 632 | | |
| Toppenish, WA 98948 | | - $3,000.00 |

EXECUTION FEE: $ 150.00

In the event of the death of any of the owners to whom, under the terms of this lease, rentals are to be paid direct, all rentals remaining due and payable shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises. This provision is applicable only while the leased premises are in trust or restricted status.

While the leased premises are in trust or restricted status, the Secretary may in his discretion, and upon notice to the lessee, suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

61

This lease is subject to the following provisions:

1. "SECRETARY" as used herein means the Secretary of the Interior or his authorized representative.

2. INTEREST.-It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest at the rate of 6 percent per annum will become due and payable from the date such rental became due and will run until said rental is paid.

3. OPERATION AND MAINTENANCE ASSESMENTS.- It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties occurring against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to the existing or future orders or regulations of the Secretary.

4. REPAIRS.-It is understood and agreed that the lessee is to keep the premises covered by this in good repair, and the said lessee will be responsible for all damages done to buildings and fences and other improvements, except the usual wear and decay.

5. CROP LEASES.-It is understood and agreed that the lessee will not purchase or be a party to the purchase by anyone, of the lessor's share of the crop, without prior approval of the Secretary. -

6. SUBLEASES AND ASSIGNMENTS.-Unless otherwise provided herein, a sublease, assignment or amendment of this lease may be made only with the approval of the Secretary of the written consent of all parties to this lease, including the surety or sureties.

7. RESERVATIONS.-It is understood and agreed that the lessor reserves the right to make oil and gas leases, grant rights of way and other legal grants, on the premises covered by this lease and that in event such a lease or grant is made, the lessee hereunder shall be entitled to damages for the actual loss sustained by him on account of said lease or grant, and to nothing more. It is further understood that in the event of a dispute between the lessee hereunder and the lessee or permittee under any oil and gas lease, right-of-way, or other grant, as to the amount of such actual damages the matter will be referred to the Secretary who shall be the sole and final judge as to the amount of the said damages.

8. UNLAWFUL CONDUCT.-The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

9. RELINQUISHMENT OF SUPERVISION BY THE SECRETARY.-Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified by the Secretary of any such change in the status of the land.

10. IMPROVEMENTS.-Unless otherwise provided herein it is understood and agreed that any buildings or other improvements placed upon the said land by the lessee become the property of the lessor upon termination or expiration of this lease.

11. VIOLATIONS OF LEASE.-It is understood and agreed that violations of this lease shall be acted upon in accordance with the regulations in 25 CFR 131.

12. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS.-No assent, express or implied, to any breach of any of the lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

13. UPON WHOM BINDING.-It is understood and agreed that the covenants and agreements hereinbefore mentioned shall extend to and be binding upon the heirs, assigns, executors, and administrators of the parties to this lease. While the leased premises are in trust or restricted status, all the lessee's obligations under this lease, and the obligations of its sureties, are to the United States as well as to the owner of the land.

14. INTEREST OF MEMBER OF CONGRESS.-No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or p[art of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

15. APPROVAL.-It is understood and agreed that this lease shall be valid and binding only after approval by the secretary.

Provision 17

124 18590

This lease is subject to the following Soil and Moisture Conservation provisions:

1. It is the responsibility of the Lessee and the SMC division of the Bureau of Indian Affairs to maintain and improve the soil and water resources covered in this lease.

2. TECHNICAL SERVICES.--It is understood and agreed that the Secretary will provide technical assistance in planning for and establishing conservation practices and assist in making necessary surveys needed to carry out soil and moisture conservation improvements. Any plan or practice resulting from other technical services must be approved by the Secretary before applied to the land.

3. MINIMUM CONSERVATION OF RESOURCES.--It is understood and agreed that the lessee is responsible for the application of basic and minimum conservation practices and will perform all operations in a husbandlike manner. Practices employed and minimum application thereof to accomplish soil and water resource maintenance, are subject to concurrence of the Secretary.

4. CROPPING SYSTEMS.--The land use plans and cropping systems employed by the lessee are subject to the approval of the Secretary.

No field will be used for the same row crop for over two consecutive seasons (unless an exception is made by the Secretary).

Corn cut for silage will not exceed two years in a five-year period.

Rotations must include high residue crops or employ the use of barnyard manure or other organic material to replace organic material removed from the soil.

5. BURNING.--Burning plant residue and weeds is prohibited unless allowed by special permit from the Secretary. During the fire season a permit from the fire district is also required.

6. CROP RESIDUE MANAGEMENT.--All crop residue (wheat stubble, mint slugs, corn stalks, etc.) will be incorporated back in the soil as soon as possible after harvest including crop residue the last year of the lease. Where grain straw is baled or otherwise removed it will be considered a low residue crop in the rotation, e.g. the same as corn cut for silage (Paragraph 4).

7. WEED CONTROL.--Weeds, plants considered to have a negative economic value, will be controlled in fields, along fences, roadways, ditches and on idle land.

Minimum control is considered to be prevention from producing seeds. Control may be by cultivation, chemical applications, burning, or pasturing, provided other provisions of the lease are not violated.

8. PROPERTY LINES.--Identification of property lines will be preserved. Fence lines, corner markers, and other features that show the location of property corners and boundary lines will be protected, unless removal is approved by the Secretary.

9. IRRIGATION WATER CONTROL.--a. Good irrigation practices will be employed to prevent excessive soil erosion, leaching, and other water-caused damage to the land.

b. Surface wasteways where needed will be established and maintained away from each field to prevent ponding, water logging, or other damage to this and adjoining properties.

c. Lessee is required to make beneficial use of water delivered through the irrigation project.

d. Any soil water table buildup or soil drainage problem will be reported to the Agency Conservationist for investigation.

