# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A. DEAN OSWALT ET AL., Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 97-733C |
| | ) | (Judge Futey) |
| UNITED STATES, Defendant | ) | |

DEFENDANT'S SURREPLY

Pursuant to the Court's February 18, 1999 order, the Government files the following surreply in response to the new allegations raised in plaintiffs' reply memorandum. In their reply brief, plaintiffs contend, for the first time, that they made "satisfactory arrangements" to pay their Operation and Maintenance ("O&M") assessments on allotments 794, 299, 300, 596, ("the Fee Lands"), see App. at 9-28[1], and allotment 1988, 3694, T-1011, 3704, 3705, 2303, T-2303, 849, 289, 290, T-1131-B, 2661, 2482, 1013-A, 263, T-263 ("the Indian Trust Lands"), App. at 29-164, because they made an oral request to have the balance of their unpaid O&M assessments placed on a promissory note. Plaintiffs' Reply at 3, Affidavit of Craig Oswalt at ¶4. Significantly, however, plaintiffs do not contend that they actually executed such a promissory note at any time during the 1994 irrigation season and the evidence is uncontroverted that they did not execute any promissory notes during the 1994 irrigation season. Howerton Dec. at ¶ 7, S. App. at 4.[2]

As explained more fully below, the alleged oral request to provide a promissory note in lieu of the contractually mandated O&M assessments does not constitute a "satisfactory

[1] "App." refers to the appendix filed in connection with the Government's Motion To Dismiss, Or In The Alternative, For Summary Judgment.

[2] "S.App." refers to the appendix filed with Defendant's Reply brief.

16

arrangement" to pay the O&M assessments on either the Indian Trust Lands or the Fee Lands farmed by the plaintiffs. This brief first demonstrates that neither the leases nor the regulation governing the delivery of water to Indian Trust Lands allow the execution of a promissory note in lieu of advance payment of the O&M assessments. We then establish that, although the regulation governing delivery of water to non-Indian Fee Lands appears to allow the execution of a promissory note in lieu of actual payment of the O&M assessments, both the regulation and the procedures for issuing promissory notes clearly require the execution of an actual contract. Hence, no one within the Government had authority to make an oral agreement to accept a promissory note with undefined terms in lieu of timely payments of the O&M assessments.

In short, the undisputed facts demonstrate that plaintiffs did not satisfy their obligation to pay their O&M assessments in a timely fashion on either the Indian Trust Lands or the Fee lands, and the Government was therefore under no obligation to provide irrigation water to plaintiffs for vast majority of the allotments farmed by plaintiffs.[3]

---

[3] Plaintiffs further allege that they are entitled to summary judgment on the issue of liability with regard to allotments 766, 361, 363, 848, 850, 289 and 1752 because they paid the O&M assessments for these properties in a timely fashion. However, as explained in our prior briefs, this Court is without jurisdiction to adjudicate claims with regard to allotments 766, 848, 850, 289, and 1752, because there is no privity of contract between plaintiffs and the Government. Furthermore, plaintiffs are not entitled to summary judgment on all these allotments because: (1) they failed to exhaust administrative remedies, (2) it is undisputed that there was a drought during 1994, which constituted an Act of God that excused contract performance, and (3) because the record demonstrates the Government went to great lengths to ensure an equitable distribution of water despite the drought.



17

## ARGUMENT

1. The Only Way The Plaintiffs Could Satisfy Their Obligation To Pay The O&M Assessments On The Indian Trust Land Was By Actually Paying The O&M Assessments In Advance, And Because Plaintiffs Did Not Do So, They Had No Contractual Right To Receive Water

Plaintiffs invite this Court to ignore the undisputed fact that they failed to pay O&M assessments for Indian Trust Lands in advance, as required by the leases and governing regulation, by arguing that they made "satisfactory arrangements" to pay the O&M assessments. However, as explained in our reply brief and below, neither the law nor the facts support plaintiffs' claim that they made satisfactory arrangements to pay the delinquent assessments.

As a threshold matter, plaintiffs did not have the option to satisfy their obligation to pay O&M assessments for the Indian Trust lands by executing a promissory note. As explained in our reply brief, the leases of the Indian Trust land require plaintiffs to pay the O&M assessments annually in advance in accordance with the regulations of the Secretary. Defendant's Reply br. at 14-15. The applicable regulation, in turn, requires payment in advance of the irrigation season. 25 C.F.R. § 171.17(b). The regulation does not allow lessees who lease Indian Trust Land pursuant to a lease approved by the Secretary, to substitute the execution of a promissory note, for the advance payment of operation and maintenance fees. 25 C.F.R. § 171.17(b). Indeed, the regulation governing the delivery of water to Indian Trust land which is leased with the approval of the Secretary expressly states that water will not be delivered "until the lessee had paid the annual assessed operation and maintenance charges." 25 C.F.R. § 171.17(b). The regulation makes no provision for the execution of a promissory note.

