IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A. DEAN OSWALT, REINIE OSWALT, CRAIG OSWALT, MICHELLE OSWALT, KIRK OSWALT and STACIE OSWALT, | ) | |
| Plaintiffs, | ) | No. 97-733c (Senior Judge Futey) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF A. DEAN OSWALT**

I hereby certify under penalty of perjury of the laws of the State of Washington that the following statements are true and correct. I make this statement based upon personal knowledge. I am otherwise competent to testify to the matters stated herein.

1. My name is A. Dean Oswalt and I am one of the plaintiffs herein. I was born in 1942. I graduated from high school and then immediately became involved with my father in the farming business. Prior to that time I had worked on the farm as well. I have been a farmer, raising

various types of crops including grain corn and silage corn since my graduation from high school. I remain so today.

2. The land that we farm is irrigated land. Without the application of irrigation water to the land to grow the crops, no crops would grow. The rainfall that we receive is woefully inadequate to grow the crops at issue herein. Without any irrigation water, we would have no crop.

3. In early 1995 myself, together with my sons Craig and Kirk filed tort claims against the United States arising out of the 1994 growing season and the failure of the Wapato Irrigation Project to deliver our proportionate share of irrigation water to our lands. My claim is attached hereto as Exhibit “A” and is incorporated by this reference as if fully set forth herein. My son Craig’s claim is attached hereto as Exhibit “B” and is hereby incorporated by this reference.

4. While I realize that portions of these claims have been dismissed by prior rulings of the court, the information in these claims submitted are true and accurate as to the pertinent portions that apply to the claims remaining. In particular, the statement of David Trautman contained in both claims is true and accurate as to both properties I farmed and properties farmed by my son Craig. I was and still am familiar with both

properties, the growing conditions in 1994 and the yields that have historically produced as well as the production from 1994.

5. During the course of my deposition, I was asked certain questions as to what would happen to crops if only a certain percentage of water was delivered over the course of the season. While those questions and answers might be interesting, they bear no relevance to what happened in 1994. In 1994 my crops went from June 10 through July 24 with essentially no water. That was a 44 day period of time wherein the temperatures were consistently in the 90-100 degree range. There was no rain. The only way for the crops to receive water was by the application of irrigation water which I did not have access to. This fact severely damaged both Craig's and my crops.

6. The issue is not what I ultimately ended up obtaining in way of irrigation water. When all was said and done, I don't know what percentage of water I ultimately obtained as expressed in a gross amount in 1994. However, that's not the point. What I do know is that my crops went for about 44 days with the application of little, if any, irrigation water. The damage was done during this period of time. You can't pour a bunch of water, after the fact, on a dead plant and bring it back to life. By the same token, you can't pour a bunch of water on a severely stressed plant, after the

fact, and expect that it will regain its full production. It may not die, but it will not produce the same as if water had been applied to it during that 44 day period of time.

7. Attached hereto as Exhibit "C" and incorporated by this reference as if fully set forth herein is a true and accurate copy of the damage computation applicable to myself, Craig and Kirk Oswalt. This document accurately sets forth the losses sustained as a result of the failure of the Wapato Irrigation Project to deliver irrigation water to our lands in 1994 during the period in question.

8. In my opinion, based on the conditions that existed in 1994, had we been provided our proportionate share of irrigation water for the whole 1994 irrigation season, both Craig and I would have been able to achieve an "average" yield of both grain and silage corn. Exhibit "C" sets forth what the average yield should have been and what our actual yields were that year. The difference in yield is directly attributable to not receiving irrigation water from June 10 through July 24.

DATED at Yakima, Washington, this 1st day of August, 2008.

A. Dean Oswalt

A. Dean Oswalt

STATE OF WASHINGTON )
) ss.
County of Yakima )

SUBSCRIBED AND SWORN TO before me this 1 day of August, 2008.

STATE OF WASHINGTON
DEBORAH A. GIRARD
NOTARY PUBLIC
COMMISSION EXPIRES
FEBRUARY 11, 2009

Deborah A. Girard
Deborah A. Girard
(Print Name)
Notary Public in and for the State of Washington, residing in Yakima.
My Commission Expires: 2/11/09

G:\JJC\OSWALT\USA\Pleadings\Oswalt Affidavit.doc

## CERTIFICATE OF FILING

I hereby certify that on the 1st day of August, 2008, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ J. Jay Carroll