# EXHIBIT A

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED OMB NO. 1105-0008 EXPIRES 4-30-88

1. Submit To Appropriate Federal Agency:

WAPATO IRRIGATION DISTRICT

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.)* *(Number, street, city, State and Zip Code)*

DEAN OSWALT
541 Chausse Road
Granger, WA 98932

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | | Married | 1994 Farming Season | N/A |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)*

See Attachment 1 to Claim for Damage.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

See Attachment 1 to Claim for Damage.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

N/A

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| See Attachment 1 to Claim for Damage. | |

12. *(See instructions on reverse)* AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| $205,754.77 | N/A | N/A | $205,754.77 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM**

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| A Dean Oswalt | (509) 854-1884 (509) 839-2244 wife wk. | 1/31/95 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)*

8

PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nr[illegible] ınd extent of treatment, the degree of permanent disability, if any, the progr[illegible] and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes. If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. ☐ No

No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

No

17. If deductible, state amount

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes. If yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* ☐ No

N/A

# ATTACHMENT ONE TO CLAIM FOR DAMAGE

CLAIMANT: **DEAN OSWALT** paragraph 8 basis of claim

The Wapato Irrigation District did not provide my allocable share of water in a timely or orderly manner resulting in crop damage as hereinafter set forth. During an approximately forty five (45) day period from June 10 to July 25, 1994, little or no water was provided even though farmers above us received their allocable share of water and my water as well.

Our area received snow fall in late March 1994 which provided excellent moisture for planting and germination of the crops. The stands of corn were the best that we had experienced in the last four or five years. Irrigation water must be applied in June for the growing of the crop. We were able to irrigate prior to June 10 on these fields that required it. However, commencing June 10, 1994, with increased demand because of the arrival of the summer heat, the volume of water in the ditch was insufficient to enable me to draw water to irrigate my fields. Without water, the ears of corn could not develop. Even though water was available after July 25, 1994, the water was too late to benefit to crop.

We had repeatedly requested assistance from the District including the installation of the pumps to supplement water. The District reported they were unable to locate pumps. We located pumps for them in Yakima, Washington, at the N.C. Company, and the District was able to rent those pumps, one of which was installed at the Marion Drain (discussed later).

Crop losses and damages are as follows:

1. Silage Corn 34.8 Acres (Allotment No. 794): The typical yields for silage corn range from 28 to 35 tons per acre, as supported by November 15, 1994, letter of David B. Trautman, Field Consultant for Simplot Soil Builders, who was familiar with my farm and farms in the surrounding area. An average yield for my farm is thirty (30) tons per acre. My crop was sold to VanSlegren Dairy at $25.00 per ton delivered to the Dairy. I hired the chopping and hauling at $6.00 per ton and I have indicated expenses saved on the schedule of losses set forth herein. My losses are determined as follows:

| | |
|---|---|
| Average Yield 34.8 acres @ 30 tons | 1,044 tons |
| Actual yield (see Peterson Invoice) | 764.9 tons |
| Net Loss (in tons) | 279.1 |
| Gross Loss (in dollars) 279.1 tons @ $25.00 per ton | $ 6,977.40 |

C18 srw\Oswalt.d



10

| | |
|---|---|
| Expenses saved: chopping and hauling<br>279.1 tons @ 6.00 per ton | $ 1,674.60 |
| Net Loss: | $ 5,302.80 |

2. Grain Corn 411.7 acres: On the following allotments or parcels:

| | |
|---|---|
| Allotment 1988 | 32.1 acres |
| Allotment 1988 | 24.8 acres |
| Allotment 850 | 19.5 acres |
| Allotment 2661 | 16.2 acres |
| Allotment 299-300 | 64.3 acres |
| Allotment 289 | 11.4 acres |
| Allotment 794 | 6.6 acres |
| Allotment 849 & 2661 | 49.6 acres |
| Allotment 596 | 75.4 acres |
| Allotment 263 | 72 acres |

The average yield for those fields is 5.5 tons per acre, as supported by the November 15, 1994, letter of David B. Trautman, Field Consultant for Simplot Soil Builders, who was familiar with my farm and farms in the surrounding area. As supported by my prior experience with this same field was a yield of 5.5 tons per acre. Other fields in the surrounding area had yields of approximately the same as prior years. The moisture which we received in the spring 1994 gave the crop an excellent start and yields were expected to be at least the average of 5.5 tons per acre. Therefor no costs were saved by the reduction in yield. My loss for grain corn was $109,099.22, summarized as follows: It was necessary to cover the entire field to harvest the grain corn that was available, and all of the equipment was owned by me.

| | |
|---|---|
| Average yield 411.7 acres @ 5.5 tons per acre | 2,264.35 tons |
| Actual yield (weight slips are available) | 1,103.72 tons |
| Net Loss in tons | 1,160.63 tons |
| Gross Loss in dollars: 1,160.63 tons @ $94.00<br>per ton (see Bleyhl Contract for price) | $ 109,099.22 |
| Expenses saved | none |
| Net Loss | $ 109,099.22 |



