# EXHIBIT B

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008
EXPIRES 4-30-88

1. Submit To Appropriate Federal Agency:

WAPATO IRRIGATION DISTRICT

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*

CRAIG OSWALT
340 SR 223
Toppenish, WA 98948

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M.)* |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | | Married | 1994 Farming Season | N/A |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)*

See Attachment 1 to Claim for Damage.

## PROPERTY DAMAGE

9.

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

See Attachment 1 to Claim for Damage.

## PERSONAL INJURY/WRONGFUL DEATH

10.

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

N/A

## WITNESSES

11.

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| See Attachment 1 to Claim for Damage. | |

## AMOUNT OF CLAIM *(in dollars)*

12. *(See instructions on reverse)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| $76,745.18 | N/A | N/A | $76,745.18 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Craig Oswalt | (509) 854-1910 | 1-30-95 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)*

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes. If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. ☐ No

No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

No

17. If deductible, state amount

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes. If yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* ☐ No

N/A

36

## ATTACHMENT ONE TO CLAIM FOR DAMAGE

CLAIMANT: **CRAIG OSWALT** paragraph 8 basis of claim

The Wapato Irrigation District did not provide my allocable share of water in a timely or orderly manner resulting in crop damage as hereinafter set forth. During an approximately forty five (45) day period from June 10 to July 25, 1994, little or no water was provided even though farmers above us received their allocable share of water and my water as well.

Our area received snow fall in late March 1994 which provided excellent moisture for planting and germination of the crops. The stands of corn were the best that we had experienced in the last four or five years. Irrigation water must be applied in June for the growing of the crop. We were able to irrigate prior to June 10 on these fields that required it. However, commencing June 10, 1994, with increased demand because of the arrival of the summer volume of heat, the water in the ditch was insufficient to enable me to draw water to irrigate my fields. Without water, the ears of corn could not develop. Even though water was available after July 25, 1994, the water was too late to benefit to crop.

We had repeatedly requested assistance from the District including the installation of the pumps to supplement water. The District reported they were unable to locate pumps. We located pumps for them in Yakima, Washington, with the N.C. Company and the District was able to rent those pumps, one of which was installed at the Marion Drain (discussed later).

Crop losses and damages are as follows:

1. Silage Corn 25 Acres: (Allotment No. 848) The typical yields for silage corn range from 28 to 35 tons per acre, as supported by November 15, 1994, letter of David B. Trautman, Field Consultant for Simplot Soil Builders, who was familiar with my farm and farms in the surrounding area. An average yield for my farm is thirty (30) tons per acre. My crop was sold to ________________ Dairy at $25.00 per ton delivered to the Dairy. I hired the chopping and hauling at $6.00 per ton and I have indicated expenses saved on the schedule of losses set forth herein. My losses are determined as follows:

| | |
|---|---|
| Average Yield 25 acres @ 30 tons per acre | 750 tons |
| Actual yield (see Peterson Farms Invoice | 479.25 tons |
| Net Loss (in tons) | 270.75 |
| Gross Loss (in dollars) 270.75 tons @ $25.00 per ton | $ 6,768.75 |

| | |
|---|---|
| Expenses saved: chopping and hauling<br>270.75 tons @ $6.00 ton | (1,624.50) |
| Net Loss: | $ 5,144.25 |

2. Grain Corn 236.6 Acres: I raised grain corn on the following allotments or parcels:

| | |
|---|---|
| Allotment 848 | 1.6 acres |
| Allotment 848 and 596 | 48 acres |
| Allotment 2303 and T2303 | 59 acres |
| Allotment T1011 | 49 acres |
| Allotment 3704 and 3705 | 45 acres |
| Allotment 766 | 34 acres |
| | 236.6 acres |

The average yield for these fields is 5.5 tons per acre, as supported by my November 14, 1994, letter of David B. Trautman, Field Consultant for Simplot Soil Builders, who was familiar with my farm and farms in the surrounding area. Other fields in the surrounding area had yields of approximately the same as prior years. My prior experience with this same field was a yield of 5.5 tons per acre. The moisture which we received in the spring 1994 gave the crop an excellent start and yields were expected to be at least the average of 5.5 tons per acre. I would have performed all of the harvesting work and therefor no costs were saved by the reduction in yield. My loss for grain corn was $61,625.46, summarized as follows:

| | |
|---|---|
| Average yield 236.6 acres @ 5.5 tons per acre | 1,301 tons |
| Actual yield (weight slips are available) | 645.41 tons |
| Net Loss in tons | 655.59 tons |
| Gross Loss 655.59 tons @ $94.00<br>(see Bleyhl Contract and R & R<br>Contract for price) | $ 61,625.46 |
| Expenses saved | none |
| Net Loss | $ 61,625.46 |

