MARASCIULO, J

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A. DEAN OSWALT ET AL., Plaintiffs, v. UNITED STATES, Defendant | ) ) ) ) ) ) ) | No. 97-733C (Judge Futey) |

RECEIVED
DEC 2 1998
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

DEFENDANT'S STATEMENT OF GENUINE ISSUES

Pursuant to Rule 56(d), the Government provides the following statement of genuine issues:

4. Defendant disputes both the relevance and the accuracy of the facts alleged in paragraph four. The number of acres of crops is not relevant to any issue of contract interpretation or breach, and plaintiffs failed to provide documentation to support the factual allegations regarding the number of acres of crops. In addition, this statement is premature because there has been no discovery on this issue.

7. Defendant agrees that plaintiffs were obligated to pay annual Operation and Maintenance (O&M) assessments prior to receiving irrigation water. However, defendant disputes plaintiffs' allegation that they either paid the O&M assessments or made satisfactory arrangements to pay them. Plaintiffs admitted that they did not pay the O&M assessments in a timely fashion, prior to the beginning of the 1994 irrigation season. Requests for Admission, App. at 1-4, Domondon Affidavit, App. at 5-6, Howerton Declaration, ¶ 7, S. App. at 4 . Moreover, the record indicates that the Oswalts did not make satisfactory arrangements to pay these assessments because they did not sign any promissory notes during the 1994 irrigation. Howerton Dec. ¶ 8, S. App. at 4.

8. Defendant disputes the relevance of the facts alleged in paragraph 8 of plaintiffs' proposed findings of uncontroverted fact.

9. Defendant disputes the relevance of the facts alleged in paragraph 9 of plaintiffs' proposed findings of uncontroverted fact.

11. Defendant disputes the relevance of the facts alleged in paragraph 11 of plaintiffs' proposed findings of uncontroverted fact.

14. Defendant disputes the relevance of the facts alleged in paragraph 14 of plaintiffs' proposed findings of uncontroverted fact.

19. Defendant disputes the facts set forth in paragraph 19 of plaintiffs' proposed findings of fact. The record demonstrates that plaintiffs were not entitled to irrigation water because they had not paid their O&M assessments, nor made satisfactory payment arrangements. Howerton Dec., S. App. at 3-4. Moreover, WIP went to great effort to provide irrigation water but were unable to do so due to the 1994 drought. Cartmell Dec. ¶¶ 3-5, S. App. at 39-40; Cartmell Affidavit ¶¶ 4-6, App. at 200-201; Oberly Affidavit, ¶¶ 6-8, 11, App. at 177-80, supplemental Oberly Affidavit, ¶¶ 6-8, App. at 192-93. In addition, there is no evidence that the water shortage during the period of June 10, 1994 through July 24, 1994 was the sole cause of plaintiffs' crop loss.

22. Plaintiffs dispute the facts alleged in paragraph 22. The water shortage was caused by a calculation error made by WIP, but was caused by the drought. Cartmell Dec. ¶5, S. App. at 39-40, Cartmell Affidavit ¶¶ 5-6, App. at 201-202; Oberly Affidavit ¶ 9, App. at 178. Moreover, Mr. Cartmell did not advise Mr. Oswalt that a calculation error occurred and does not recall such an error. Cartmell Dec. ¶ 5, S. App. at 39-40. Similarly, Mr. Anteloupe lacked

knowledge regarding the calculations of water available. Cartmell Dec. ¶ 7, S. App. at 40.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

SHARON Y. EUBANKS
Deputy Director

JANENE M. MARASCIULLO
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street
Washington, D.C. 20530
(202) 307-0290
Attorneys for Defendant

December 2, 1998

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 2nd day of December 1998, I caused to be placed in the United States mail (first class mail, postage prepaid) copies of "DEFENDANT'S STATEMENT OF GENUINE ISSUES " addressed as follows:

J. Jay Caroll
Velikanje, Moore & Shore, Inc., P.C.
405 East Lincoln Avenue
PO Box C2550
Yakima, Washington 98907

Phyllis R. Marsh

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A. DEAN OSWALT ET AL., Plaintiffs, | ) | |
| v. | ) | No. 97-733C (Judge Futey) |
| UNITED STATES, Defendant | ) | |

DECLARATION OF HARRY CARTMELL

1. My name is Harry Cartmell. I am over 18 years of age and have personal knowledge of the facts set forth in this declaration.