10. IMPROVEMENTS.--It is understood and agreed that any land improvement or construction for improvement of land or irrigation facilities whether scheduled as a lease commitment or not, will be subject to approval of the Secretary before work is started. Completed projects must also be approved by the Secretary before acceptance.

11. CONTROL OF LIVESTOCK.--Where the lessee uses land for pasturing or feeding livestock it is understood and agreed that he is responsible for the containment of said livestock.

12. ENVIRONMENTAL COMPLIANCE.--It is understood and agreed that as environmental protection agencies' regulations are interpreted and applied to the uses made of agricultural lands the lessee will regulate his operation to comply with said regulations.

13. The approving officer or his representative and the lessor may enter upon and inspect the premises covered by this lease at such reasonable times as may be desired. Whenever locks are placed on gates, keys must be furnished the Land ~~Operations~~ Services SMC Office.

14. The lessee agrees to practice proper grazing management on all lands covered by this lease. This includes protecting the desirable native grasses, forbs and shrubs from overgrazing. Feedlots and over winter areas must be fenced and managed properly.

15. TRASH AND GARBAGE DISPOSAL.--The lessee will not dump, or permit others to dump, trash or garbage on this leased land.

THIS ACTION IS COVERED BY AN ENVIRONMENTAL ASSESSMENT AND NEGATIVE DECLARATION SIGNED AND FILED AT THE YAKIMA AGENCY BY THE SUPERINTENDENT ON APRIL 29, 1976.

Allotments 3704, 3705 (3704)SE4SE4 Sec.1-9-21 (3705)SW4SE4 (Less bldgs. & 1 ac. in SW corner Sec.1-9-21)

Special Practices & Commitments: None.

Total Ac. ______
O & M ______
Crop Ac. ______
AUM ______
L.NO. ______
Ten. ______
Rent ______
Photo# ______
Initials ______

Land Use: General cropping, aftermath grazing.

Peculiarities: Lessee agrees to provide pesticide records upon request.

Richard Mains (signature)　　63　　Craig Oswalt (signature)

Soil Conservationist
Richard Mains

Lessee
CRAIG OSWALT



*U.S. GPO: 1989-694-719/00186

EXHIBIT "A" 124 18590

PROVISION NO. 18
ALLOTMENT NO. 3704 & 3705 2

**ACCESS**

It is understood and agreed that the Superintendent be and he is hereby authorized to grant access road privileges through the within described lands for servicing adjacent or nearby inaccessible Indian trust lands. Provided, however, that said access roads be established as well as operated with least possible damage to within lands. And further, that the Superintendent shall be sole judge of equities involved.

**PRIVILEGE OF SUCCEEDING LESSEE**

It is understood and agreed the succeeding shall have privilege of occupying the fields for the purpose of preparing the land for the ensuing year's crop on and after December 1st preceding the expiration of the lease.

**WATER POLLUTION**

The lessee agrees to comply with all applicable water pollution control laws, regulations, and State and Federal Water pollution control agencies recommendations, in the construction of all sewerage systems, sewage treatment or disposal plants or systems, or in the improvement or extension of any sewerage systems or sewage treatment or disposal plants.

**DELINQUENT PENALTY**
PROVISION NO. 2 IS AMMENDED TO READ:
It is understood and agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, penalty at the rate of 18% per annum will become due and payable from the date such rental became due and will run until said rental is paid.

**IMPROVEMENTS**

All buildings and inside fences owned by Lessee located on this tract must be removed within 30 days upon termination or expiration of lease.

**UPKEEP OF IMPROVEMENTS**

In the event Lessee has possession of buildings, they must be kept in an orderly and sanitary condition.

64

EXHIBIT "A"

ASC AGREEMENT - SUPERINTENDENT

Permission is granted to include this tract of land with other lands a Farm Unit for participation in the County ASC Program.

AGREEMENTS FOR UTILITY SERVICES

Lessee shall have the right to enter into agreements with public utility companies and State of Washington or any of its political subdivisions to provide utility services, including gas, water, electricity, telephone, television & sewer lines necessary to full enjoyment of leased premises and developments thereof in accordance with the provisions of this lease; provided that such an agreement shall not be for a period longer than initial term of this lease or any extension thereof. Upon entering into such agreement or agreements, the lessee shall furnish to the Secretary executed copies thereof together with a plat or diagram showing true location of the utility lines to be constructed in accordance therewith.

LIENS, TAXES, ASSESSMENTS, UTILITY CHARGES

Lessee shall not permit to be enforced against the leased premises, or any part thereof, any liens arising from any work performed, materials furnished or obligations incurred by Lessee. The Lessee shall either discharge all such liens before any action is brought to enforce the same, or post bond as hereinafter provided. Lessee shall pay, when and as the same become due and payable, all taxes, assessments, licenses, fees and other like charges levied during the term of this lease upon or against the leased land, the improvements and all interests therein; however, this requirement shall not be construed as an admission by the parties that any of the land, the improvements or interests therein are subject to tax, for the lessee shall have the privilege as provided against the property of the Lessor. Lessor shall execute and file any appropriate documents with reference to tax exemption or the land or improvements when requested by Lessee. Lessee shall have the right to contest any claim, lien tax, or assessment by posting bond to prevent enforcement of any lien resulting therefrom, and Lessee agrees to protect and hold harmless the Lessor and the Secretary from any lien therefor or sale or other proceedings to enforce payment thereof, and all costs in connection therewith. In addition, Lessee shall hold Lessor harmless for all charges for water, sewage, gas, electricity, telephone, and other utility charges supplied to said premises.