The absence of an explicit provision allowing the execution of a promissory note is fatal



18

to plaintiffs' claim that they could satisfy their contractual obligation to pay the O&M assessment by executing a promissory note. The rules of statutory construction also govern regulatory construction. General Electric Co. v. United States, 221 Ct.Cl. 771, 610 F.2d 730, 734 (1979); Lockheed Martin Corp. v. United States, 42 Fed. Cl. 485, 496 (1998). Well settled principles of construction dictate that the starting point for interpretation is the language of the regulation itself. Greyhound Corp. v. United States, 437 U.S. 322, 330 (1978); Melrose Associates, L.P. v. United States, ___ Fed. Cl. ___, ___ (1999 WL 76488 Fed. Cl. Feb. 19, 1999). Accordingly, this Court must give effect to the plain meaning of the regulation, Melrose Associates, L.P. v. United States, ___ Fed. Cl. ___, ___ (1999 WL 76488 Fed. Cl. Feb. 19, 1999) citing Aaron v. SEC, 446 U.S. 680, 697 (1980), and interpret the words used in a regulation in conformity with their "ordinary or natural meaning." Bailey v. United States, 516 U.S. 137, 145 (1995). Moreover, the regulation must be construed as whole. Id.; Massachusetts v. Morash, 490 U.S. 107, 115 (1989); Melrose Associates, L.P. v. United States, ___ Fed. Cl. ___, ___ (1999 WL 76488 Fed. Cl. Feb. 19, 1999). This Court must therefore construe the regulation in "such a fashion that every word has some operative effect," United States v. Nordic Village, 503 U.S. 30, 36 (1992) and avoid a construction that renders other parts of the regulation "superfluous." Ishida v. United States, 59 F.3d 1224, 1230 (Fed. Cir. 1995); accord Melrose Associates, L.P. v. United States, ___ Fed. Cl. ___, ___ (1999 WL 76488 Fed. Cl. Feb. 19, 1999)(must avoid a construction that renders part of the regulation "inconsistent, superfluous or meaningless"). When the applicable regulation is interpreted in accordance with these principles, it is evident that a promissory note cannot be substituted for the advance payment of the O&M assessment.

As already explained, the regulation does not provide for the execution of promissory

notes for delinquent O&M assessments for lands leased with the approval of the Secretary. 25 C.F.R. 171.17 (b). The "plain meaning" of the regulation is that a promissory note cannot be substituted for advance payment of the O&M assessments.[4]

Moreover, this conclusion is buttressed when the regulation is viewed in the context of the entire regulatory scheme, as it must be. Bailey, 516 U.S. at 145; Morash, 490 U.S. at 115. The subparts of the regulation governing delivery of water to other types of land expressly allow the execution of a promissory note in satisfaction of paying the O&M assessments. See 25 C.F.R. § 171.17(a)(1)(allowing Indians owners to obtain water after making arrangement to pay O&M assessments from the proceeds of crop sales); 25 C.F.R. § 171.17(a)(2)(allowing delivery of water to "Non-Indian lands" on which "an approved deferred payment contract has been executed"); 25 C.F.R. § 171.17(c)(allowing delivery of water to lands leased directly from the Indian owner if the "owner has made satisfactory arrangements" for payment of O&M assessments.) Accepting plaintiffs' argument that they could provide a promissory note in lieu of paying annual O&M assessments in advance would render the express provision for other

---

[4] This interpretation is also supported by the plain language of the leases, which expressly state that "[i]t is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season." Lease, ¶ 3, App. at 32, 40, 45, 54, 62, 71, 80, 87, 91, 98, 105, 113, 120, 126, 135. It would be inconsistent with both the plain language of the regulation and the leases to find that plaintiffs could satisfy their obligation by executing a promissory note. Moreover, accepting plaintiffs' further contention that an oral promise to provide a promissory note at some point in the future would be even more inconsistent with plaintiffs' contractual and regulatory obligations because the Secretary would have no way to secure payment based upon a simple oral promise. Thus, the Secretary would be obligated to provide water while having no way of ensuring payment of the O&M assessments. Such a scheme would eventually cause the deterioration of the water project. Plaintiffs' proffered interpretation must therefore be rejected as contrary to both the plain language of the contract and regulation and the public policy of ensuring sufficient funds to administer the irrigation project.