11

3. Sweet Corn: During 1994 I farmed Allotment 299-300 which is composed of two separate fields, one of 7.2 acres and one of 15.9 acres. The average yield for the 7.2 acre field is 9.4 tons per acre, and the average yield for the 15.9 acre field is 9.5 tons per acre. This average is supported by November 16, 1994, letter from Snow & Sons, who purchased sweet corn from us in the past. In 1994, the 7.2 acre field yielded only 4.84 tons per acre and the 15.9 acre field was of no value, and the field was bypassed as indicated in the Snow & Sons letter dated August 9, 1994. I was able to salvage the 15.9 acre field for silage and 174.745 tons of silage was sold at $15.00 per ton and is shown below as a reduction in my loss. My loss for sweet corn is the amount of $13,008.63, determined as follows:

| | | |
|---|---|---|
| Average yield | (1) 7.2 acres @ 9.4 tons | 67.68 tons |
| | (2) 15.9 acres @ 9.5 tons | 151.05 tons |
| Total average yield | | 218.73 |
| Actual yield | (1) 7.2 acre field | (34.85 tons) |
| | (2) 15.9 acre field | 0 tons |
| Net loss in tons | | 183.88 |
| Gross loss in dollars<br>183.88 tons @ $85.00 contract price | | $ 15,629.80 |
| Salvage: 174.745 tons silage @ $15.00 ton | | ($ 2,621.17) |
| Net Loss | | $ 13,008.63 |

4. Peppermint: During 1994 I farmed the following Allotments and acreage with Peppermint:

| Allotment No. | Acreage | Crop |
|---|---|---|
| 289 | 50.6 | mature peppermint |
| 850 | 50 | mature peppermint |
| 1131 1/2 | 33.4 | baby peppermint |
| 848 | 10.4 | baby peppermint |

The average yields for my acreage is at least 90 pounds per acre for baby peppermint, and 100 pounds per acre for mature peppermint. The actual production was reduced to approximately 77.9 pounds per acre for mature peppermint and 55.57 pounds per acre for baby peppermint, which was directly caused by the lack of water. The yields and the loss due to water is supported by attached letter dated November 18, 1994, from the A.M. Todd Company. I had a contract with A.M. Todd Company for 6,500 pounds at $10.50 per pound, which was fully satisfied.

Attached are purchase vouchers from AM Todd Company showing the dates and the pounds on which I sold mint. My existing contract was satisfied as indicated by purchase voucher dated September 1, 1994. Although I was advised to hold the mint oil because the market price was rising, I did sell mint oil and September 30 and on October 14, 1994, at $16.50 a pound to satisfy real property payments which were due. Based upon the advice of A.M. Todd Company I elected to hold the balance of my mint oil because of the rising market price, and all of my remaining oil was sold on November 14, 1994, at $20.00 per pound. That is the date I would have sold all remaining oil, even though the market price did continue to rise to $21.00 per pound. Accordingly, my losses are at $20.00 per pound which is supported by the purchase voucher. My loss of peppermint crop is the amount of $63,301.33, determined as follows:

| | | |
|---|---|---|
| Average crop yield 100.6 acres @ 100 pounds | (1) mature peppermint | 10,060 pounds |
| | (2) baby peppermint 43.8 acres @ 90 pounds per acre | 3,942 pounds |
| Total average yield | | 14,002 pounds |
| LESS: actual yield | (1) mature peppermint | ( 7,836.74 pounds) |
| | (2) baby peppermint | ( 2,433.97 pounds) |
| Total actual yield | | (10,270.71 pounds) |
| Net loss crop in pounds | | 3,731.29 pounds |
| Gross Loss in dollars: 3,731.29 pounds @ $20.00 per pound | | $ 74,625.80 |
| Expenses saved | (1) distilling costs $3.00 x 3731.29 pounds (2) payment to Mint Commission | ($ 11,193.87) |
| $.035 x 3,731.29 pounds | | ($ 130.60) |
| Net Loss | | $ 63,301.33 |

5. Fuel and Labor:

5.1 Installation of Pumps: During June and July the water in the ditch was insufficient to reach the delivery point for my fields. It was necessary the District brought in a pump to be located at the Marion Drain at Allotment 794. The pump was delivered but not installed for a period of three days, at that time we asked the District if it would be acceptable if we installed the pump because there was not water in the ditch. We were authorized and we did install the pump. However, that pump was not sufficient to pump water from the drain into the ditch so additional pumps were added. Initially the Curfman pump was installed. When Mr. Curfman required use of his pump, the Rasumssen pump was installed. In addition alongside those pumps the JD-PTO pump was installed (the tractor was owned by me, and the pump was borrowed from a neighbor). The MD-PTO and was installed at a different location, the Stevens drain and Connie Road which is a large drain. This was also necessary to deliver to the delivery point for Craig Oswalt (Allotment 596).

5.2 Fuel: I supplied all of the fuel for all of the pumps other than the Government pumps, and I supplied a portion of the fuel for the Government pumps. The District Personnel were filling the Government pumps, but not on a regular basis, and the pumps would have run out of fuel, accordingly, in the morning and at the evening we checked the fuel level and added additional fuel where we thought that was necessary to keep the pumps from running out of fuel. I was advised to keep track of the amount of fuel that we put in all of the pumps and was told that we would be reimbursed. I also provided the fuel for the pumps at a total of 4,217 gallons which at .86 per gallon is the amount of $3,626.62.