3. Peppermint 30 Acres (Allotment 766): The lack of water severely stressed the peppermint plants resulting in extreme production loss. These losses are supported by November 15, 1994, letter of David B. Trautman, Field Consultant for Simplot Soil Builders, and letter of Rich Schneider, Manager of A.M. Todd Company, the buyer of our mint. The

average yield for my field has been 100 pounds of mint oil per acre. The 1994 actual yield was only 1,926.8 pounds. I had a contract at $10.50 per pound for 3,000 pounds. Accordingly my lost gross income was $10.50 per pound for 1,063.2 pounds which would have fulfilled my contract. My distilling costs are $3.00 per pound. Accordingly, my loss for damage to peppermint for 1994 is $7,936.79 determined as follows:

| | | |
|---|---|---|
| Average yield 30 acres 100 pounds | | 3,000 pounds |
| LESS: Actual yield | | 1,936.8 pounds |
| Net loss in pounds | | 1,063.2 pounds |
| Total gross loss in dollars 1,063.2 pounds @ contract price of $10.50 per pound | | $ 11,163.60 |
| Expenses saved: @ $3.00 per pound | (1) distilling 1,063.2 pounds @ 3.00 | ($ 3,189.60) |
| | (2) fee to mint commission $.035 x 1,063.2 pounds | ($ 37.21) |
| Net loss: | | $ 7,936.79 |

4. Labor:

4.1 Installation of Pumps: During June and July the water in the ditch was insufficient to reach the delivery point for my fields. It was necessary the District brought in a pump to be located at the Marion Drain at Allotment 794. The pump was delivered but not installed for a period of three days, at that time we asked the District if it would be acceptable if we installed the pump because there was not water in the ditch. We were authorized and we did install the pump. However, that pump was not sufficient to pump water from the drain into the ditch so additional pumps were added. Initially the Curfman pump was installed. When Mr. Curfman required use of his pump, the Rasumssen pump was installed. In addition alongside those pumps the JD-PTO pump was installed (the tractor was owned by me, and the pump was borrowed from a neighbor). The MD-PTO and was installed at a different location, the Stevens drain and Connie Road which is a large drain. This was also necessary to deliver to the delivery point for Craig Oswalt (Allotment 596).

4.2 Attached is a schedule of hours showing how many hours that I spent, and that Dean Oswalt spent in the set up and repair of pumps and in the fueling of pumps. I spent a total of 108 hours and $10.00 per hour is a reasonable compensation for my time.

5. Interest Cost: Because of the crop loss I have been unable to pay indebtedness which I incurred in connection with my 1994 crop. The indebtedness is in the amount of $18,000.00 and the average interest rate has been 12% per annum. I would have been on August 22, 1994, and therefore I have incurred interest charges from that date until the date paid which would have been avoided if the crop had not been damaged. My expense through January 31 is $958.68 together with interest at $5.92 per day after January 31, 1995.

6. Summary of Damages:

| | | |
|---|---|---|
| Silage corn | $ | 5,144.25 |
| Grain corn | $ | 61,625.46 |
| Peppermint | $ | 7,936.79 |
| Craig Oswalt labor | $ | 1,080.00 |
| Interest | $ | 958.68 |
| TOTAL: | $ | 76,745.18 |

11. Witnesses:

| | |
|---|---|
| Kirk Oswalt | 630 Connie Road, Toppenish, WA 98948 |
| Dean Oswalt | 451 Chausse Road, Granger, WA 98932 |
| Craig Oswalt | 340 SR 23, Toppenish, WA 98948 |
| A. C. Oberly | Toppenish, WA 98948 |
| Tyrone Pierre | ______Fort Road, White Swan, WA 98952 |
| Dana Antelope | ______________________ Wapato, WA 98951 |
| Harry Cartmell | ______Wapenish Road, Wapato, WA 98951 |
| Ernie Clark | ______________________ Wapato, WA 98951 |
| Dale Miller | (I.P. Callison Mint) _____ Yakima Valley Hwy. Sunnyside, WA 98944 |

| | |
|---|---|
| Scott Oswalt | (Simplot Soil Builders) 1st & Zillah Ave., Sunnyside, WA 98944 |
| David B. Trautman | (Simplot Soil Builders) 1st & Zillah Ave., Sunnyside, WA 98944 |
| Troy Curfman | (neighbor) 1621 Hwy 223, Granger, WA 98932 |
| Ted Escobar | (Reporter for Toppenish Review Newspaper) 11 E. Toppenish Ave., Toppenish, WA 98948 |
| Ed Beitenbos | (former ditch rider)_____________, Granger, WA ______ |
| Rich Schneider | (AM Todd)E. Edison & Yakima Valley Hwy., Sunnyside, WA 98944 |

J. R. SIMPLOT COMPANY / P.O. BOX 717 / SUNNYSIDE, WASHINGTON 98944 (509) 837-6261

SOILBUILDERS

Date: November 15, 1994
To: Whom it may concern
From: David B. Trautman
Field Consultant, Simplot Soilbuilders

RE: Craig Oswalt-1994 Crop yields reduced to no water or not enough water when needed in critical stages of plant growth.