2. I began working for Wapato Irrigation Project ("WIP") in 1977. I retired from WIP in 1991. However, in June 1994, Acey Oberly, who was then the Project Administrator for WIP, asked me to assist the WIP during the 1994 drought. Since September 1995, I have been employed as the Irrigation Systems Manager at WIP.

3. In June 1994, I was hired to assist the Irrigation Systems Manager in supervising the WIP watermasters and in distributing the little water allocated to the WIP during the drought. As explained in my affidavits dated June 27, 1997 and June 30, 1997, distributing water during the drought was a very difficult task because of the drought.

4. It was especially difficult to provide water to the Oswalts because the land they farm is located in the lower Wapato and Satus units. Indeed, as explained in my June 27, 1997 affidavit, the drought made it impossible to deliver sufficient quantities of water to the lower Wapato and Satus units.

5. The Oswalts' contention that they did not receive water from June 10, 1994 to July 24, 1994 because WIP made an error calculating the water available is not true. I am not aware

of any calculation error that prevented the delivery of water. Instead, the drought made it impossible to deliver sufficient water.

6. I did not advise Dean Oswalt that WIP made an error regarding the amount of water available. Nor did I advise Dean Oswalt that an error caused the water shortage.

7. Dana Anteloupe, the other individual who may have allegedly advised Mr. Oswalt that a calculation error was made, was not in a position to be familiar with the calculations of available water. Mr. Anteloupe was employed as a "ditchrider" during the 1994 irrigation season, and his responsibilities were limited to delivering water. He was not involved in the decisions regarding the allocation of water.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30 day of November, 1998.

Harry S Cartmell

Harry Cartmell

JAMES P. CONNELLY
United States Attorney
BRUCE E. DIDESCH
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| A. DEAN OSWALT et. al., Plaintiffs, v. UNITED STATES OF AMERICA Defendant. | NO. CY-96-3133-LRS (handwritten correction: 97) AFFIDAVIT OF ACEY OBERLY, JR. |

ACEY OBERLY, JR., being first duly sworn on oath, deposes and states:

1. I am a Program Analyst for the Bureau of Indian Affairs, (BIA), Yakima Agency. I have held this position since 1988, except for the period from December 1992 to September 1994 when I was the Project Administrator for the Wapato Irrigation Project (WIP).

2. The Yakama Reservation was experiencing one of the worst droughts on record during the 1994 growing season, which placed a severe burden on our ability to deliver a sufficient supply of water to all of the farmlands within the project. The farmlands within the lower Wapato and Satus Units were especially difficult because they lie at the end of the Project and rely primarily on return flow.

3. On May 18, 1994 the U.S. Bureau of Reclamation notified all Yakima Reservation Irrigation District managers that each

District would receive 35% of proratable storage water entitlements for the 1994 season. See attached U.S. Bureau of Reclamation news release dated May 24, 1994, exhibit A.

4. As a result of this notification, BIA Project personnel (including the Project Administrator, the Supervisory Civil Engineer, the Irrigation System Manager and the watermasters) met to develop a diversion plan for the season. After considering the growing season, historic demand, current demand, and consultation with the Yakima Reservation Irrigation District Board of Directors, the attached plan dated June 1, 1994, exhibit B, was adopted and the Wapato Irrigation Project notified the Bureau of Reclamation of the plan.