20

deferred payments on other types of land, ( ie., land farmed by Indians, Non-Indian fee lands, or lands leased directly from an Indian owner) meaningless, inoperative or superfluous. Plaintiffs' proffered construction therefore must be rejected as contrary to settled rules of regulatory interpretation. Nordic Village, 503 U.S. at 36, Ishida, 59 F.3d at 1230. In short, the absence of a provision allowing promissory notes to be executed in lieu of O&M assessments owed on Indian Trust lands indicates that a lessor cannot satisfy its obligation to pay O&M assessments by executing a promissory note.

Accordingly, as explained in our reply brief, even if the Oswalts had executed promissory notes for the O&M assessments on the Trust Lands, which they did not, an executed promissory note would not constitute "satisfactory arrangements" as a matter of law. 25 C.F.R. § 17.17(b); Defendant's Reply br. at 14-15. Thus, with respect to the Indian Trust Lands, the only way plaintiffs could legally satisfy their contractual obligation to pay their O&M assessments in advance would be to actually pay those O&M assessments. Because the record is undisputed that plaintiffs did not pay these assessments, the Government is entitled to summary judgment with regard to the Trust Land.[5]

---

[5] Moreover, even if plaintiffs could legally satisfy their obligation to O&M assessments on the Indian Trust Land by making an oral agreement to execute a promissory note, the Government would still be entitled to summary judgment. As explained below in connection with the analysis of plaintiffs' obligation to make satisfactory arrangements to pay the O&M assessments due for the Fee Lands, agency procedures do not authorize oral agreements to accept promissory notes in the future in lieu of actual payment of O&M assessments. Accordingly, even if plaintiffs' allegation that Acey Oberly orally advised them that he would accept a promissory note were true, that oral agreement would be unauthorized and therefore, could not bind the Government in contract. In the event that the Court rejects our interpretation of the regulation as not allowing plaintiffs to provide promissory notes in lieu of actual payment of O&M assessments, we respectfully request that the Court nonetheless dismiss the complaint because the record demonstrates that an oral agreement is not sufficient to constitute "satisfactory



21

2. **Because The Record Demonstrates That Plaintiffs Did Not Execute Promissory Notes Obligating Them To Pay O&M Assessments On The Fee Lands During The 1994 Irrigation Season, They Had No Right To Receive Irrigation Water**

Plaintiffs have also failed to carry their burden of demonstrating that they made satisfactory arrangements to pay their delinquent O&M assessments on the Fee Lands they farmed. As a threshold matter, the governing regulation requires the actual execution of promissory note. In addition, the agency procedures applicable to the acceptance of promissory notes in lieu of actual payment do not authorize oral agreements to accept promissory notes, but rather require a written promissory note accompanied by a substantial down payment.

a. The Regulation Requires A Written Promissory Note

The regulation governing the delivery of water to non-Indian lands allows delivery of water if "there is an approved deferred payment contract executed under the provisions of the Act of June 22, 1936." 25 C.F.R. § 171.17(a)(2)(emphasis added). The applicable regulation thus requires an executed payment contract as a prerequisite to the delivery of water. As explained above, settled principles of regulatory construction require that the word "executed" be given its "ordinary and natural meaning." Bailey, 516 U.S. at 145.

The plain meaning of an executed contract is a signed contract. It is appropriate to consult dictionaries to determine that ordinary and natural meaning of the words in a regulation.

---

arrangements."



22

See Bailey, 516 U.S. at 145. Black's Law Dictionary, in turn, defines the term "executed" to mean:

> Completed; carried into full effect; already done or performed; signed, taking effect immediately, now in existence or in possession; conveying an immediate right or possession. Act or course of conduct carried to completion. Term imports idea that nothing remains to be done. The opposite of executory.

Black's Law Dictionary at 509 (4th ed. 1979)(emphasis added). Similarly, an "executed note" is defined as a "[p]romissory note which has been signed and delivered." Id. The plain meaning of the regulation thus requires a written, signed contract.