5.3 Attached is a schedule of hours showing how many hours that I spent, and that Craig Oswalt spent in the set up and repair of pumps and in the fueling of pumps. I spent a total of 193 hours and $10.00 per hour is a reasonable compensation for my time.

5.4 Hired Labor: In addition, it has been necessary for me to hire labor to perform farming functions that I otherwise would have performed had I not been required to set up, repair and service pumps. The additional labor which I incurred was the amount of $3,840.58.

6. Interest: Because of the crop loss I have been unable to pay indebtedness which I incurred in connection with my 1994 crop. The indebtedness is in the amount of $76,000.00 and the average interest rate has been 12% per annum and $20,000.00 at the rate of 18% per annum $5,645.59 as of January 31, 1995 together with interest at the rate of $34.85 per day after July 31, 1995.

7. Summary of Damages:

| | | |
|---|---|---|
| Silage corn | $ | 5,302.80 |
| Grain corn | $ | 109,099.22 |
| Sweet Corn | $ | 13,008.63 |
| Peppermint | $ | 63,301.33 |
| Dean Oswalt labor | $ | 1,930.00 |
| Fuel | $ | 3,626.62 |
| Hired Labor | $ | 3,840.58 |
| Interest | $ | 5,645.59 |
| TOTAL: | $ | 205,754.77 |

11. Witnesses:

| | |
|---|---|
| Kirk Oswalt | 630 Connie Road, Toppenish, WA 98948 |
| Dean Oswalt | 451 Chausse Road, Granger, WA 98932 |
| Craig Oswalt | 340 SR 23, Toppenish, WA 98948 |
| A. C. Oberly | Toppenish, WA 98948 |
| Tyrone Pierre | ______Fort Road, White Swan, WA 98952 |
| Dana Antelope | ______________________ Wapato, WA 98951 |
| Harry Cartmell | ________Wapenish Road, Wapato, WA 98951 |
| Ernie Clark | ______________________ Wapato, WA 98951 |
| Dale Miller | (I.P. Callison Mint) ____ Yakima Valley Hwy, Sunnyside, WA 98944 |
| Scott Oswalt | (Simplot Soil Builders) 1st & Zillah Ave., Sunnyside, WA 98944 |

| | |
|---|---|
| David B. Trautman | (Simplot Soil Builders) 1st & Zillah Ave., Sunnyside, WA 98944 |
| Troy Curfman | (neighbor) 1621 Hwy. 223, Granger, WA 98932 |
| Ted Escobar | (Reporter for Toppenish Review Newspaper) 11 E. Toppenish Ave., Toppenish, WA 98948 |
| Ed Beitenbos | (former ditch rider)______________, Granger, WA _______ |
| Rich Schneider | (AM Todd) E. Edison & Yakima Valley Hwy., Sunnyside, WA 98944 |

J. R. SIMPLOT COMPANY / P.O. BOX 717 / SUNNYSIDE, WASHINGTON 98944 (509) 837-6261

SOILBUILDERS

Date: November 15, 1994
To: Whom it may concern
From: David B. Trautman
Field Consultant, Simplot Soilbuilders

RE: Dean Oswalt-1994 Crop yields reduced to no water or not enough water when needed in critical stages of plant growth.

The growing season of 1994 was very notable for reduced yields on many crops that were stressed in very critical times of plant development due to having no water or little water at all. Fresh sweet corn yields were down by at least 6-8 tons per acre and some sweet corn was bypassed completely due to insufficient ear growth and was chopped for silage due to its lack of water at this stage of growth. Silage corn, which normally yields 28-35 ton per acre, was down to 15-18 ton. Field corn, normally yields 5-7 ton per acre, was down to 1 1/2-2 1/2 ton. Peppermint plants were pinched and very dry, which can set oil production at very low levels and can set that plant back 4-6 months in it's oil producing capabilities. These crops need consistent, available water to produce a crop that is marketable for the farmer/grower. Between the dates of June 10, 1994 and July 24, 1994, there was no water at all, which I feel depleted the yields on these crops very significantly. During the above mentioned dates the temperatures were consistently in the high 90's- low 100 degree range, which with no water to irrigate with, I myself am very surprised that they still had a crop to harvest. Another thing that I noticed was when the grower did get water after July 24, 1994, there were many times that there was not enough water to even fill the head ditch and they had to use pumps just to get water to their crops. On the rotation that was set forth to the grower, they never did get sufficient water to irrigate correctly, only enough to get the crops a quick drink in order to get across the acres before their rotation was done, which at times could not be done. There needs to be some improvements made very soon for the 1995 growing season is approaching fast.