The growing season of 1994 was very notable for reduced yields on many crops that were stressed in very critical times of plant development due to having no water or little water at all. Fresh sweet corn yields were down by at least 6-8 tons per acre and some sweet corn was bypassed completely due to insufficient ear growth and was chopped for silage due to its lack of water at this stage of growth. Silage corn, which normally yields 28-35 ton per acre, was down to 15-18 ton. Field corn, normally yields 5-7 ton per acre, was down to 1 1/2-2 1/2 ton. Peppermint plants were pinched and very dry, which can set oil production at very low levels and can set that plant back 4-6 months in it's oil producing capabilities. These crops need consistent, available water to produce a crop that is marketable for the farmer/grower. Between the dates of June 10, 1994 and July 24, 1994, there was no water at all, which I feel depleted the yields on these crops very significantly. During the above mentioned dates the temperatures were consistently in the high 90's- low 100 degree range, which with no water to irrigate with, I myself am very surprised that they still had a crop to harvest. Another thing that I noticed was when the grower did get water after July 24, 1994, there were many times that there was not enough water to even fill the head ditch and they had to use pumps just to get water to their crops. On the rotation that was set forth to the grower, they never did get sufficient water to irrigate correctly, only enough to get the crops a quick drink in order to get across the acres before their rotation was done, which at times could not be done. There needs to be some improvements made very soon for the 1995 growing season is approaching fast.

Sincerely,
David B. Trautman
David B. Trautman

42

Orig

11 Sep 94 1105

CRAIG OSWALT

Due on recpt 91-0900085

| | | | |
|---|---|---|---|
| 479.25 | TON CORN CHOPPED AND HAULED | 6.00 | 2,875.5( |

Petersen Farms
1770 Van Belle Road
Outlook Washington 98938
509 837 5440

43

2,875.!

BALANCE DUE: 2,875.

Original

CRAIG OSWALT TO GOLOB DAIRY

| | TRUCK 50 | TRUCK 60 | TRUCK 70 | TRUCK 1 | TRUCK 2 |
|---|---|---|---|---|---|
| 06-Sep-94 | 23025 | 24820 | 20400 | 24035 | 26140 |
| | 22380 | 24910 | 23430 | 23930 | 26595 |
| | 26390 | 26400 | 23215 | 26935 | 25615 |
| | 26325 | 26515 | 24425 | 25540 | 28520 |
| | 24755 | 27085 | 26610 | 25695 | 24110 |
| | 24125 | 26240 | 21855 | 27590 | 26745 |
| | 22655 | 26240 | 25100 | 23320 | 23970 |
| | 12505 | 22220 | 24775 | | 23365 |
| | 182160 | 204430 | 189810 | 177045 | 205060 |
| TOTAL POUNDS | | 958505 | | 88.5225 | 102.53 |
| TOTAL TONS | | 479.2525 | | | |

9:37:50 23 NOV 1994

SETTLEMENT REPORT
RR WAREHOUSE COMPANY - TOPPENISH
201 EAST FIRST AVENUE
RITZVILLE, WA. 99169
509-659-0130



VOUCHER 20603
CONTRACT 3439 11-22-94
DATE 11-22-94
CUSTOMER 1190 CRAIG OSWALT

STORAGE START 12-22-94

| GRAIN TYPE | LOT # | GRADE | DOCK. | TEST | GROSS WEIGHT | DOCK. | NET WEIGHT | NET BUSH/TON | PRICE | DRYING COST | NET PRICE | TOTAL AMOUNT | NO. DAYS | STORAGE COST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COR | CT9440 | | 0.000 | 0.0 | 87,468 | 0 | 87,468 | 43.7340 | 96.8600 | 3.7360 | 93.1240 | 4,072.68 | -30 | 0.00 |
| | | | | | 87,468 | | 87,468 | 43.7340 | | | | | | |

TOTAL GROSS 4,072.68

PREPAID 0.00

INSURED STORAGE 0.00
HANDLING FEES 124.95

COMMISSION TAX 0.0N

COUNTY C99 YAKIMA

OTHER CHARGES

TOTAL CHARGES 124.95

CHECK AMOUNT 3,947.73

CT9440 163.39

45

| ........ | GROWER NAME.............. | LOT.. | DATE-IN. | STA | SELL.... MOISTURE | TO STORE MOISTURE | WET...... WEIGHT | DOCK # | NET DRY... WEIGHT | DRYING.. COST |
|---|---|---|---|---|---|---|---|---|---|---|
| 5240 | OSWALT, CRAIG | CT9440 | 11-22-94 | T | 15.5 | SE | 30,320 | 657 | 29,663 | 50.03 |
| 5241 | OSWALT, CRAIG | CT9440 | 11-22-94 | T | 15.9 | SE | 32,860 | 903 | 31,957 | 59.97 |
| 5242 | OSWALT, CRAIG | CT9440 | 11-22-94 | T | 16.3 | SE | 19,760 | 659 | 19,101 | 39.52 |
| 5243 | OSWALT, CRAIG | CT9440 | 11-22-94 | T | 16.4 | SE | 6,980 | 233 | 6,747 | 13.96 |
| ** | | | | | | | 89,920 | 2,452 | 87,468 | 163.48 |

ITEMS LISTED.