5. At this time the Project also adopted delivery schedules for each of the units of the Project, exhibit C. These delivery schedules were given to all ditchriders as a guideline for setting each of the delivery turnouts based on the number of acres of "A" and "B" land served from that turnout. The Project also adopted a water distribution plan to ensure an equitable distribution of the available water to each major lateral and subdivision of the Project.

6. On June 8, 1994 the District Managers were notified by the U.S. Bureau of Reclamation that the water supply conditions had deteriorated somewhat and only 34% of proratable entitlements would be available to each district, exhibit D. Adjustments were them made to the diversion and distribution schedules to reflect this change. On July 8, 1994 U.S. Bureau of Reclamation announced that conditions had improved somewhat and that 39% of

proratable entitlements would be available to the Districts, exhibit E.

7. After the July 8 Reclamation announcement, the BIA Wapato Irrigation Project made a significant revision of the diversion schedule and the distribution plan. Diversions were increased from 1150 cfs to 1300 cfs for approximately 30 days (to be returned to the original schedule) in order to try and meet increased crop water demands and decreased canal distribution efficiency caused by warmer than normal temperatures this summer.

8. Given WIP's reduced water entitlement for that year, allocating water throughout the Project was a monumental task that required decisions to be made on where, when, how long and how much water was to be delivered to the various Project laterals.

9. Because of substantially reduced return flows, transmission losses and less natural recharge from the water table due to a series of years of drought, it was especially difficult to get water to the lands at the lower end of the Wapato and Satus Units.

10. I instituted a number of measures to deliver water to those lands.

I hired Harry Cartmell out of retirement in June 1994 because of his knowledge of the system operation.

We developed a plan for delivery for the summer based on a projected allocation of 35% of proratable storage water entitlements.

In consultation with Bureau personnel and the W.I.P. Project Engineer, we determined it was necessary to allocate some of the water for later in the irrigation season, when water was especially critical for crops, to avoid even greater crop losses than we anticipated.

I authorized farmers to pump water from drains in addition to receiving delivery from the laterals, if no delivery was required below the point of withdrawal.

I established a rotation system.

I allowed water transfers between parcels, provided the farmers received approval from WIP, BIA Realty and the landowners.

WIP worked with the Bureau of Reclamation to reactivate a series of wells within Wapato and the Satus Units to provide emergency water, as well as to authorize use of WIP equipment to pump ponds, sloughs, gravel pits and any other available water source.

I requested the Yakama Council to authorize the emergency pumping and use of the Tribe's groundwater for irrigation.

11. Since the system is only metered at the head of the New Reservation Canal on the Yakima River and the main laterals, the delivery of water to a particular field under drought conditions is an inexact process. The ditchriders were directed to deliver water on a prorata basis, and the decision making with regard to the amount distributed to any particular lateral at a given time was coordinated from my office down to the ditchriders in consultation with the Bureau of Reclamation. Allocating the

water and ensuring its distribution throughout the system entailed a series of decisions by me and my staff, beginning in January, 1994 when the first supply forecasts were provided, to October, 1994, when the system was shut down for the season. See the Diversion and Distribution Plans for 1994 attached as exhibits B, C & F.

12. A number of disgruntled farmers filed an action in the Acquavella case, which was pending in the Superior Court, challenging WIP's actions in responding to the drought. I prepared an affidavit at that time, which was filed by Mr. Charles E. O'Connell, an attorney from the Indian Resources Section of the Environment and Natural Resources Division of the Department Of Justice. A copy of the affidavit is attached as Exhibit G and incorporated herein.

DATED this 27th day of June, 1997.

ACEY OBERLY, JR.

SUBSCRIBED AND SWORN TO this 27th day of June, 1997.

DEBRA M. JOHNSON
COMMISSION EXPIRES
NOTARY PUBLIC
JUNE 22, 1999
STATE OF WASHINGTON

Notary Public in and for the State of Washington, residing at Toppenish.