The record, however, demonstrates that plaintiffs did not execute a promissory note at any time during the 1994 season. Howerton Dec. at ¶ 7, S. App. at 4.[6] Indeed, the newly offered affidavit of Craig Oswalt does not allege that plaintiffs actually executed a promissory note during 1994. Instead, it alleges that Dean Oswalt requested that plaintiffs be allowed to provide a promissory note to pay the balance of unpaid and delinquent O&M assessments and that Acey Oberly advised plaintiffs that he "agreed to these arrangements." Plaintiffs have thus conceded that they did not execute a promissory note at any time during the 1994 irrigation season. Instead, they implicitly contend that an oral offer to provide a promissory note constitutes "satisfactory arrangements to make payment."

Plaintiffs' contention that an oral agreement to execute a promissory note sometime in the future constitutes "satisfactory arrangement to make payment" must be rejected because it requires this Court to ignore settled principles of both contract and regulatory construction.

---

[6] "S.App." refers to the appendix filed with Defendant's Reply brief.



23

As explained in our opening brief, the Water Rights Application clearly requires the party using the Fee Land to pay all irrigation charges, in accordance with the regulations of the Secretary, as a precondition to receiving water. Water Application ¶¶ 8,10, App. at 11,14, 17, 20, 21, 25, 28; Defendant's Opening br. at 14-15, 20-21. Settled principles of contract construction require this Court to interpret the contract to require plaintiffs to comply with the regulations of the Secretary. See Hol-Gar Mfg. Corp. v. United States, 169 Ct.Cl. 384, 351 F.2d 972, 970(1965); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305.

As already demonstrated, the applicable regulation, in turn, requires the execution of a written promissory note. Plaintiffs' contention that an oral agreement to execute is contrary to settled principles of regulatory construction because it is contrary to the plain meaning of the regulation, Bailey, 145 U.S. at 145, and would render the reference to an "executed" contract inoperative, superfluous and meaningless. Melrose Associates, ___ Fed. Cl. at ___; 1999 WL 76488.

b. The Agency Procedures Do Not Authorize Oral Agreements To Accept Promissory Notes

Moreover, the Bureau of Indian Affairs ("BIA"), which administers the WIP adopted a detailed procedure for issuing promissory notes in February 1994.[7] See Hilderbrand Dec. at ¶¶2-5 and Ex. A thererto, S.S.App.[8] at 1-4. These detailed procedures require the execution of a written promissory note, which includes both a provision for interest and a written repayment

[7] The procedures for issuing promissory notes adopted by the BIA are entitled to deference. See Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1977).

[8] "S.S.App." refers to the five page, second supplemental appendix filed with this brief.



24

schedule. See Hilderbrand Dec. at ¶¶2-5 and Ex. A thererto, S.S.App.[9] at 1-4. In addition, the BIA procedure requires the party seeking the promissory note to make a down payment equivalent to ten percent (10%) of the outstanding total delinquency. Hilderbrand Dec. at ¶4, and Ex. A thereto, S.S. App. at 2-4.

The record demonstrates that plaintiffs did not execute a promissory note in accordance with the regulation or the procedures of the BIA. Accordingly, plaintiffs have failed, as a matter of law, to demonstrate that they complied with their contractual obligation to pay O&M assessments.

3. Plaintiffs Cannot Rely Upon The Alleged Oral Agreement Of Mr. Oberly Because Mr. Oberly Did Not Have Authority To Enter Into Oral Agreements To Execute Promissory Notes

Finally, plaintiffs may not rely upon the allegation that Mr. Acey Oberly orally agreed to the execution of a promissory note to overcome their failure to pay their O&M assessments in advance on the leased Indian Trust land or execute appropriate promissory notes for the Fee Lands, because Mr. Oberly lacked authority to enter into oral agreements concerning promissory notes. It is well settled that a plaintiff has the burden of demonstrating that the Government employees with whom he dealt had authority to bind the Government. Cruz-Pagan v. United States, 35 Fed. Cl. 59, 60 (1996); Llamera v. United States, 15 Cl.Ct. 593, 597 (1988). To meet this burden, plaintiffs must identify a provision of Federal law that explicitly grants contracting authority to the employee. Federal Crop Ins. v. Merrill, 332 U.S. 380, 384 (1947); City of El Centro v. United States, 922 F.2d 816, 821 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991).

[9] "S.S.App." refers to the five page, second supplemental appendix filed with this brief.



25

Thus, plaintiffs' subjective belief or expectation that the agent had authority to bind the Government is not enough to discharge this burden. New American Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1081 (Fed. Cir. 1989); Freed v. United States, 34 Fed. Cl. 715, 720 (1996). Indeed, the Supreme Court has explained:

> Anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.