Sincerely,

David B. Trautman

17

11 Sep 94 1103

DEAN OSWALT
INDIAN CHURCH ROAD
GRANGER, WASH 98932

Due on recpt 91-0900085

| | | | |
|---|---|---|---|
| ;.957 | TON CORN CHOPPED AND HAULED | 6.00 | 4,589.74 |

4,589.74

BALANCE DUE: 4,589.74 18

iginal

DEAN OSWALT TO VAN SLAGEREN

| | TRUCK 50 | TRUCK 60 | TRUCK 70 | TRUCK 1 | TRUCK 2 |
|---|---|---|---|---|---|
| 31-Aug-94 | 27500 | 23045 | 27850 | 24290 | 27290 |
| | 24310 | 24590 | 22975 | 25320 | 24935 |
| | | | 21800 | 26075 | |
| 01-Sep-94 | 22710 | 25595 | 23105 | 25250 | 23730 |
| | 23925 | 24365 | 22330 | 25480 | 22990 |
| | 23855 | 24065 | 23505 | 25640 | 24175 |
| | 22020 | 25250 | 21505 | 24445 | 24640 |
| | 23735 | 24165 | 22210 | 23950 | 24305 |
| | 23125 | 24200 | 24365 | 24815 | 24425 |
| | 23420 | 24280 | 24290 | 24355 | 25030 |
| | 25465 | 24055 | 23110 | 23340 | 25555 |
| | 23990 | 25175 | 23750 | 23395 | 26195 |
| | | 22975 | 24145 | 25885 | 24410 |
| | | 25010 | 24230 | | |
| | 264055 | 316770 | 329170 | 322240 | 297680 |
| TOTAL POUNDS | | 1529915 | | 161.12 | 148.84 |
| TOTAL TONS | | 764.9575 | | | |

COMMODITY PURCHASE CONTRACT 1538

BLEYHL FARM SERVICE, INC. herein referred to as Bleyhl and

Name DEAN Oswalt

Address 541 Chausse Road, Granger, Wa. 98932

Account Number __________, herein "Seller," agree as follows:

1. Pursuant to the general terms of this contract, the undersigned Seller agrees to sell and to deliver to Bleyhl for processing and Bleyhl agrees to purchase the commodity described below. (Seller and Bleyhl agree that title to commodity shall pass to Bleyhl when payment has been made to Seller.)

2. DESCRIPTION: Commodity Corn Grade U.S. No. 2 or Better
   Test Weight 54# Bu/7 Protein __________

3. QUANTITY: Exactly 224.4405 ☐ Bushel(s) ☒ Ton(s) ☐ Hundredweight

4. PRICE: $ 94.00 per ☐ Bushel ☒ Ton ☐ Hundredweight
   (a) Protein: Premium and/or discount __________
   (b) Less applicable storage charges __________
   (c) Less applicable discounts for grades less than contract grade specified above if acceptable by Bleyhl

5. DELIVERY:
   (a) FOB Granger (b) Time of Shipment 12-1-94

6. TERMS OF PAYMENT: Final payment will be made upon final weights and grades. Advances and/or accounts receivable to be deducted. Payment to grower, 15 days from contract date.

7. SPECIAL PROVISIONS:
   pick-up check Thursday, 12-15, @ 3:00 at the Granger Feed Mill

8. Any increase or decrease in freight rates from the date of this Contract to the payment date are for the account of the Seller.

9. Ergoty, garlicky, smutty, tough, and sprout-damaged grain shall not be acceptable except at Bleyhl's option. Miminum grade acceptable without mutual consent will be No. 2.

10 Seller Warrants that when the balance of the purchase price is due hereunder, the commodity shall be free from any security interest or lien except as follows:
   NONE

11. Unless otherwise specified above, United States Federal Grain Standards shall apply to all grain delivered hereunder. State certificates of submittal samples shall determine the grade and dockage and buyer's schedule of discounts shall govern settlement.

12. This is not a production contract and does not depend on Seller's ability to produce the commodity on any particular real property, and Seller shall be obligated to supply the exact quantity specified in Paragraph 3 above. If Seller fails to deliver all or any portion of the contract quantity for any reason whatsoever, Bleyhl, as one of its remedies, may purchase the deficient amount on the open market and recover from Seller as damages the difference between the market price on the date ten (10) days after mailing to Seller written notice of deficiency and the purchase price set forth above. Over deliveries must be sold in a new contract.

13. This Contract embodies the whole agreement of the parties. There are no promises, terms, conditions, or obligations other than those contained herein, and no terms, conditions, communications, representations, or agreements, purporting to modify or vary the terms of this Agreement, shall be binding unless hereafter made in writing and signed by both parties. In the event either party hereto employs an attorney to bring suit or action to enforce the term of this Contract, the prevailing party shall be paid court costs and reasonable attorneys' fees by the other party.

dated this 13 day of December 19 94.

IMPORTANT! READ BEFORE SIGNING

SELLER
[signature] R. Dean Oswalt

BLEYHL FARM SERVICE, INC.
By W. Henry Mengarelli

WHITE, Grower - YELLOW, File Copy - PINK, Settlement Copy

Emery's Custom Printing

20

01 East 1st
itzville, WA 99169

# GRAIN PURCHASE CONTRAC

BUYER: R R WAREHOUSE, Inc.

CONTRACT NO. 003440

SELLER: Don Garrett (1197)

DATE 12 - 1 - 94

THIS AGREEMENT made the date above by and between the undersigned Cooperative, herein called Buyer, and the undersigned Sell erein called Seller, WITNESSETH. For and in consideration of the respective covenants and agreements, the Seller agrees to sell a Buyer agrees to buy today from Seller Commodities as follows; **pounds delivered or transferred shall be on basis of gross weight**

| QUANTITY – GROSS WEIGHT BASIS | COMMODITY | | PRICE | PRICE BASIS |
|---|---|---|---|---|
| 77267 - 0T9441 | CORN | | 44 ¢/Bu | T |
| | DELIVERY DATE | DATE TITLE PASS | PAYMENT DATE | LOCATION |
| | 12-1-94 | 12-1-94 | 12-15-94 | T.R. |

REMARKS

**STRIKE CLAUSE & MATTERS BEYOND BUYER'S CONTROL.** This contract is subject to strikes and other conditions beyon Buyer's control.