46

A.M. TODD COMPANY

Wapato Irrigation Project
South Camas Ave
Wapato, WA 98951

November 18, 1994

TO WHOM IT MAY CONCERN:

This letter is being written concerning the lack of irrigation water delivery to Dean Oswalt and Craig Oswalt from Lateral 4 during the 1994 crop season.

Dean and Craig had indicted to me, that from the period June 10, to July 24, 1994, their delivery of water was minimal to non exitant. I myself witnessed the canal so low as to make water deliver from it impossible.

The peppermint fields raised by Dean and Craig Oswalt showed water stess throughout most of the growing season. Areas of the fields were so very dry that peppermint plants were actually drying up and dying due to water stress. In my opinion, this stress caused a reduction in their peppermint yield.

The 1994 peppermint crop per acre average yield was 89 lbs. per acre. The 5 year per acre average yield is 91 lbs. per acre. The stress, experienced by the Oswalt's peppermint crop, made it nearly impossible to attain these averages.

Sincerely,

Rich Schneider

Rich Schneider, Manager
A.M. Todd Company

47

P.O. Box 411, Sunnyside, Washington 98944
Tel: 509 837 5085 Fax: 509 837 8633

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVE
OMB NO.
1105-0008
EXPIRES 4-30-8

1. Submit To Appropriate Federal Agency:

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M.)* |
|---|---|---|---|---|
| | | | | |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)*

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instruction on reverse side.)*

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

11. WITNESSES

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| | |

12. *(See instructions on reverse)* AMOUNT OF CLAIM *(in dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| | | | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| | | |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)*

48

United States Department of the Interior

OFFICE OF THE SOLICITOR
Pacific Northwest Region
500 N. E. Multnomah Street, Suite 607
Portland, Oregon 97232

FEB 15 1996

CERTIFIED MAIL NO. Z 045 350 144
RETURN RECEIPT REQUESTED

BIA.PN.3015

Mr. Craig Oswalt
340 SR 223
Toppenish, Washington 98948

Re: Your Claim for Damages

Dear Mr. Oswalt:

On March 22, 1995, I received a copy of the above mentioned claim for $76,745.18 in property damage. I have received the underlying administrative records prepared pursuant to the applicable regulations. The agency has asked me to render an administrative determination. The claim is against the United States and will be considered under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. The Act provides generally that the United States may be liable for property damage or personal injury when the negligent act or omission of a Federal employee acting within the scope of employment is the cause of the damage or injury. Liability is determined in accordance with the law of the place where the act or omission occurred and the United States is treated as if it were a private person subject to the law of the place.

The administrative record reveals that you allege that because you did not receive your allocable share of water from the Wapato Irrigation Project (WIP), fields of corn and peppermint were stressed and the 1994 summer harvests were substantially reduced from your annual average production. My review of the administrative record discloses that your crop loss was not caused through negligence on the part of a Federal employee.

As early as January, 1994, local newspapers were predicting a water shortage year because of low snowpack and anticipated below average spring rainfall. During the irrigation season, WIP personnel, in an effort to meet the users' water demands, requested that the Bureau of Reclamation reduce water flow to the minimum required by law to fish ladders. BOR did so and the

directed water was placed into the delivery system. In addition, water was pumped from ponds and groundwater was pumped from wells and diverted into the delivery system. WIP initiated a five-day on, five-day off rotation of water supply for the Satus 2 and Satus 3 canals, ensuring that water users at the end of the laterals and canals received water. Project deliveries were metered to ensure that no area received more than its scheduled amount of water. All of these efforts to meet a water shortage condition were reasonable management practices. Because negligence on the part of one or more Federal employees is a prerequisite to an award under the Federal Tort Claims Act, I must deny your claim for damages.

If you are dissatisfied with this determination you have the right to file suit in an appropriate United States district court within six months of the date of mailing of this determination or to request a reconsideration by this office within the same time period. A timely request for reconsideration will extend the time in which you have to file suit in United States district court.

Sincerely,

For the Regional Solicitor

Richard A. De Clerck
Attorney
Pacific Northwest Region

cc: Safety Officer, PAO, BIA
Administrative Officer, WIP