UNITED STATES

# DEPARTMENT of the INTERIOR

★★★★★★★★★★★★★★★★★★★★ news release

FOR IMMEDIATE RELEASE

BUREAU OF RECLAMATION
YAKIMA FIELD OFFICE

For further information
Brian Person BLP
509-575-5848
May 24, 1994

Continuing analysis of the Total Water Supply Available (TWSA) indicates that the proration level must be reduced to assure that Non-Proratable districts' entitlements, including "heretofore recognized" water rights, can be satisfied through September 30, 1994. The level of proration necessary to meet contractual obligations for the remainder of the season is 35% of proratable entitlement. This level of rationing will apply to each districts' proratable water supply in proportion by volume to their proratable entitlements in acre-feet from May 1 through September 30.

This process of prorationing will give each district the flexibility to develop a diversion schedule that will least impact their particular users' or users' crop water needs. Some districts may choose to apply the proration equally to the entire irrigation period, whereas others may opt for a less restrictive supply during certain periods, coupled with early shutoff. In any case, a district's proratable diversions must not exceed 35% of their May 1 to September 30 proratable entitlement, nor may any district exceed entitlement level of diversion in any given period or in total.

Several factors contributed to a decline in the level of proration. April through mid-May pan evaporation levels for Yakima have been well above average. The main snowpack runoff appears to be over. Rainfall for May to date is running below average, continuing the low precipitation levels experienced so far this water year.

Operations for the remainder of the season will be very dependent upon future weather conditions, districts' decisions regarding use of their remaining water supplies and the timing of some districts' shutoffs. The Yakima Field Office will continue to analyze the supply and demand situation and further revise the proration against May 1 to September 30 proratable entitlements as necessary.

16N

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Wapato Irrigation Project
P.O. Box 220
Wapato, Washington, 98951

June 1, 1994

Brian Person, Yakima Project Manager
United States Bureau of Reclamation
Yakima Project Office
1917 Marsh Road
Yakima WA, 98901

Dear Mr. Person:

The following table outlines the Wapato Irrigation Project diversion plan for the 1994 Irrigation Season.

| DATE | DAYS | TOTAL CFS | STORAGE CFS | STORAGE BALANCE ACRE FT |
|---|---|---|---|---|
| | | | | 111,475 |
| 01/May | 7 | 1,200 | 480 | 104,811 |
| 08/May | 16 | 1,450 | 730 | 81,645 |
| 24/May | 13 | 1,300 | 580 | 66,690 |
| 06/Jun | 71 | 1,150 | 430 | 6,137 |
| 16/Aug | 13 | 950 | 230 | 206 |
| 29/Aug | 63 | 720 | 0 | 206 |
| 31/Oct | | OFF | | |

This schedule reflects the 35% proration of reservoir storage allocations as determined by your May 24 TWSA forecast. This schedule may be modified if operating conditions change during the season. In that event WIP will provide you with advanced notice of any changes in this schedule.

Sincerely,

Acey Oberly, Jr.
Wapato Irrigation Project Administrator

182

UNITED STATES GOVERNMENT
# memorandum

DATE: May 23, 1991

REPLY TO ATTN OF: Irrigation Program Specialist

SUBJECT: Water Distribution for various units on WIP

TO: Supervisory Irrigation System Operator, Watermasters

Attached is a chart for distribution of water based on the number of acres and the unit that the lands are located in. The information is based on the following:

1) Wapato Unit - Includes gravity distribution system below the Bench and the non-pump areas of the Satus Unit.

   DISTRIBUTION - 1 CFS per 40 acres

2) Bench Area - All lands on the bench area including Unit 1 pump, Unit 2 and Island Pump Canals; and the Main Canal Extension.

   DISTRIBUTION - 1 CFS per 65 acres

3) Satus Unit Pump lands in Satus 2 and Satus 3.