Federal Crop Ins. Corp. v. Merrill, 332 U.S. at 384.

This is a critical element of proof because "the authority of a [G]overnment official to contract is a prerequisite to the formation of a contract in the first place." Llamera, 15 Cl. Ct. at 600 (emphasis added). Indeed, "[i]t is well established that the [G]overnment is not bound by the acts of its agents beyond the scope of their actual authority." Harbert/Lummus Agrifuels Proejcts v. United States, 142 F.3d 1429, 1432 (Fed. Cir. 1998) cert. denied. ___U.S. ___, 67 USLW 3323 (March 1, 1999) citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. at 384. Moreover, "agency procedures must be followed before a binding contract can be formed." Harbert/Lummus, 142 F.3d at 1432.

Hence, where the applicable regulations or agency policies require a written agreement, the Government cannot be bound by an oral promise. Indeed, both the United States Court of Appeals for the Federal Circuit and its predecessor, the Court of Claims, have held express oral agreements are not binding when the applicable regulations or agency procedures require the agreement to be in writing. Harbert/Lummus, 142 F.3d at 1432(an oral statement from a contracting officer with authority to make an agreement is not binding where the delegation of authority to the contracting officer required any agreements to be written); American General



26

Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 57-58 (1978) (holding that express oral agreement with Government agent was not binding because, among other things, the governing regulations required the contract to be in writing); see also New American Shipbuilders, Inc., 871 F.2d at 1080 (because "[o]ral assurances do not produce a contract implied-in-fact until all the steps have been taken that the agency procedure requires," . . . "it is irrelevant if the oral assurances emanate from the very official who will have authority at the proper time, to sign the contract." )

The applicable regulations clearly require actual payment of the O&M assessments for Leased Indian Trust land and written promissory notes for the O&M assessments owed on the Fee Lands. Therefore, even if Mr. Oberly had authority to execute promissory notes on his own, which he did not, and even if made an oral agreement to allow the plaintiffs to execute a promissory note, the Government would not be bound by his oral statement because an oral agreement is not authorized by the governing regulations and procedures. Harbert/Lummus, 142 F.3d at 1432; New American Shipbuilders, 871 F.2d at 1080; American General Leasing, 587 F.2d at 57-58. Accordingly, any oral agreement would be "outside normal procedure," and therefore "legally ineffective" to bind the Government. New American Shipbuilders, 871 F.2d at 1081.

The record also demonstrates that Mr. Oberly lacked independent authority to agree to the terms of promissory notes. The BIA memorandum defining the detailed procedures for issuing promissory notes does not authorize Mr. Oberly to negotiate the terms of promissory notes. Hilderbrand Dec. at ¶¶ 2-5; and Exhibit A thereto, S.S. App. at 1-5. To the contrary, the BIA procedures require Mr. Oberly to refer all request for promissory notes to the Area General



27

Engineer, Hilderbrand Dec. , Exhibit A thereto at ¶1-2, S.S. App. at 4, and require the Area General Engineer to negotiate the terms of promissory notes, including the interest rate, the repayment schedule, and the amount of the down payment. Hilderbrand Dec. at ¶¶ 2-5; and Exhibit A thereto at ¶¶ 3-4, S.S. App. at 1-5. In addition, the BIA procedure required the Regional Solicitor to prepare all notes and repayment schedules. Hilderbrand Dec., Exhibit A at ¶ 4, S.S. App. at 4.

In short, the record demonstrates not only that Mr. Oberly had no authority to orally agree to the execution of promissory notes, but also that he lacked independent authority to negotiate the terms of written promissory notes. Accordingly, any agreement made by him was "outside the scope of his authority and outside normal procedures," and therefore is "legally ineffective" and "does not bind the United States to an implied-in-fact contract or by estoppel." New American Shipbuilders, Inc., 871 F.2d at 1081.



28

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to dismiss or in the alternative, its motion for summary judgment, dismiss plaintiffs' complaint and grant all other relief it deems equitable and just.

Respectfully submitted,

DAVID W. OGDEN
Acting Assistant Attorney General

DAVID M. COHEN
Director

Sharon Y. Eubanks
SHARON Y. EUBANKS
Deputy Director

Janene Marasciullo
JANENE M. MARASCIULLO
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street
Washington, D.C. 20530
(202) 307-0290
Attorneys for Defendant

March 5, 1999