Unless otherwise specified, U.S. Federal Grain Standards shall apply to all grain delivered or transferred hereunder. State Certificate of Submittal samples shall determine the grade and dockage and Buyers schedule of discounts shall goverr settlement. Minimum grade acceptable without mutual consent will be U.S. #3.

This is not a production contract and does not depend on Sellers ability to produce the commodity on any particular rea property, and Seller shall be obligated to supply the exact quantity specified above. If Seller fails to deliver all or any portion the contract quantity for any reason, R R Warehouse, Inc., may purchase the deficient amount on the open market and recover from Seller as damages the difference between market price on the date ten (10) days after mailing to Seller written notice of deficiency and the purchase price set forth above. Over delivery will be held for the account of the Seller.

Seller warrants that on the delivery or title transfer date the commodity shall be free from any security interest or lien except

Any change in applicable freight rates shall be for the account of the Seller.

It is understood that the retention of this confirmation without notifying us of error therein, is an acknowledgment and acceptance of the contract as above.

This contract shall be binding upon the heirs, administrators and executors of the respective parties and this contract cannot be assigned.

Seller warrants that the commodity covered by this contract shall not be adulterated or misbranded within the meaning of the Federal Food, Drug provisions of Sections 404 and 506 of the Act, be introduced into interstate or intrastate commerce.

It is further agreed that no other agreements exist, relative to this contract.

**IMPORTANT! READ BEFORE SIGNING!**

ACCEPTED: Left at home 3 PM
SELLER
12 - 1 - 94

R R WAREHOUSE, INC.

BY: [signature]
BUYER AGENT

21

Snow and Sons PRODUCE CO.
BUYERS • PACKERS • SHIPPERS
509-837-5366 (SUNNYSIDE, WA) 521 WELLNER ROAD OUTLOOK, WA 98938
509-837-5876 (FAX)
SNOWFLIGHT
Roger Thomas
Steve Thomas

August 9, 1994

Dean Oswalt
Indian Church Road
Granger, Wash. 98932

Dear Dean:

In regards to the 16 acre field of sweet corn, as we discussed yesterday when we looked the field over, there is no product suitable for fresh market.

This is due to lack of water causing smaller ears and dry tips.

Sincerely,

Roger Thomas

Snow & Sons Produce Co.

22

Snow and Sons PRODUCE CO.
BUYERS • PACKERS • SHIPPERS
509-837-5366 (SUNNYSIDE, WA) 521 WELLNER ROAD OUTLOOK, WA 98938
509-837-5876 (FAX)
SNOWFLIGHT
Roger Thomas
Steve Thomas

November 16, 1994

Dean Oswalt
Granger, Wash. 98932

Dear Dean,

In regards to your questions on past performance of our sweet corn fields and how they did this year we looked back three years to compare with 1994.

In 1994, the grower that grew super sweet varieties before you had an adequate water supply while the grower who grew after you was short of water and experienced crop loss in the lower one third of the field.

If you have any further questions we will do our best to answer them.

Sincerely,

Steven R. Thomas

Steven R. Thomas
Secretary-Treasurer

SNOWFLIGHT

Snow and Sons PRODUCE CO.

BUYERS • PACKERS • SHIPPERS

509-837-5366 (SUNNYSIDE, WA) 521 WELLNER ROAD OUTLOOK, WA 98938

509-837-5876 (FAX)

oger Thomas
eve Thomas

## Oswalt - Alpine

| Year | Gross Ton per acre | #1 Ton per acre | $ per Acre |
|---|---|---|---|
| 1994 | 5.21 | 4.84 | 412.17 |
| 1993 | 11.11 | 9.29 | 794.80 |

## Other Growers - Alpine

| | | | |
|---|---|---|---|
| 1994 | 7.31 | 6.94 | 591.20 |
| 1993 | 11.37 | 8.27 | 712.39 |
| 1992 | 8.75 | 7.89 | 673.49 |
| 1991 | 9.06 | 5.15 | 449.53 |

## Other Growers - Super Sweet

| | | | |
|---|---|---|---|
| 1994 (Before) | 12.88 | 9.20 | 793.37 |
| 1994 (After) | 8.78 | 5.01 | 436.46 |
| 1993 | 11.00 | 7.42 | 642.24 |
| 1992 | Did not grow Super Sweet in 1992 | | |
| 1991 | 8.10 | 6.42 | 550.51 |

## All Growers - All Varieties

| | | | |
|---|---|---|---|
| 1994 | 8.73 | 6.39 | 568.08 |
| 1993 | 10.32 | 7.52 | 651.58 |
| 1992 | 9.15 | 6.04 | 522.06 |
| 1991 | 8.17 | 5.45 | 429.38 |
| AVERAGE | 9.09 | 6.35 | 542.78 |