   DISTRIBUTION - 1 CFS per 55 acres

Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan

OPTIONAL FORM NO. 10
(REV. 7-76)
GSA FPMR (41 CFR) 101-11.6
5010-112

WAPATO IRRIGATION PROJECT RETURN FLOW DISTRIBUTION SCHEDULE

EFFECTIVE DATE: June 6, 1994 Update

| | | | | |
|---|---|---|---|---|
| | | efficiency factor | 71.00% | |
| | | | "A" | "B" |
| GROSS DISTRIB RATES @ | 35% | PRORATION | 58% | 25% |
| | | | (NOT DELIVERY RATES) | |
| TOTAL RIVER DIVERSIONS | 1150 | CFS | | |
| OLD RESERVATION CANAL | 50 | CFS | | |
| ADDED SPILLS: | | | | |
| DRAIN 1 | 4 | CFS | | |
| DRAIN 2 | 30 | CFS | | |
| | ======= | | | |
| AVAILABLE AT TRACK LATRL | 84 | CFS | | |

| | ACRES | EQUIVLNT ACRES | REQUIRED DIVERSION | |
|---|---|---|---|---|
| | ===== | ======== | ======= | |
| TRACK LATERAL | 7887 | 7887 | 82 | CFS |
| ADDED SPILLS: | | | | |
| DRAIN 3 | 35 | CFS | | |
| G&M PUMP | 2 | CFS | | |
| | ======= | | | |
| AVAILABLE AT SPENCER LAT | 39 | CFS | | |

| | ACRES | EQUIVLNT ACRES | REQUIRED DIVERSION | |
|---|---|---|---|---|
| | ===== | ======== | ======= | |
| SPENCER LATERAL | 2109 | 2109 | 22 | CFS |
| ADDED SPILLS: | | | | |
| DRAIN 4 | 0 | CFS | | |
| LATERAL 4 | 40 | CFS | | |
| | ======= | | | |
| AVAILABLE LAT 4 EXTENSION | 57 | CFS | | |

| | ACRES | EQUIVLNT ACRES | REQUIRED DIVERSION | |
|---|---|---|---|---|
| | ===== | ======== | ======= | |
| LATERAL 4 EXTENSION | 5219 | 5219 | 54 | CFS |
| ADDED SPILLS: | | | | |
| MARION DRAIN | 270 | CFS | | |
| WANITY SLOUGH | 0 | CFS | | |
| | ======= | | | |
| AVAILABLE SATUS FEEDER | 273 | CFS | | |

| | ACRES | EQUIVLNT ACRES | REQUIRED DIVERSION | |
|---|---|---|---|---|
| | ===== | ======== | ========= | |
| SATUS EAST LATERAL | 4564 | 4564 | 47 | CFS |
| SATUS WEST LATERAL | 853 | 853 | 9 | CFS |
| SATUS II PUMP CANAL | 6229 | 4530 | 47 | CFS |
| SATUS III PUMP CANAL | 9790 | 7120 | 74 | CFS |
| | | | ========= | |
| | | | 177 | CFS REQUIRED |
| MARION DRAIN FISH LADDER | 20 | CFS | | |
| PASS THRU HARRAH DRAIN | 0 | CFS | | |

184

SA15

WAPATO IRRIGATION PROJECT MAIN CANAL DISTRIBUTION SCHEDULE

EFFECTIVE DATE: June 6, 1994 Update

Includes some Transfers & Adjustments To be made on June 7,

| | | |
|---|---|---|
| TOTAL RIVER DIVERSIONS | 1150 | CFS |
| OLD RESERVATION CANAL | 50 | CFS |
| MAIN CANAL | 1100 | CFS |
| EFFICIENCY ADJUSTED FLOW | 1025 | CFS |
| PASS THROUGH FLOWS: | | |
| DRAIN 2 | 30 | CFS |
| HARRAH DRAIN | 0 | CFS |
| LATERAL 4 | 40 | CFS |
| | ======= | |
| TOTAL FLOW AVAILABLE, MC | 955 | CFS |