24

RUEHL & ARSTEIN, Inc.
P. O. Box 176
Granger, WA 98932

FIELD: Oswalt PRODUCT: CORN SILAGE CHOPPER: Peterson

| DATE | TICKET # | TRUCK # | NET WEIGHT | DATE | TICKET # | TRUCK # | NET WEIGH |
|---|---|---|---|---|---|---|---|
| 8/19 | 1 | 1 | 30,150 | | | | |
| | 2 | 3 | 21,825 | | | | |
| | 3 | 2 | 19,715 | | | | |
| | 4 | 4 | 19940 | | | | |
| | 5 | 1 | 29,340 | | | | |
| | 6 | 3 | 27,015 | | | | |
| | 7 | 2 | 28,480 | | | | |
| | 8 | 4 | 27590 | | | | |
| 8/20 | 9 | 1 | 27,735 | | | | |
| | 10 | 3 | 28850 | | | | |
| | 11 | 4 | 29,585 | | | | |
| | 12 | 1 | 28,670 | | | | |
| | 13 | 3 | 30,295 | | | | |
| | | | 349,490 | | | | |
| | | 174.745 Ton | | | | | |
| | | @ | 15.00 Net/Ton | | | | |

Sweet Corn Silage to Golob. (SALVAGE)

25

A.M. TODD COMPANY

Wapato Irrigation Project
South Camas Ave
Wapato, WA 98951

November 18, 1994

TO WHOM IT MAY CONCERN:

This letter is being written concerning the lack of irrigation water delivery to Dean Oswalt and Craig Oswalt from Lateral 4 during the 1994 crop season.

Dean and Craig had indicted to me, that from the period June 10, to July 24, 1994, their delivery of water was minimal to non exitant. I myself witnessed the canal so low as to make water deliver from it impossible.

The peppermint fields raised by Dean and Craig Oswalt showed water stess throughout most of the growing season. Areas of the fields were so very dry that peppermint plants were actually drying up and dying due to water stress. In my opinion, this stress caused a reduction in their peppermint yield.

The 1994 peppermint crop per acre average yield was 89 lbs. per acre. The 5 year per acre average yield is 91 lbs. per acre. The stress, experienced by the Oswalt's peppermint crop, made it nearly impossible to attain these averages.

Sincerely,

Rich Schneider

Rich Schneider, Manager
A.M. Todd Company

P.O. Box 411, Sunnyside, Washington 98944
Tel: 509 837 5085 Fax: 509 837 8633

A.M. TODD COMPANY — KALAMAZOO, MICHIGAN — PURCHASE VOUCHER

PURCHASED FROM: OSWALT, DEAN — GROWER: OSW71 — LOCATION: 07

ADDRESS: 541 CHAUSEE RD, GRANGER, WA 98932-0000 — DATE: 11/14/94

PEPPERMINT ☐ SPEARMINT ☐ OTHER — GRADE: 105

| ING. NO. | DRUM NO. | REF. | GROSS | TARE | NET |
|---|---|---|---|---|---|
| 10715 | 3310 | | 448.80 | 44.60 | 404.20 |
| 10716 | 3312 | | 465.20 | 44.80 | 420.40 |
| 10718 | 3382 | | 471.40 | 44.80 | 426.60 |
| TOTALS | | | 1385.40 | 134.20 | 1251.20 |

5206

TYPE: ☐ 1ST ☐ SCOTCH ☐ 2ND ☐ NATIVE — RECOVERY ☐

CONTRACT NO. ______

WEIGHT ______

BALANCE ______

THE PROPERTY COVERED BY THIS PURCHASE VOUCHER IS PURCHASED BY A.M. TODD COMPANY SUBJECT TO THE FOLLOWING CONDITIONS:

1. NET WEIGHTS ARE SUBJECT TO CORRECTION AT KALAMAZOO, MICHIGAN, FOR DIRT, WATER AND OTHER CONTAMINANTS.
2. THIS VOUCHER MAY NOT BE ASSIGNED, TRANSFERRED OR USED AS COLLATERAL SECURITY.
3. A.M. TODD COMPANY RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO MAKE PARTIAL PAYMENT OF THIS VOUCHER PRIOR TO THE DUE DATE.

PAYMENT DUE

| DATE | AMOUNT |
|---|---|
| | |

| | | |
|---|---|---|
| 1251.20 LBS | OZS @ 20.00 | 25024.00 |
| LBS | OZS @ | |
| MINT COMM @ | 0.035 | 43.79 |
| FW Mint Comm | | |
| | 0.00 | |
| | 0.00 | |
| TOTAL DEDUCTIONS ▶ | | 43.79 |
| AMOUNT DUE ▶ | | 24980.21 |

A.M. TODD COMPANY,

By ______

SPOT @ $20.00

Page 1 of 1

27

WHITE – Kalamazoo Copy • YELLOW – Grower Copy • PINK – Buying Agent Copy • GOLD – Kalamazoo Copy