eff factr 93.20%

| LATERAL | ACRES | EQUAVALENT ACRES | % TOTAL | PRO RATA (CFS) | MEASURED (CFS) | DATE |
|---|---|---|---|---|---|---|
| ========= | ===== | ======== | ======= | ======= | ========== | ========= |
| M - 45 | 556 | 556 | 0.71% | 7 | | |
| M - 68 | 918 | 918 | 1.17% | 11 | | |
| M - 80 | 543 | 543 | 0.69% | 7 | | |
| M - 119 | 662 | 662 | 0.84% | 8 | | |
| M - 137 | 804 | 804 | 1.02% | 10 | | |
| BEAT 24 | 1032 | 1032 | 1.31% | 13 | | |
| BEAT 21 | 282 | 174 | 0.22% | 2 | | |
| MAIN EXTENSION | 12620 | 7766 | 9.86% | 94 | | |
| UNIT 1 PUMP CANAL | 9672 | 5952 | 7.55% | 72 | | |
| DROP 1 | | | | | | |
| LATERAL 1 | 9432 | 9432 | 11.97% | 114 | | |
| M - 254 | 378 | 378 | 0.48% | 5 | | |
| NEW WILBUR | 2367 | 1456 | 1.85% | 18 | | |
| BEAT 24 | 364 | 364 | 0.46% | 4 | | |
| DROP 2 | | | | | | |
| DRAIN 2 (& LAT 2-278) | 1880 | 1880 | 2.39% | 53 | | |
| LATERAL 2 | 10608 | 10608 | 13.46% | 129 | | |
| M - 457 | 276 | 276 | 0.35% | 3 | | |
| M - 512 | 97 | 60 | 0.08% | 1 | | |
| BEAT 24 | 375 | 375 | 0.48% | 5 | | |
| DROP 3 | | | | | | |
| M - 528 | 308 | 189 | 0.24% | 2 | | |
| LATERAL 3 | 14602 | 14602 | 18.53% | 177 | | |
| HARRAH DRAIN | | | | 0 | | |
| BEAT 24 | 275 | 275 | 0.35% | 3 | | |
| M - 577 | 300 | 300 | 0.38% | 4 | | |
| ISLAND PUMP CANAL | 3180 | 1957 | 2.48% | 24 | | |
| LATERAL 4 | 18226 | 18226 | 23.13% | 261 | | |
| MAIN CANAL TOTALS | 89756 | 78765 | 100.00% | 1025 | | |

UNITED STATES

# DEPARTMENT of the INTERIOR

★★★★★★★★★★★★★★★★★★★★★ news release

FOR IMMEDIATE RELEASE

For further information
Brian Person
509-575-5848
June 8, 1994

BUREAU OF RECLAMATION
YAKIMA FIELD OFFICE

Continuing analysis of the Total Water Supply Available (TWSA) indicates that the proration level must be reduced to assure that Non-Proratable district entitlements, including "heretofore recognized" water rights, can be satisfied through September 30, 1994. The level of proration necessary to meet contractual obligations for the remainder of the season is 34% of proratable entitlement. This level of diversion will apply to each district's proratable entitlements in Acre Feet from May 1 through September 30.

This process of prorationing will give each district the flexibility to develop a diversion schedule that will least impact their particular crop water needs. Some districts may choose to apply the proration equally to the entire irrigation period, whereas others may opt for a less restrictive supply during certain periods, coupled with early shutoff. In any case, a district's proratable diversions must not exceed 34% of it's May 1 to September 30 proratable entitlement, nor may any district exceed entitlement level of diversion in any given month.

Operations for the remainder of the season will be very dependent upon future weather conditions, district decisions regarding use of their remaining water supplies and the timing of some individual district shutoffs. The Yakima Field Office will continue to analyze the supply and demand situation and further revise the proration against May 1 to September 30 proratable entitlements as necessary.

Irrigation districts and water users are urged to phone in requests for changes in water diversion -- a minimum of 48 hours in advance -- to Stephen K. Fanciullo at 509-454-5621.