PURCHASED FROM OSWALT, DEAN GROWER OSW71 LOCATION 07

ADDRESS 641 CHAUSEE RD, GRANGER, WA 98932-0000 DATE 10/14/94

X PEPPERMINT ☐ SPEARMINT ☐ OTHER ______ GRADE ______

| REG. NO. | DRUM NO. | REF. | GROSS | TARE | NET |
|---|---|---|---|---|---|
| 10713 | 3372 | 4/5 | 446.00 | 44.80 | 401.20 |
| 0714 | 3361 | 4 | 441.20 | 44.80 | 396.40 |
| 0717 | 1816 | I | 448.60 | 65.20 | 383.40 |

TO 1CA200 5191

| | | | |
|---|---|---|---|
| TOTALS | 1335.80 | 154.80 | 1181.00 |
| 1181.00 LBS | OZS @ 16.50 | | 19486.50 |
| LBS | OZS @ | | |
| MINT COMM @ | 0.035 | | 41.34 |
| FW Mint Comm | | | |
| | 0.00 | | |
| | 0.00 | | |
| TOTAL DEDUCTIONS ▶ | | | 41.34 |
| AMOUNT DUE ▶ | | | 19445.16 |

TYPE T05

☒ 1ST ☐ SCOTCH RECOVERY

☐ 2ND ☐ NATIVE ☐

CONTRACT NO. ______

WEIGHT ______

BALANCE ______

THE PROPERTY COVERED BY THIS PURCHASE VOUCHER IS PURCHASED BY A.M. TODD COMPANY SUBJECT TO THE FOLLOWING CONDITIONS:

1. NET WEIGHTS ARE SUBJECT TO CORRECTION AT KALAMAZOO, MICHIGAN, FOR DIRT, WATER AND OTHER CONTAMINANTS.
2. THIS VOUCHER MAY NOT BE ASSIGNED, TRANSFERRED OR USED AS COLLATERAL SECURITY.
3. A.M. TODD COMPANY RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO MAKE PARTIAL PAYMENT OF THIS VOUCHER PRIOR TO THE DUE DATE.

PAYMENT DUE

| DATE | AMOUNT |
|---|---|
| | |

A.M. TODD COMPANY,

By [signature]

SPOT @ 16.50

Page 1 of 1

WHITE – Kalamazoo Copy • YELLOW – Grower Copy • PINK – Buying Agent Copy • GOLD – Kalamazoo Copy

28

# A.M. TODD COMPANY
KALAMAZOO, MICHIGAN

PURCHASE VOUCHER 10219

PURCHASED FROM: OSWALT, DEAN GROWER OSW71 LOCATION 07

ADDRESS 541 CHAUSEE RD, GRANGER, WA 98932-0000 DATE 09/30/94

☐ PEPPERMINT ☐ SPEARMINT ☐ OTHER ______ GRADE ______ 105

| REG. NO. | DRUM NO. | REF. | GROSS | TARE | NET |
|---|---|---|---|---|---|
| 14 | 3254 | | 474.60 | 44.80 | 429.80 |
| 15 | 3392 | | 452.20 | 44.80 | 407.40 |
| 16 | 3256 | | 450.60 | 44.60 | 406.00 |
| 17 | 3320 | | 149.20 | 44.60 | 104.60 |
| TOTALS | | | 1526.60 | 178.80 | 1347.80 |

TYPE: X ☐ 1ST ☐ SCOTCH RECOVERY ☐ ☐ 2ND ☐ NATIVE

CONTRACT NO. ______

WEIGHT ______

BALANCE ______

To Kalkoo 5184

| | | | |
|---|---|---|---|
| 1347.80 LBS | OZS @ | 16.50 | 22238.70 |
| LBS | OZS @ | | |
| MINT COMM @ | | 0.035 | 47.17 |
| FW Mint Comm | | | |
| | 0.00 | | |
| | 0.00 | | |
| TOTAL DEDUCTIONS ▶ | | | 47.17 |
| AMOUNT DUE ▶ | | | 22191.53 |

THE PROPERTY COVERED BY THIS PURCHASE VOUCHER IS PURCHASED BY A.M. TODD COMPANY SUBJECT TO THE FOLLOWING CONDITIONS:

1. NET WEIGHTS ARE SUBJECT TO CORRECTION AT KALAMAZOO, MICHIGAN, FOR DIRT, WATER AND OTHER CONTAMINANTS.
2. THIS VOUCHER MAY NOT BE ASSIGNED, TRANSFERRED OR USED AS COLLATERAL SECURITY.
3. A.M. TODD COMPANY RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO MAKE PARTIAL PAYMENT OF THIS VOUCHER PRIOR TO THE DUE DATE.

PAYMENT DUE

| DATE | AMOUNT |
|---|---|
| | |
| | |
| | |

A.M. TODD COMPANY,

By [signature]

SPOT @ 16.50

Page 1 of 1

29

WHITE – Kalamazoo Copy • YELLOW – Grower Copy • PINK – Buying Agent Copy • GOLD – Kalamazoo Copy

KALAMAZOO, MICHIGAN

36729

SED FROM OSWALT, DEAN GROWER OSW71 LOCATION 07

ADDRESS 541 CHAUSEE RD, GRANGER, WA 98932-0000 DATE 09/01/94

[X] PEPPERMINT [ ] SPEARMINT [ ] OTHER GRADE

TYPE 105

[X] 1ST [ ] SCOTCH [ ] 2ND [ ] NATIVE RECOVERY [ ]

| NO. | DRUM NO. | REF. | GROSS | TARE | NET |
|---|---|---|---|---|---|
| ~~913~~ | ~~3437~~ | | ~~95.60~~ | ~~44.60~~ | ~~51.00~~ |
| | | | KA200 | | |
| | | | 94-22 | | |
| TOTALS | | | 7260.60 | 760.60 | 6500.00 |

| | | | |
|---|---|---|---|
| 6500.00 LBS | OZS @ | 10.50 | 68250.00 |
| LBS | OZS @ | | |
| MINT COMM @ | | 0.035 | 227.50 |
| FW Mint Comm | | | |
| | 0.00 | | |
| | 0.00 | | |
| TOTAL DEDUCTIONS ▶ | | | 227.50 |
| AMOUNT DUE ▶ | | | 68022.50 |

CONTRACT NO.