Storage conditions as of June 1 were as follows:

| RESERVOIR | CONTENT (AF) | TOTAL CAPACITY | PERCENT CAPACITY |
|---|---|---|---|
| Keechelus | 122,910 | 157,800 | 78 |
| Kachess | 99,330 | 239,000 | 42 |
| Cle Elum | 277,540 | 436,900 | 64 |
| Bumping | 29,150 | 33,700 | 86 |
| Rimrock | 126,780 | 198,000 | 64 |
| TOTALS | 655 710 | 1,065,400 | 62 |

Reservoir Content has decreased to 651,898 acre feet as of June 8.

186

# UNITED STATES
# DEPARTMENT of the INTERIOR

★★★★★★★★★★★★★★★★★★★★ news release

FOR IMMEDIATE RELEASE

For further information
Brian Person D.S. for
509-575-5848
July 8, 1994

BUREAU OF RECLAMATION
YAKIMA PROJECT

Continuing analysis of the Total Water Supply Available (TWSA) indicates that the proration level may be increased and still assure that Non-Proratable district entitlements, including "heretofore recognized" water rights, be satisfied through September 30, 1994. The level of Proration necessary to meet contractual obligations for the remainder of the season is 39% of proratable entitlement. This level of diversion will apply to each district's proratable entitlements in Acre Feet from May 1 through September 30.

This process of prorationing will give each district the flexibility to develop a diversion schedule that will least impact their particular crop water needs. Some districts may choose to apply the proration equally to the entire irrigation period, whereas other may opt for a less restrictive supply during certain periods, coupled with early shutoff. In any case, a district's proratable diversions must not exceed 39% of it's May 1 to September 30 proratable entitlement, nor may any district exceed entitlement level of diversion in any given month.

Operations for the remainder of the season will be very dependent upon future weather conditions, district decisions regarding use of their remaining water supplies and the timing of some individual district shutoffs. The Yakima Field Office will continue to analyze the supply and demand situation and further revise the proration against May 1 to September 30 proratable entitlements as necessary.

Irrigation districts and water users are urged to phone in requests for changes in water diversion -- a minimum of 48 hours in advance -- to Stephen K. Fanciullo at 509-454-5621.

Storage conditions as of July 1 were as follows:

| RESERVOIR | CONTENT | TOTAL CAPACITY | PERCENT CAPACITY |
|---|---|---|---|
| Keechelus | 126,270 | 157,800 | 80 |
| Kachess | 78,160 | 239,000 | 33 |
| Cle Elum | 240,170 | 436,900 | 55 |
| Bumping | 28,100 | 33,700 | 83 |
| Rimrock | 140,050 | 198,000 | 71 |
| TOTALS | 612,750 | 1,065,400 | 58 |

Reservoir Content has decreased to 584,282 acre feet as of July 8.

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Wapato Irrigation Project
P.O. Box 220
Wapato, Washington, 98951

July 12, 1994

Brian Person, Yakima Project Manager
United States Bureau of Reclamation
Yakima Project Office
1917 Marsh Road
Yakima WA, 98901

Dear Mr. Person:

The following table outlines the Wapato Irrigation Project revised diversion plan for the 1994 Irrigation Season.

| DATE | DAYS | TOTAL CFS | STORAGE CFS | STORAGE BALANCE ACRE FT |
|---|---|---|---|---|
| | | | | 124,215 |
| 01/May | 7 | 1,200 | 480 | 117,551 |
| 08/May | 16 | 1,450 | 730 | 94,385 |
| 24/May | 13 | 1,300 | 580 | 79,430 |
| 06/Jun | 38 | 1,150 | 430 | 47,021 |
| 14/Jul | 32 | 1,300 | 580 | 10,209 |
| 15/Aug | 8 | 1,150 | 430 | 3,386 |
| 23/Aug | 7 | 950 | 230 | 193 |
| 30/Aug | 53 | 720 | | |
| 22/Oct | | OFF | | |

This schedule reflects the 39% proration of reservoir storage allocations as determined by your July 8 TWSA forecast. This schedule may be modified if operating conditions change during the season. In that event WIP will provide you with advanced notice of any changes in this schedule.