WEIGHT

BALANCE

THE PROPERTY COVERED BY THIS PURCHASE VOUCHER IS PURCHASED BY A.M. TODD COMPANY SUBJECT TO THE FOLLOWING CONDITIONS:

1. NET WEIGHTS ARE SUBJECT TO CORRECTION AT KALAMAZOO, MICHIGAN, FOR DIRT, WATER AND OTHER CONTAMINANTS.
2. THIS VOUCHER MAY NOT BE ASSIGNED, TRANSFERRED OR USED AS COLLATERAL SECURITY.
3. A.M. TODD COMPANY RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO MAKE PARTIAL PAYMENT OF THIS VOUCHER PRIOR TO THE DUE DATE.

PAYMENT DUE

| DATE | AMOUNT |
|---|---|
| | |
| | |
| | |

A.M. TODD COMPANY

By [signature]

CONTRACT @10.50 C&F

Page 2 of 2

30

WHITE – Kalamazoo Copy • YELLOW – Grower Copy • PINK – Buying Agent Copy • GOLD – Kalamazoo Copy

man Hrs. on pumps

| | Craig | Dean |
|---|---|---|
| Cuyfman – | | |
| Set up | 8 | 8 |
| Repair | 8 | 8 |
| Rasmussen – | | |
| Set up | 8 | 8 |
| Repair | 15 | 15 |
| J.D. – P.D. – | | |
| Set up | 6 | 6 |
| Repair | 5 | 5 |
| M.D. – P.D. | 6 | 6 |
| Set up | | |
| Repair | 15 | 15 |
| Doe pumps | | |
| Set up | 20 | 20 |
| Repairs | 7 | 7 |
| Fueling pumps 46 days am/pm. | 10 | 95 |
| | 108 hr. | 193 hr. |
| | @ 10.00 | @ 10.00 |
| | $ 1080,00 | $ 1930.00 |

31

United States Department of the Interior

OFFICE OF THE SOLICITOR
Pacific Northwest Region
500 N. E. Multnomah Street, Suite 607
Portland, Oregon 97232

FEB 13 1996

CERTIFIED MAIL NO. Z 045 350 142
RETURN RECEIPT REQUESTED

BIA.PN.3016

Mr. A. Dean Oswalt
541 Chausse Road
Granger, Washington 98932

Re: Your Claim for Damages

Dear Mr. Oswalt:

On March 22, 1995, I received a copy of the above mentioned claim for $205,754.77 in property damage. I have received the underlying administrative records prepared pursuant to the applicable regulations. The agency has asked me to render an administrative determination. The claim is against the United States and will be considered under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. The Act provides generally that the United States may be liable for property damage or personal injury when the negligent act or omission of a Federal employee acting within the scope of employment is the cause of the damage or injury. Liability is determined in accordance with the law of the place where the act or omission occurred and the United States is treated as if it were a private person subject to the law of the place.

The administrative record reveals that you allege that because you did not receive your allocable share of water from the Wapato Irrigation Project (WIP), fields of corn and peppermint were stressed and the 1994 summer harvests were substantially reduced from your annual average production. My review of the administrative record discloses that your crop loss was not caused through negligence on the part of a Federal employee.

As early as January, 1994, local newspapers were predicting a water shortage year because of low snowpack and anticipated below average spring rainfall. During the irrigation season, WIP personnel, in an effort to meet the users' water demands, requested that the Bureau of Reclamation reduce water flow to the minimum required by law to fish ladders. BOR did so and the

32

directed water was placed into the delivery system. In addition, water was pumped from ponds and groundwater was pumped from wells and diverted into the delivery system. WIP initiated a five-day on, five-day off rotation of water supply for the Satus 2 and Satus 3 canals, ensuring that water users at the end of the laterals and canals received water. Project deliveries were metered to ensure that no area received more than its scheduled amount of water. All of these efforts to meet a water shortage condition were reasonable management practices. Because negligence on the part of one or more Federal employees is a prerequisite to an award under the Federal Tort Claims Act, I must deny your claim for damages.

If you are dissatisfied with this determination you have the right to file suit in an appropriate United States district court within six months of the date of mailing of this determination or to request a reconsideration by this office within the same time period. A timely request for reconsideration will extend the time in which you have to file suit in United States district court.

Sincerely,

For the Regional Solicitor

Richard A. De Clerck

Richard A. De Clerck
Attorney
Pacific Northwest Region

cc: Safety Officer, PAO, BIA
Administrative Officer, WIP