Sincerely,

Acey Oberly, Jr.
Wapato Irrigation Project Administrator

188

WAPATO IRRIGATION PROJECT RETURN FLOW DISTRIBUTION SCHEDULE

EFFECTIVE DATE: July 11, 1994

GROSS DISTRIB RATES @ 39% PRORATION LEVEL

CONVEYANCE EFFICIENCY 96.00%

| | | |
|---|---|---|
| YAKIMA RIVER DIVERSIONS | 1300 | CFS |
| RETURN FLOWS: MD & TC | 200 | |
| | ======= | |
| TWSA | 1500 | |
| OLD RESERVATION CANAL | 0 | CFS |
| ADDED SPILLS: | | |
| DRAIN 1 | 4 | CFS |
| DRAIN 2: divrted | 100 | CFS |
| base flow | 10 | |
| CONVEYANCE LOSSES | -5 | |
| | ======= | |
| AVAILABLE AT TRACK LATRL | 109 | CFS |

| | ACRES | %"A" | EQUIVLNT ACRES | % TOTAL | PRO RATA (CFS) |
|---|---|---|---|---|---|
| | ===== | ====== | ====== | ======= | ======= |
| TRACK LATERAL | 7827. | 57.85% | 5089 | 7.01% | 105 |

| | | |
|---|---|---|
| ADDED SPILLS: | | |
| DRAIN 3 | 20 | CFS |
| LAT 3 + G&M PUMP | 10 | CFS |
| CONVEYANCE LOSSES | -1 | |
| | ======= | |
| AVAILABLE AT SPENCER LAT | 33 | CFS |

| | ACRES | %"A" | EQUIVLNT ACRES | % TOTAL | PRO RATA (CFS) |
|---|---|---|---|---|---|
| | ===== | ====== | ====== | ======= | ======= |
| SPENCER LATERAL | 2109 | 57.85% | 1361 | 1.87% | 28 |

| | | |
|---|---|---|
| ADDED SPILLS: | | |
| DRAIN 4 | 25 | CFS |
| LATERAL 4 | 50 | CFS |
| CONVEYANCE LOSSES | -3 | |
| | ======= | |
| AVAILABLE LAT 4 EXTENSION | 77 | CFS |

| | ACRES | %"A" | EQUIVLNT ACRES | % TOTAL | PRO RATA (CFS) |
|---|---|---|---|---|---|
| | ===== | ====== | ====== | ======= | ======= |
| LATERAL 4 EXTENSION | 5219 | 57.85% | 3367 | 4.64% | 70 |

| | | | |
|---|---|---|---|
| ADDED SPILLS: | | | |
| MARION DRAIN & TOPP CK | 200 | CFS | (minus operational spills) |
| WANITY SLOUGH | 0 | CFS | |
| PASS THRU HARRAH DRAIN | 50 | CFS | |
| CONVEYANCE LOSSES | -8 | CFS | |
| | ======= | | |
| AVAILABLE SATUS FEEDER | 249 | CFS | |

| | ACRES | %"A" | EQUIVLNT ACRES | % TOTAL | PRO RATA (CFS) |
|---|---|---|---|---|---|
| | ===== | ====== | ====== | ======= | ======= |
| SATUS EAST LATERAL | 4564 | 57.85% | 2945 | 4.06% | 61 |
| SATUS WEST LATERAL | 853 | 57.85% | 550 | 0.76% | 11 |
| SATUS II PUMP CANAL | 6229 | 57.85% | 3215 | 4.43% | 66 |
| SATUS III PUMP CANAL | 9790 | 57.85% | 5053 | 6.96% | 104 |
| | | | | | ========= |
| | | | | | 243 |

189

SA20